UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re 2000 Sugar Beet Crop Insurance Litigation | ) | 01-CV-1629(JMR/FLN)<br>01-CV-1630(PAM/SRN)<br>01-CV-1632(DSD/SRN)<br>01-CV-1633(ADM/AJB)<br>01-CV-1634(DWF/AJB)<br>01-CV-1635(DSD/JGL)<br>01-CV-1636(DWF/SRN)<br>01-CV-1637(PAM/JGL)<br>01-CV-2242(MJD/JGL) |

ORDER

This is one of many motions arising out of a dispute over crop insurance contracts. The present motion is brought by Federal Crop Insurance Corporation's ("FCIC") to dismiss the third-party complaint. For the reasons set forth herein, the Court finds the motion is premature, based on third-party plaintiffs' failure to exhaust their administrative remedies.

I. Background

The facts of this case are outlined in this Court's Orders dated April 15, 2002 and September 26, 2002. For purposes of this motion, suffice it to say that sugar beet-growing plaintiffs claim their 2000 crop was extensively damaged by frost. The plaintiffs are seeking payment on multi-peril crop insurance contracts ("MPCI") issued by defendant insurance companies. The crop insurance was reinsured by the FCIC under the Standard Reinsurance Agreement ("SRA"). This reinsurance program is established by the Federal Crop Insurance Act ("FCIA").

FILED
RICHARD D. SLETTEN, CLERK SEP 27 2002
JUDGEMENT ENTERED
DEPUTY CLERK'S INITIALS

The FCIC is an agency of the United States Department of Agriculture ("USDA"), and within the Risk Management Agency ("RMA"). See 7 U.S.C. § 1501 et seq. The SRA establishes the obligations of the insurer and reinsurer, setting the boundaries of their relationship. Disputes arising out of FCIC decisions are governed by 7 C.F.R. § 400.169.

In September, 2001, the insurance companies removed these sugar beet cases to federal court,[1] and shortly thereafter, filed a third-party complaint against the FCIC. In the third-party complaint, the insurers denied any obligation to the farmers, stating liability should be borne instead by the FCIC. See Third-Party Comp. ¶3.[2] According to the insurers, a Manager's Bulletin, MGR-01-010 ("Bulletin") issued by the RMA on March 2, 2001, altered the terms of the insurance and reinsurance agreements, thereby relieving the companies of any liability for the farmers' losses.

The Bulletin addressed "[w]hether 2000 crop year sugar beets affected by drought, freeze, or other insurable causes during the insurance period that later manifested damage after being delivered

[1]The Court's decision on the motion to remand can be found at 196 F. Supp. 2d 905 (D. Minn. 2002). The Court found it had jurisdiction in eight of the ten removed cases, and remanded the remaining cases to state court.

[2]Prior to initiating their action against the FCIC, defendants contacted the Manager of the FCIC, as required by the Section V.Y of the SRA. The defendants and FCIC met on March 28, 2001, to discuss disagreements arising out of MGR-01-010, but were unable to resolve their differences.

to the processor are insurable." Bulletin at 1. It also outlined the history of the frost damage, the probable causes of loss, and possible questions arising under the standard policy. The Bulletin raised, but did not answer, questions regarding whether the nature of the crop damage altered the notice of loss provisions, whether the beets were in fact damaged, and whether the damages were covered by the insurance policy. Id. at 3. Finally, the RMA stated:

> RMA believes that the type of losses experienced by the Minnesota producers in the above listed counties were contemplated under the Sugar Beet Crop Insurance Provisions when RMA elected to cover freeze as a cause of loss. Sugar beet experts assert that freeze damage did not manifest itself until after the end of the insurance period and following delivery of the affected sugar beets to the processor. In this case, RMA will reinsure any such 2000 crop year sugar beet losses that the reinsured companies elect to pay in those affected counties. RMA notes that it is solely the reinsured company's decision with respect to payment of these claims . RMA does not in any manner direct or obligate reinsured companies to pay these claims.
>
> For any sugar beet claim that a reinsured company elects to pay, the produced must meet the requirements contained in section 14(e) of the Basic Provisions for establishing that the loss of production was directly attributed to an insurable cause of loss, the cause of loss occurred during the insurance period, and the total production or value received for the production.
>
> To determine whether the sugar beets suffered an insurable loss, producers must provide:
>
> 1. All harvest and delivery records; and
>
> 2. Affidavits or other evidence establishing that the producer's sugar beets were frozen; and

