**Data Elements Comprising the Database**

| [illegible] | Data Element |
|---|---|
| 1 | **Individual Policy Information** |
| (a) | Insured |
| (b) | Address |
| (c) | Telephone |
| (d) | Policy No. |
| (e) | Companion Policy No. |
| (f) | SSN or EIN |
| (g) | Insurance Company |
| (h) | Agent |
| (i) | County |
| (j) | 2000 Price Election |
| (k) | 2000 Coverage Level |
| (l) | 2000 Premium for Sugar Beet Crops |
| 2 | **General Information** |
| (a) | Claim No. |
| (b) | Insurance Unit Designation |
| (c) | SMBSC Field ID Number |
| (d) | Unit APH |
| (e) | Unit Guarantee per acre |
| (f) | Insured's share |
| (g) | County Avg. Percent Sugar |
| (h) | Total unit sugar beet acres planted, crop year 2000 - per SMBSC (Planted Acres) |
| (i) | Total unit sugar beet acres planted, crop year 2000 - per Insurance Co. (Insured Acres) |
| (j) | Total unit sugar beet acres grown under contract with SMBSC, crop year 2000 (Contracted Acres) |
| (k) | Total unit harvested acreage (Harvested Acres) |
| 3 | **Delivery Data** |
| (a) | Earliest delivery date that the processor accepted 2000 harvested production |
| (b) | Date of each delivery |
| (c) | Delivery station for each delivery |
| (d)(1) | Tonnage delivered for each delivery (where tested at delivery) |
| (d)(2) | Tonnage delivered for each delivery (wher tonnnage is determined by tare average) |
| (e)(1) | Sugar content for each delivery (where tested at delivery) |
| (e)(2) | Sugar content for each delivery (where based upon previous tests) |
| 4 | **Harvested acreage & production** |
| (a) | Total harvested production for the unit that meets the minimum acceptable standards contained in the sugar beet processor contract, by delivery station |
| (b) | Average percent sugar at delivery for unit HP that meets the minimum acceptable standards contained in the sugar beet processor contract, by delivery station |
| (c) | Total harvested production for the unit that does not meet the minimum acceptable standards contained in the sugar beet processor contract, by delivery station |
| (d) | Gross dollar value of HP that does not meet the minimum acceptable standards contained in the sugar beet processor contract, by delivery station |
| (e) | Local market price/lb of sugar - earlier of: date sold or final inspection |
| 5 | **Late planting adjustments** |
| (a) | Unit acreage planted between the FPD and the end of the LPP, in one day increments[1] |
| (b) | LPP percent guarantee reduction for acres in 5(a), by one day increments |
| (c) | Total unit acreage planted after the end of the late planting period |
| 6 | **Other loss adjustment data** |
| (a) | Total unit acreage appraised/released before July 1 |
| (b) | Total unit acreage appraised/released after July 1 (except PIK acres) |
| (c) | PTC by PW line entry from the unit's appraised/released acreage (except PIK appraisal)[2] |
| (d) | Total unit acreage appraised/released for entry into 2000 PIK program |
| (e) | PTC from the unit's appraised/released acreage going to PIK |
| 7 | **Assignments, Transfers, or Written Agreements** |
| (a)(1) | Is an assignment of indemnity applicable? Yes or no. |
| (a)(2) | If an assignment is applicable who is the assignee? |
| (b)(1) | Is a transfer of right to an indemnity applicable? Yes or no. |
| (b)(2) | If a transfer of right to an indemnity is applicable who is the transferee? |
| (c)(1) | Is a written agreement applicable? |
| (c)(2) | Terms of written agreement. |

[1] As an alternative to 'day-by-day' line entries for late planted acreage, total LP acreage and Avg percent guarantee reduction could be made to work.
[2] As an alternative to PTC by line entry for appraised/released acreage, an aggregated total could be made to work.