> 3. Processing records for each load of sugar beets delivered by the producer to the processor.
>
> If any reinsured company experiences difficulty in calculating or separating the amount of sugar beet production for individual insures as a result of commingling sugar beet production after it was delivered to the processor, the reinsured company may contact RMA for assistance in locating experts to provide assistance in making these determinations.

Id. at 4. The Bulletin's effect has not yet been considered by the USDA Board of Contracts.

II. Discussion

The FCIC asks the Court to dismiss the third-party complaint, pursuant to Rule 12(b)(1) and (6), for lack of jurisdiction and failure to state a claim. See Fed. R. Civ. P. 12(b)(1) ("lack of jurisdiction over subject matter"); Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted"). On such a motion, of course, the Court accepts all factual allegations by the non-moving parties as true. See McSherry v. Trans World Airlines, 81 F.3d 739, 740 (8th Cir. 1996). A motion to dismiss may be granted "only if no set of facts would entitle the plaintiff to relief." See id. The FCIC claims the insurance companies failed to exhaust their administrative remedies, thereby baring federal jurisdiction, or alternatively limiting judicial consideration of the third-party claims.

It is axiomatic that federal courts are courts of limited jurisdiction. As such, the requirement that jurisdiction be established as a threshold matter is inflexible and without

exception. Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1141 (8th Cir. 1998). While defects in personal jurisdiction may be waived by the parties, subject matter jurisdiction is primary, and acts as an absolute stricture. See In re: Prairie Island Dakota Sioux, 21 F.3d 302, 304-05 (8th Cir. 1994). When required by Congress, failure to exhaust administrative remedies bars federal jurisdiction. See In Home Health, Inc. v. Shalala, 272 F.3d 554, 559 (8th Cir. 2001).[3] The exhaustion requirement assures that Courts receive the fullest benefit of administrative review, avoiding "premature interruption of the administrative process," promoting deference to agency discretion, and allowing the agency to "develop the necessary factual background." See McKart v. United States, 395 U.S. 185, 194-95 (1969).

Congressional intent is paramount when considering whether exhaustion is jurisdictional. See McCarthy, 503 U.S. at 144. "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." Id. When Congress has adopted a statutory provision, the Court cannot waive exhaustion. See McNeil v. United States, 508 U.S. 106, 111 (1993); U.S. v. Dico, Inc., 136 F.3d 572,

[3]The exhaustion requirement comes in two forms: statutory mandate or judicially created doctrine. While the former is a prerequisite to maintaining an action, the later is discretionary and flexible. See McCarthy v. Madigan, 503 U.S. 140 (1992). In this case, Congress has mandated administrative exhaustion in cases against the USDA and the FCIC. As such, the Court need not consider the common law doctrine.

575-76 (8th Cir. 1998). Conversely, where Congress has not enacted an explicit requirement, a court may not create one. See Darby v. Cisneros, 509 U.S. 137, 153-54 (1993); Coteau Props. v. Dep't of Interior, 53 F.3d 1466, 1471 (8th Cir. 1995).

In 7 U.S.C. § 6912(e), Congress expressly requires exhaustion of administrative appeals before a lawsuit may be brought against an agency of the Department of Agriculture.[4] The Section provides:

> [n]otwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against . . . an agency . . . of the Department."

See 7 U.S.C. § 6912(e). While the Eighth Circuit Court of Appeals has not considered whether the provision is jurisdictional, a number of trial courts and two federal appellate courts of appeal have done so.[5]

The Second Circuit Court of Appeals in Bastek v. Federal Crop Insurance Corp., found 7 U.S.C. § 6912(e)'s exhaustion requirement unambiguous, and therefore jurisdictional. See 145 F.3d 90, 95 (2d Cir. 1998); see also Kleissler v. United States Forest Serv., 183

[4]Defendant insurance companies do not contest 7 U.S.C. § 6912(e)'s exhaustion requirement. The Circuit split which has arisen since this matter was submitted merits consideration.