**Abbreviations**
APH = Actual Production History - Approved yield
BP = Basic Provisions
CP = Crop Provisions
FPD = Final Planting Date
LPP = Late Planting Period (25 days from the FPD)
PIK = Payment In Kind, a program of the USDA
PTC = production to count.
PW = Production Worksheet
SBI = Substantial Business Interest (individual or entity with > 10% interest in insured entity)

***An data additional field, DATIO#, was created by Deloitte & Touche to uniquely identify each insurance unit. The DATIO# is a seven digit policy number followed by a five digit insurance unit number.

Exhibit 1

# SOUTHERN MINNESOTA BEET SUGAR COOPERATIVE
## SHAREHOLDER GROWING AGREEMENT

Between KLEVEN FARMS INC (Shareholder"), whose mailing address is 16015 CTY RD 31; MILAN MN 56262, who resides in CHIPPEWA County, Minnesota, and who is a member of the Southern Minnesota Beet Sugar Cooperative

and

**SOUTHERN MINNESOTA BEET SUGAR COOPERATIVE**
**Renville, Minnesota (the "Cooperative")**

1. Acreage. Shareholder agrees to grow and deliver to the Cooperative, in accordance with the provisions of this agreement and during each of the growing seasons covered by this agreement, sugarbeets from not less than (a) that number of acres of land as shall be equal to the number of shares of Cooperative stock registered in Shareholder's name as of May 1 of such growing season, plus (or minus) (b) the number of acres that Shareholder has licensed from (or that Shareholder has licensed to) other shareholders of the Cooperative for such growing season in accordance with the terms and conditions of any short-term acreage production adjustment program that has been adopted by the Cooperative's Board of Directors.

The Cooperative shall have the right to increase or decrease (but not to zero) the number of authorized sugarbeet acres set forth above if, in its judgment, such action is needed to operate its plant at full capacity; provided that any such change in authorized acreage shall be pro rata among all of the Cooperative's shareholders, and that any change in acreage shall be communicated to Shareholder in writing as soon as practicable given the weather, planting and other conditions in effect at the start of each growing season. If the Cooperative increases or decreases acreage hereunder, it shall be obligated to purchase sugarbeets from such increased or decreased acreage.

If any governmental authority shall establish any restriction, allotment or quota upon the growing, production or processing of sugarbeets, or the output, transportation or sale of beet sugar, the Cooperative may reduce, to the extent which it deems necessary, the acreage of sugarbeets herein contracted for, and shall be obligated to purchase sugarbeets only from such reduced acreage.

All acres planted by Shareholder during each of the growing seasons covered by this agreement shall be subject to verification by the Cooperative at Shareholder's expense.

Shareholder shall not plant sugarbeets on any land on which canola has been planted during any of the previous four (4) years.

2. Purchase Price - Amount. The purchase price for sugarbeets delivered to, and accepted by, the Cooperative pursuant to this agreement shall be equal to (a) the base purchase price per ton of sugarbeets for the fiscal year in which such sugarbeets are delivered to the Cooperative, plus or minus (b) the tare adjustment for such fiscal year.

The base purchase price per ton of sugarbeets shall be determined by applying the following formula:

Base purchase price (per ton) = A X (B - C/A)

A= Percentage of recoverable sugar in sugarbeets delivered to the Cooperative by Shareholder (i.e., percentage of sugar in such sugarbeets less the percentage of sugar lost to molasses from such sugarbeets)

B= Net value per ton of sugar delivered to the Cooperative by all shareholders

C= Net processing costs per ton of sugarbeets delivered to the Cooperative by all shareholders

The percentage of sugar in sugarbeets and the percentage of sugar that is lost to molasses shall be calculated by the Cooperative using such analysis and technology as the Cooperative shall, in its discretion, determine to be appropriate from time to time. The net value per ton of sugar delivered to the Cooperative by all shareholders shall be equal to the total proceeds realized by the Cooperative from the sale of sugar produced during the fiscal year divided by the tons of sugar recovered by the Cooperative from sugarbeets delivered to the Cooperative by all shareholders during such fiscal year. The net processing costs per ton of sugarbeets delivered to the Cooperative by all shareholders shall be equal to the total factory and other costs (other than shareholder sugarbeet payments) incurred by the Cooperative during the fiscal year, less the total proceeds realized by the Cooperative during the fiscal year from by-product sales and other sources (excluding sugar sales). The net processing costs and the net value per ton of sugarbeets delivered to the Cooperative shall be audited annually by a certified public accounting firm selected by the Cooperative's Board of Directors.