[5]Purely legal questions, involving no agency fact-finding, are exempt from the exhaustion provision. See Kuster v. Veneman, 2002 U.S. Dist. LEXIS 14431, *4-5 (D. N.D. Aug. 1, 2002) (examination of whether policy change was arbitrary and capricious involves pure question of law).

F.3d 196 (3d Cir. 1999) (requiring 7 U.S.C. § 6912(e) exhaustion in suit against the Forest Service); Am. Growers Ins. Co. v. Fed. Crop Ins. Corp., 2002 U.S. Dist. LEXIS 12777 (S.D. Iowa June 26, 2002) (finding 7 U.S.C. § 6912(e) and 7 C.F.R. 400.169 compelled exhaustion before suit); Gilmer-Glenville, LP v. Farmers Home Admin, 102 F. Supp. 2d 791 (N.D. Ohio 2000) (requiring 7 U.S.C. § 6912(e) exhaustion in suit against the FmHA); Calhoun v. United States Dep't of Agric. Farm Serv. Agency, 920 F. Supp. 696 (N.D. Miss. 1996) (finding 7 U.S.C. § 6912(e) exhaustion a prerequisite to suit); Gleichman v. United States Dep't of Agric., 896 F. Supp. 42 (D. Mass. 1995) ("It is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit.").

Bastek, like the third-party claims at issue here, involved a dispute over FCIC indemnification. See id. at 91. In examining the language of 7 U.S.C. § 6912(e), the Second Circuit harbored, "little doubt that Congress's intent, in enacting this statute, was to require plaintiffs to exhaust all administrative remedies before bringing suit in federal court." Id. at 95.

The Ninth Circuit Court of Appeals, however, reached the opposite conclusion. It found the exhaustion requirement in 7 U.S.C. § 6912(e) was not jurisdictional. See McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973 (9th Cir. 2002). The Ninth

Circuit held that "failure to exhaust does not deprive a federal court of jurisdiction when the exhaustion statute is merely codification of the exhaustion requirement," and lacks "sweeping and direct language" requiring exhaustion. See id. at 978. Because the Ninth Circuit found the text of 7 U.S.C. § 6912(e) did not define or limit jurisdiction, the Court found it a mere codification, and therefore not a prerequisite to jurisdiction. Id. at 980; see also Farmers Alliance Mut. Ins. Co. v. Fed. Crop. Ins. Corp., 2001 U.S. Dist. LEXIS 241, *7-8 (D. Kan. Jan. 3, 2001) (finding failure to exhaust remedies is not a jurisdictional matter, but is a valid affirmative defense).

This Court considers the Second Circuit's reasoning most consistent with the Eighth Circuit's approach to exhaustion, as seen in other administrative law cases, and more consonant with the Supreme Court's decision in Weinberger v. Salfi, 422 U.S. 749, 757 (1975) (requiring clear language expressing jurisdictional nature of exhaustion requirement). See also In Home Health, Inc. v. Shalala, 272 F.3d 554 (8th Cir. 2001) (requiring exhaustion to fulfill purposes underlying the requirement); Chelette v Harris, 229 F.3d 684 (8th Cir. 2000) (finding Prison Litigation Reform Act "PLRA" exhaustion requirement is not jurisdictional because its language is indirect and a general codification). The statutory language in 7 U.S.C. § 6912(e) is distinguishable from language the Eighth Circuit described as mere codification. In Chelette, the

Court found the PLRA's language stating "no action shall be brought . . . until such administrative remedies as are available are exhausted," did not create a jurisdictional bar

In enacting 7 U.S.C. § 6912(e), by contrast, Congress made exhaustion an affirmative requirement, providing that "a person shall exhaust" administrative remedies before initiating litigation against the FCIC. "[W]hen Congress enacted section 6912(e), it did so against the backdrop of principles of collateral estoppel, res judicata, and administrative estoppel." See Am. Growers Ins. Co., 2002 U.S. Dist. LEXIS 12777 at *10. A waiver of exhaustion would divest the USDA of its prerogative to review determinations and pronouncements prior to judicial action. It would remove the FCIC's ability to create a factual record, and render the agency's crop insurance expertise moot. Under these conditions, this Court finds the requirement jurisdictional.