The tare adjustment shall be based on the differential between the second tare for sugarbeets delivered to the Cooperative by Shareholder during each year and the Cooperative's average second tare for all sugarbeets delivered to the Cooperative during that year, shall be determined on a field-by-field basis and shall be equal to (i) the tare premium/reduction per ton of sugarbeets for that year, as established by the Cooperative's Board of Directors prior to December 31 of that year, multiplied by (ii) the number of tons of sugarbeets delivered to the Cooperative by Shareholder. If Shareholder's tare exceeds the average tare, the tare adjustment shall be subtracted in computing the purchase price. If Shareholder's tare is less than the average tare, the tare adjustment shall be added in computing the purchase price.

3. Purchase Price - Manner of Payment. The purchase price payable to Shareholder for sugarbeets delivered to, and accepted by, the Cooperative shall be payable in five installments, as follows

(a) An initial installment of the purchase price shall be made on or about November 15 of the year in which the sugarbeets are delivered to the Cooperative. Such initial installment shall not exceed forty percent (40%) of the Cooperative's estimate of the purchase price.

[redacted]

01-CV-1629, et al.
**PLAINTIFFS' EXHIBIT 4.186**

109891

(b) A second installment shall be made on or about November 30 of the year in which the sugarbeets are delivered to the Cooperative. The second installment, when added to the previous installment, shall not exceed sixty-five percent (65%) of the Cooperative's estimate of the purchase price.

(c) A third installment shall be made on or about February 1 of the year following the year in which the sugarbeets are delivered to the Cooperative. The third installment, when added to the previous installments, shall not exceed eighty-five percent (85%) of the Cooperative's estimate of the purchase price. The tare adjustment shall be taken into account in calculating the third installment (or, if appropriate, subsequent installments) of the purchase price of sugarbeets.

(d) A fourth installment shall be made on or about April 15 of the year following the year in which the sugarbeets are delivered to the Cooperative. The fourth installment, when added to the previous installments, shall not exceed ninety percent (90%) of the Cooperative's estimate of the purchase price.

(e) A final installment shall be made within thirty (30) days after the completion of the audit for the fiscal year in which the sugarbeets are delivered to the Cooperative. The final installment shall be equal to the total purchase price, as determined pursuant to such audit, less the amounts previously paid to Shareholder with respect to such sugarbeets.

If, for any fiscal year, the amount paid to Shareholder exceeds one hundred percent (100%) of the purchase price of sugarbeets as finally determined on audit, such excess shall be deducted from amounts payable to Shareholder for sugarbeets purchased from Shareholder in the next succeeding fiscal year, or, if Shareholder does not produce sugarbeets for sale to the Cooperative in such next fiscal year, such excess shall be repaid to Cooperative in cash within thirty (30) days of such final determination.

4. Unit Retention. The Cooperative may withhold from the purchase price of sugarbeets purchased from Shareholder pursuant to this agreement, as a per unit capital investment in the Cooperative, an amount per ton of sugarbeets delivered by Shareholder in each fiscal year that is determined by the Cooperative's Board of Directors and specified by notice to Shareholder on or before November 30 of such fiscal year; provided, however, that the unit retention for any fiscal year shall not exceed eight percent (8%) of the sum of (a) the average total purchase price (including prepile premium and second tare incentive) paid to shareholders of the Cooperative for sugarbeets delivered during such fiscal year pursuant to section 2 of shareholder growing agreements between the Cooperative and its shareholders, plus (b) the average hauling reimbursement paid to shareholders of the Cooperative for such fiscal year pursuant to section 6 of such shareholder growing agreements, plus (c) the average soil testing reimbursement payment made by the Cooperative during such fiscal year to its shareholders.