The Court must next determine whether the administrative appeals procedure adopted by the Secretary of Agriculture, 7 C.F.R. § 400.169, requires exhaustion in this case. The regulation provides:

> (a) If the [policy-issuing] company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement . . . it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. All requests for a final administrative determination

> must be in writing and submitted within 45 days after receipt of the disputed action.
>
> * * *
>
> (c) A company may also request reconsideration by the Deputy Administrator of Insurance Services of a decision of the Corporation rendered under any Corporation bulletin or directive which bulletin or directive does not interpret, explain or restrict the terms of the reinsurance agreement. The company, if it disputes the Corporation's determination, must request reconsideration of that determination in writing, within 45 days of th receipt of the determination. The determination of the Deputy Administrator will be final and binding on the company. Such determinations will not be appealable to the Board of Contract appeals.
>
> (d) Appealable final administrative determinations of the Corporation under paragraph (a) or (b) of this section may be appealed to the Board of Contract Appeals in accordance with the provisions of subtitle A, part 24 of the Code of Federal Regulations.

7 C.F.R. § 400.169.[6] In short, these provisions require that an insurance company appeal any dispute concerning whether an FCIC Bulletin explains, restricts or interprets the SRA to the Board of Contract Appeals.

The Court "must give substantial deference to an agency's interpretation of its own regulations" unless that interpretation is "plainly erroneous or inconsistent with the regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). An agency's own interpretation of its procedural rules is

---

[6]The USDA Board of Contract Appeals regulations provides jurisdiction over final decisions by the FCIC. 7 C.F.R. § 24.4(b).

afforded great weight. Appley Bros v. United States, 164 F.3d 1164, 1172-73 (8th Cir. 1999) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 944-45 (1983)).

In 1997, the USDA Board of Contract Appeals considered an appeal under an earlier version of 7 C.F.R. § 400.169, in a case involving application of the exhaustion regulation to an FCIC Manager's Bulletin. See Rain & Hail Ins. Serv., Inc., AGBCA No. 97-143-F (1997). There, the Board determined that "where a dispute relates to a bulletin or directive that affects, interprets, explains or restricts an SRA, the Board has jurisdiction." Id. at 5-6. When, as in that case, a Manager's Bulletin affects the SRA, all appeals must be exhausted before the Board. See id. at 6.

The parties hotly contest Rain & Hail's precedential value. Defendants note Rain & Hail involves appeal of any directive that might "affect, interpret, explain or restrict" the terms of the reinsurance agreement. See id. at 5 (emphasis added). The regulation was subsequently modified to remove the word "affect". See 65 Fed. Reg. 3782 (Jan. 25, 2000). The insurance companies claim this change removes the Board's jurisdiction over appeals related to Manager's Bulletins, as the Rain & Hail opinion resulted in the amendment. Defendants argument is off the mark. The Court sees no basis upon which to read more into the modification than the regulation's language requires. MGR-01-010 interprets,

explains or restricts the terms of the reinsurance agreement; as such, it is covered by the exhaustion requirement.[7]

Plaintiff alternatively argues that the Bulletin cannot be construed to interpret, explain, or limit the SRA. The terms of MGR-01-010, however, plainly interpret and explain the application of the reinsurance agreement. Section II.A. of the SRA states, "[o]nly eligible crop insurance contracts will be reinsured and subsidized under this Agreement." Section I of the SRA defines crop insurance contracts to mean "a crop insurance contract that is sold and serviced consistent with the Act, 7 C.F.R. chapter IV, FCIC approved regulations and procedure . . . and on forms approved in writing by the FCIC." The reinsurance agreement contains the covered terms and the coverage limits.