5. Other Authorized Deductions.

(a) Shareholder hereby authorizes the Cooperative to deduct from the first installment of Shareholder's beet payment for each year and pay to Shareholder's Area Truck Haul Committee the per ton amount determined by the Cooperative's Board of Directors to be Shareholder's share of the authorized expenditures of the Area Truck Haul Committee for the sugarbeet receiving station to which Shareholder has delivered his sugarbeets.

(b) Shareholder hereby authorizes the Cooperative to deduct from the first installment of Shareholder's beet payment for each year, the cost of sugarbeet seed purchased by Shareholder from the Cooperative and financed by the Cooperative.

(c) Shareholder hereby authorizes the Cooperative to deduct from the second installment of Shareholder's beet payment for each year and pay to the Research and Education Board of Minnesota and North Dakota the per ton amount determined by the Cooperative's Board of Directors to be the Cooperative's share of the operating budget for such organization; provided, however, that Shareholder may revoke this authorization by sending a written notice of revocation to the Cooperative's office by April 1 of any year with respect to which such revocation is to be effective.

(d) Shareholder hereby authorizes the Cooperative to deduct from the first or second installment of Shareholder's beet payment for each year, the amount of Shareholder's debt service obligations for that year on indebtedness incurred by Shareholder for the purchase of shares of the Cooperative's common stock.

6. Hauling Reimbursement. Shareholder shall haul his sugarbeets to the sugarbeet receiving station designated by the authorized representative of the Cooperative and shall be reimbursed by the Cooperative for expenses incurred in hauling his sugarbeets at a hauling rate as established by the Cooperative's Board of Directors from time to time. No hauling reimbursement shall be payable on mileage outside of the Cooperative's boundaries. Such hauling reimbursement will be included as a part of factory costs.

7. Seed. Seed to be planted by Shareholder shall be furnished by the Cooperative and shall be purchased by Shareholder from the Cooperative. The Cooperative shall use its best efforts to obtain its seed inventory at the best possible prices and terms and to re-sell such seed to Shareholder at no profit to the Cooperative. The Cooperative shall not unreasonably refuse to purchase seed varieties which have been requested by Shareholder and which satisfy performance standards which are established by the Cooperative from time to time. THE COOPERATIVE MAKES NO WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PRODUCTIVENESS OR ANY OTHER WARRANTY AS TO ANY SEED FURNISHED BY THE COOPERATIVE, EXCEPT OF THE PURCHASE PRICE ONLY, TO BE AS

DESCRIBED ON THE SEED CONTAINER WITHIN RECOGNIZED TOLERANCES. It is also expressly agreed that the Cooperative does not guarantee a crop.

8. Delivery of Sugarbeets. Shareholder will harvest and deliver to the Cooperative all sugarbeets grown by him under this agreement, said delivery to be made at such times and in such quantities and to such place or places as may be designated by the Cooperative. All sugarbeets delivered hereunder will be properly topped at the base of the bottom leaf and free from excess dirt, stones, trash or other foreign substances of any kind which might interfere with handling and processing at the factory and shall be free and clear of all liens, security interests and other encumbrances. All sugarbeets shall be subject to a proper standard deduction for tare. A distinct evidence of leaf scar is to be left after top tare is taken. There shall be deducted from the gross weight of sugarbeets delivered hereunder, before net tons are determined, Shareholder's share of the weight, as determined by Cooperative weighing, of all dirt, stones, trash and other foreign substances shaken or otherwise captured from the sugarbeets of all shareholders as they are delivered at the Cooperative's sugarbeet receiving stations, Shareholder's share being the proportion which the gross tons of sugarbeets delivered by Shareholder bears to the total gross tons delivered by all shareholders. The sugarbeets shall be protected from sun and frost after removal from the ground, including sugarbeets that are loaded on trucks, and Shareholder agrees not to remove the foliage from his sugarbeet crop more than 24 hours prior to harvesting, except by special permission of a representative of the Cooperative's agricultural department. The Cooperative has the option of rejecting any diseased, frozen or damaged sugarbeets; sugarbeets with less than 12% sugar, or less than 80% purity; sugarbeets which, in the Cooperative's opinion, are not suitable for the manufacture of sugar; sugarbeets as to which, the Cooperative's opinion, the terms and conditions of this agreement have not been properly complied with or for any other bona fide reason.