The Bulletin discusses in detail farmers' eligibility for payments on claims made under the underlying crop insurance contracts, thus making them subject to reinsurance. It includes an analysis of whether there would be modifications to the normal coverage for an insurable loss, whether the sugar beet growers complied with the insurance agreement, and whether the RMA will

---

[7]Defendants attempt to make much of the fact that FCIC, here, takes the opposite side of the argument it made in Rain & Hail, where it denied any duty to bring Manager's Bulletin disputes before the Board. The FCIC now takes the position that a Board appeal is required. Defendants' point is insubstantial; it is altogether unsurprising that the FCIC, having been properly instructed, now seeks to function in accord with a well-reasoned legal decision.

reinsure losses paid in the affected counties. See Bulletin at 3-4. These statements explain both the SRA and the RMA obligations for reinsurance. The exhaustion provisions therefore apply to this dispute.

Finally, Section V.Y. of the SRA also contains an exhaustion provision which provides:

> If the company disagrees with an act of omission of FCIC, except those acts implemented through the rulemaking process, the Company shall provide written notice of such disagreement to the Manager of FCIC. Within 10 business days of receipt of notice, the Manager or designee will schedule a meeting with the company in an attempt to resolve the disagreement. Notwithstanding any other provision in this section, any subsequent decision by FCIC on the act or omission will be final in the administrative process and, therefore subject only to review by the Board of Contract Appeals in a matter relating to this agreement or to judicial review.

Here, the insurance companies disagree with an FCIC action: the issuance of MGR-01-010 and its implication. See, e.g., Def. Reply ¶21-30. A dispute over this type of administrative decision requires an appeal to the Board of Contract Appeals. This requirement is consistent with the terms of the SRA. As such, the Court must require administrative exhaustion.

The Eighth Circuit has recognized three limited exceptions to statutory exhaustion. These occur where the litigant "(1) raises a colorable constitutional claim collateral to his substantive claim of entitlement; (2) shows that irreparable harm would result from exhaustion; and (3) shows that the purposes of exhaustion

would not be served by requiring further administrative procedures." Anderson v. Sullivan, 959 F.2d 690, 693 (8th Cir. 1992) (citing Thorbus v. Bowen, 848 F.2d 901, 903 (8th Cir. 1988) and Mathews v. Eldridge, 424 U.S. 319, 329-31, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)). In this case, defendants have made no such constitutional claim, or indicated that Board consideration of MCR-01-010 would be inimical to the purposes of exhaustion. They simply assert exhaustion would waste judicial resources.

Congress imposed the exhaustion requirement "to provide the Secretary of Agriculture with the necessary authority to streamline and reorganize the Department of Agriculture to achieve greater efficiency, effectiveness, and economies in the organization and management of the programs and activities carried out by the Department." 7 U.S.C. § 6901. By its very nature, exhaustion may result in occasional redundancies, but it still serves its intended purpose of administrative efficiency and certainty. See Krempel v. Prairie Island Cmty, 125 F.3d 621, 623 (8th Cir. 1997) (emphasizing the importance of exhaustion for judicial economy). Exhaustion promotes judicial economy by "avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all, if the parties successfully vindicate their claims before the agency". Peters v. Union Pac. R.R., 80 F.3d 257, 263 n.3 (8th Cir. 1996). A proffered

wish to save judicial resources gives no basis on which to reject Congress's explicit exhaustion requirement.

III. Conclusion

Defendants brought suit against the FCIC in the face of federal statutes and regulations requiring exhaustion prior to initiation of court action. Their failure to comply with the exhaustion requirement deprives this Court of jurisdiction. As a result, the Court is without power to consider third-party defendant's motion to dismiss for failure to state a claim.

Accordingly, third-party defendant FCIC's motion to dismiss [Docket No. 30] is granted.

IT IS SO ORDERED.

Dated: September 26th, 2002

JAMES M. ROSENBAUM
United States Chief District Judge