9. Disclaimer of Liability of the Cooperative. In no event shall the Cooperative be liable to Shareholder for partial or complete failure of crop or for any injury or damage to sugarbeets.

10. Application of Chemicals. Shareholder shall not apply Nonapproved Chemicals to his sugarbeet crop or land on which his sugarbeet crop is grown. The term Nonapproved chemicals shall mean any pesticide, herbicide or other chemical which (a) has not been approved by federal and state regulatory authorities having jurisdiction over products intended for human or animal consumption, or (b) is applied to the sugarbeet crop or land at a time, in a manner or in quantities which are not specified in the labeling of such chemical, or (c) results in a residue on sugarbeets delivered to the Cooperative under this agreement that is not within the tolerances permitted by applicable regulations. The Cooperative may, in its discretion, reject the delivery of any sugarbeets produced in violation of this section 10, shall have the right to require Shareholder to destroy any sugarbeets produced in violation of this section 10 and may impose monetary fines against Shareholder for any violation of this section 10.

11. Collection Rights of Cooperative. It is agreed that the amount charged for all sugarbeet seed furnished by the Cooperative to Shareholder hereunder, and all advances made to, or on behalf of, Shareholder by the Cooperative shall constitute a debt from Shareholder to the Cooperative, and the Cooperative shall have the right to collect such debt like any other contractual obligation. The Cooperative shall also have the right, at its option, to treat any such amounts, advances or indebtedness as part payment for sugarbeets grown and delivered under this contract. Any such amounts, advances, or indebtedness which are due and payable or which hereafter may become due and payable from Shareholder to the Cooperative shall be, become, and remain a first and prior lien on the crop of sugarbeets to be grown hereunder and shall be deducted by the Cooperative from the initial payment from the Cooperative to Shareholder which shall become due hereunder, or under any subsequent shareholder agreement between the Cooperative and Shareholder.

12. Forfeiture of Cooperative Stock. Shareholder hereby acknowledges and agrees that he is bound by the provisions of the Cooperative's bylaws which give the Cooperative the right and option to purchase the shares of Cooperative stock owned by Shareholder in the event that Shareholder fails to comply with the terms of this agreement.

13. Title to Sugarbeets. In order that the Cooperative may borrow money on the security of the sugarbeets it handles, upon delivery to, and acceptance by the Cooperative of the sugarbeets as provided for herein, title thereto shall be deemed to vest, and shall be vested, in the Cooperative.

14. Excuse of Performance. Fire, strikes, accidents, acts of God and the public enemy, or other causes beyond the control of the parties which prevent Shareholder from the performance of this agreement or the Cooperative from utilizing the sugarbeets contracted for in the manufacture of sugar therefrom, shall excuse the Cooperative and Shareholder from the performance of this agreement.

In case of the bankruptcy of the Cooperative or of the total destruction of the factory and the Cooperative's failure to rebuild the same, the Cooperative shall not be subject to any damages for failing to receive the sugarbeets of Shareholder, and Shareholder hereby waives and abandons any rights or claims which he may have for such damages, if any. Furthermore, such bankruptcy or total destruction of the factory shall exempt the respective parties hereto from the performance of this agreement.

Notwithstanding the foregoing provisions of this section 14, in the event that the Cooperative is prevented from processing any sugarbeets grown pursuant to this agreement, in whole or in part, by reason of any event or occurrence which is covered under any business interruption insurance maintained by the Cooperative, the Cooperative shall remain obligated to Shareholder hereunder to the extent of Shareholder's pro rata share of such insurance recovery

15. Term. This agreement shall cover the growing and delivery of sugarbeets during 2000 and the four succeeding years. The term of this agreement shall be automatically extended for an additional one (1) year period following the completion of each year covered by this agreement, unless either Shareholder or the Cooperative elects not to extend such term, which election shall be made by giving the other party written notice of such election by March 1 of the next succeeding year covered by this agreement.

16. Miscellaneous.

(a) Binding Effect and Assignment. This agreement shall be binding upon both Shareholder, his heirs, legal representative, and assigns, and upon the Cooperative, its successors and assigns, and shall not be transferable by Shareholder without the written consent of the Cooperative, or its successors and assigns.

(b) Labor. In connection with the growing of sugarbeets under this agreement, Shareholder shall (i) comply with all applicable laws pertaining to child labor, and with all regulations or rulings relating thereto issued by any duly authorized governmental authority, and (ii) settle with labor at a rate which shall not be less than the rate determined by applicable laws or regulation.

(c) Information and Inspection. Shareholder agrees to furnish the Cooperative with such information as it may request from time to time regarding the crop or crops covered by this agreement. Representatives of the Cooperative shall also have the right to enter the Shareholder's beet fields from time to time during the growing and harvesting seasons to inspect and/or measure the crops thereon and to take samples for testing in ascertaining the quality of the sugarbeets.

(d) Independent Contractor. In growing sugarbeets for delivery to the Cooperative under this agreement, Shareholder is acting as an independent contractor. Agricultural or other advise may be offered to Shareholder by the Cooperative's representatives, but the Shareholder's status as an independent contractor shall not be thereby affected.

(e) Amendment. The Cooperative may not change, amend, modify or waive any provision of this agreement, except in writing by a duly authorized agent, provided, however, that the Cooperative reserves the right to alter any provision of this agreement provided any such alteration is first approved at any regular or special meeting of the shareholders of the Cooperative at which a quorum is registered as being present or represented by mail vote, by two-thirds (2/3rds) of the shareholders so present or represented by mail vote, where the notice of such meeting contains a statement of the proposed alteration.

(f) Previous Shareholder Agreements. Except with respect to rights or obligations relating to crops delivered to the Cooperative prior to the date of this agreement, this agreement supersedes any shareholder agreements, and amendments thereto, which have been previously executed between Shareholder and the Cooperative.

(g) Per Ton Deductions or Checkoffs. For all purposes of this agreement, including, without limitation, the deductions authorized by sections 4 and 5, and the determination of the purchase price for sugarbeets pursuant to section 2, any reference to a ton of sugarbeets shall mean the net tons after the appropriate deduction for tare has been taken into account.

Dated: MARCH 23, 2000

[signature] CFO
(Shareholder) George Kloren CFO

SOUTHERN MINNESOTA BEET SUGAR COOPERATIVE

By: [signature: Sheldon Mellberg]
(Cooperative)

109894

1. James Ahrenholz
2. Rolan Ammerman
3. Don Anderson
4. Darrell Anderson
5. Michael J. Anderson
6. Steven Andresen
7. Thomas Arnold
8. Mark Arnold
9. Daniel Arnold
10. Bakker Farms, Tom Bakker
11. Bemmels Farms Inc., Gerald Bemmels
12. Brad Berger
13. Black Brothers Farm, Scott Black
14. Lee Bosch
15. Bosch Farms Partnership
16. Jeffrey Bratsch
17. Breitkreutz Farms Inc., Robert Breitkreutz
18. Brian Broderius
19. Bristle Bros.
20. Bruns Farms Inc., Darrell Bruns
21. Steven Bulthuis
22. Craig Burner
23. Buschette Farms Inc., Francis Buschette
24. C & P Farms Inc., Charles Haen
25. Samuel Dahlager
26. Dean Dambroten
27. James Dambroten
28. Charles Degrote
29. Jeremy Dirksen
30. Dooner Farms Inc., Ken Dooner
31. Alan Dovenmuehle
32. Neil Dovenmuehle
33. Glen Dovenmuehle
34. Todd Dykema
35. Kelly Elfering
36. David Elfering
37. George Elfering
38. Gerald Elfering
39. Douglas Erickson
40. Erickson Farms of Olivia Inc., Paul Erickson
41. Greg Fagen
42. Bruce Frank
43. Bruce Freberg
44. Gregory Garberich
45. Paul Gartner
46. Larry Gass
47. Longene Gass
48. Gerry Gigstad
49. Loren Gosseling
50. Troy Groothuis
51. Thomas Gunter
52. LaVerne Gunther
53. Donald Hagen
54. Hagen Farms Inc., David Hagen
55. Jason Handt
56. Hanson Bros., Robert Hanson
57. Dennis Harguth
58. Calvin Harms
59. Ross Harms
60. James Hebrink
61. Curtis Hebrink
62. Steve Hilbrands
63. Robert Huhnerkoch
64. Gerald Johnson
65. Jay Johnson
66. Keith Johnson
67. Triple K Farms, Karl Koehl
68. KRF Farms
69. Kim Kapping
70. Randy Klinghagen
71. Thomas Koeberl
72. Guy Koehl
73. James Kranz
74. Kyle Kranz
75. Eric Kronlokken
76. Iver Lalim
77. Brian Lamb
78. Lamb Farms, Michael Lamb
79. Donald Lien

Exhibit 3

List of growers who rely on notice given by SMBCS on December 15, 2000

80. Jon Lindquist
81. John Lund
82. Paul Lund
83. Tim Macik
84. MC&S, Mark Chan
85. Larry McNamara
86. Patrick McNamara
87. David McNeil
88. Charles Meixel Sr., Meixel-Picht Sugar
89. Charles Meixel
90. Charles Melberg
91. Mark Melberg
92. Cecil Meyer
93. Gary Meyer
94. Curt Meyer
95. Sam Mongomery
96. Neubauer Farms Inc., Michael Neubauer
97. Richard Olson
98. Robert Olson
99. Jeff Onnen
100. Pabroma Inc., Gary Toren
101. Alan Panitzke
102. Steven Panitzke
103. William Pansch
104. Aaron Pape
105. Gerald Pieper
106. Alan Plotz
107. Leo Plotz
108. Keith Poier
109. Prairie View Farms Inc., Dean Johnson
110. Robert Prekker
111. Kent Priebe
112. Kirk Prokosch
113. R & M Farms Inc.
114. Robert Rheingans
115. George Rheingans
116. David Rodel
117. Lanne Roelofs
118. Casey Rouse
119. Richard Rouse
120. William Rudeen
121. Rik Rudeen
122. Leroy Ruud
123. Ryberg Farms, Brian Ryberg
124. Kurt Sandgren
125. Gary Schaller
126. Gerald Scheurer
127. Haldon Schlegel
128. Mike Schmoll
129. Richard Schmoll
130. Rick Schwindt
131. Greg Schwitters
132. Chris Schwitters
133. Lenny Schwitters
134. Squibb Bros. Inc., Rick Squibb
135. Tom Steffel
136. Marc Stevens
137. Ronald Suter
138. Tim Swanson
139. Larry Swart
140. Dean Swigart
141. Taatjes Farms Inc., Chad Taatjes
142. Alan M. Tersteeg
143. Randy Tersteeg
144. David Tomes
145. Christopher Toren
146. Dawn Toren-Schmoll
147. Justin Ulferts
148. Voelz (R&W) Brothers, Robert Voelz
149. WB Farms, Inc., Loren Walters
150. Dean Wacek
151. Arthur Warner
152. Richard Wehking
153. Gary Wertish
154. Hubert Wieberdink
155. Gary Wubben
156. Willis Wubben
157. Allen Youngkrantz
158. Gary Youngkrantz

Exhibit 3

List of growers who rely on notice given by SMBCS on December 15, 2000

159. Glen Youngkrantz
160. Dean Youngkrantz
161. David Zaske
162. Wayland Zaske

1. Jeff Ahlbrecht
2. G.E. Blad
3. Nathan Blad
4. Broderius Corporation
5. Steven Dascher
6. E&K Farms
7. Todd Erickson
8. KJS Farms, Ken Schleusner
9. Clifford Fischer
10. Steve Frank
11. Daniel Jacobs
12. Michael Jacobs
13. Brad Jansen
14. Roger Lerud
15. Nicholas Ludowese
16. David Ludowese
17. Lundberg Farms Inc., Kevin Lundberg
18. Marlo Macik
19. David Melberg
20. Matt Melberg
21. Mike Melberg
22. O'Neill Farms of Olivia
23. M. Olson Farms (Mark Olson)
24. Michael Schjenken
25. Schleusner Farms (Doug Schleusner)
26. Darrell Vick

Exhibit 4

List of growers informed that an insurance agent provided notice
of freeze damage to an insurer but who lack personal knowledge of surrounding the same

1. Scott Abbas
2. Glenn Aeikens
3. Gary Aeikens
4. Lynn Aeikens
5. Marlyn Andresen
6. Asbury Farms Inc., Wayne Formo
7. Darwin Bohlsen
8. Steve Boonstra
9. Darrin Bratsch
10. Michael Bulthius
11. Condon Farms, Robert Condon
12. Paul Condon
13. County Line Farms (Gerald Olson)
14. Barry Degroot
15. Daniel Dirksen
16. Daniel Elliot
17. Cory Erickson
18. Randal Freiborg
19. Brent Garberich
20. David Gass
21. SJ Jacobs & Sons (James Jacobs)
22. Lloyd Kadelbach
23. Sheldon Kittelson
24. Wade Kittelson
25. Ronald Koenen
26. Peter Kronlokken
27. Charles Ledeboer
28. Jeff Paul Lippert
29. Paul Lippert
30. Rick Macziewski
31. Bradley Melberg
32. Thomas Morley
33. Rathman's Inc. (Gerald Rathman)
34. Carl Rudeen
35. Curtis Sampson
36. Bradley Schmoll
37. Lane Schwitters
38. Steven Sederstrom
39. David Telfor

Exhibit 5

Growers who recalled or were informed that a PIK adjuster was in one or more of their fields

1. Terrance Alhbrecht
2. BNV Farms, Inc.
3. Herman Brouwer
4. Gerry Busiahn
5. Roger Busiahn
6. Robert Dirksen
7. Merle Gerdes
8. Eric John Hendrickson
9. Herickhoff Farms, Mark Herickhoff
10. Bernie Herickhoff
11. Charles Hinderks
12. Wade Hoekstra
13. Marvin Kiecker
14. Mike Kopel
15. Jeff Kramer
16. Jason Lund
17. McNamara Farms Inc., Mike McNamara
18. Dennis A. Preuss
19. Triple G Farms (John Gass)
20. Edward Sachariason
21. Jason Sachariason
22. Scott Sachariason
23. Dennis Sjogren

Exhibit 6

Growers who rely on proffered written discovery responses
describing their commnunication with insurers

1. Jeff Broderius
2. Brett Duncan
3. Alan Enestvedt
4. Edward Fahey
5. David Hinrichs
6. Nathaniel Hultgren
7. Richard Jacobs
8. Chris Jaenisch
9. Molly Jaenisch
10. Tony Jaenisch
11. Brian Johnson
12. Deron Johnson
13. Scott Kiecker
14. Stephen Kiecker
15. Warren Kiecker
16. Rick Kramer
17. Rod Kramer
18. Casey Long
19. Chris Long
20. Norfolk Farms
21. Blake Schroeder
22. Delwin Schwitter

Exhibit 7

Growers bound by the deposition testimony of a family member or farming partner