UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ***In re 2000 Sugar Beet Crop Insurance Litigation*** | Civil File Nos.: 01-CV-1629<br>01-CV-1630<br>01-CV-1632<br>01-CV-1633<br>01-CV-1634<br>01-CV-1635<br>01-CV-1636<br>02-CV-0985 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS II, III, AND IV OF PLAINTIFFS' COMPLAINTS**

Defendants American Growers Insurance Company, et al.[1] (collectively "defendants") in these consolidated cases are entitled to summary judgment on plaintiffs' extra-contractual claims, which are asserted as Counts II, III, and IV of plaintiffs' Complaints, as a matter of law.

## SUMMARY OF ARGUMENT

In addition to their primary claim for alleged breach of contract for denial of claims under the federal crop insurance program (Count I), plaintiffs' Complaints also assert extra-contractual claims under state law for alleged breach of the implied duty of good faith and fair dealing (Count II), estoppel (Count III), and violation of the Minnesota Prevention of Consumer Fraud

---

[1] Defendants and the actions in which they are named as parties are: American Growers (in 01-CV-1633); The Alliance Ins. Co. and Farmers Alliance Mut. Ins. Co. (in 01-CV-1636); Farm Bureau Mut. Ins. Co. (in 01-CV-1635); Great American Ins. Co. (in 01-CV-1634); IGF Ins. Co. (in 01-CV-1630); NAU Country Ins. Co. (in 02-CV-0985); and Rain and Hail L.L.C. (in 01-CV-1629).

Statute (Count IV).[2] Plaintiffs' extra-contractual claims, like their claims for breach of contract, are based entirely on defendants' denial of the claims plaintiffs made for alleged losses under the federal crop insurance program. Plaintiffs' extra-contractual claims are all barred as a matter of law on several independent grounds and, therefore, summary judgment should be granted in favor of defendants as to Counts II, III, and IV of plaintiffs' Complaints.

Plaintiffs' extra-contractual claims are barred by applicable federal statutory and regulatory authority that expressly preempts such state law claims. Specifically, Congress and the congressionally authorized agency, the Federal Crop Insurance Corporation ("FCIC"), have declared that the terms of the federal crop insurance program shall control all aspects of defendants' duties and obligations, and that the varied laws of the fifty states shall not apply so as to disrupt the uniformity and stability of this federal program. Thus, plaintiffs' extra-contractual claims under state law are barred by the doctrine of express preemption.

Alternatively, all of plaintiffs' extra-contractual claims are barred by the related doctrine of conflict preemption which preempts state law claims that conflict with Congress' purpose for enacting federal law. In this case, subjecting insurers to separate claims under the varying laws of the fifty states conflicts with Congress' intent to create a uniform system of crop insurance, discourages private insurers' from participating in the program, and imposes the threat of unintended and unauthorized financial burdens on the federal crop insurance program and its participants.

Apart from preemption, plaintiffs' extra-contractual claims are separately barred for a host of other reasons. Plaintiffs' claims for breach of the implied duty of good faith and fair

---

[2] Plaintiffs' extra-contractual claims were stayed pending arbitration of their claims in Count I. In re 2000 Sugar Beet Crop Insurance Litigation, 228 F.Supp.2d 992, 999 (D. Minn. 2002).

dealing are barred because plaintiffs simply allege bad faith refusal to pay their first-party claim, which does not constitute an actionable claim absent an individual tort. This is something plaintiffs have never alleged and, even if alleged, this is something plaintiffs cannot prove. Plaintiffs' claims for estoppel seek to create insurance coverage by estoppel where none exists by contract—a maneuver that is barred under Minnesota law. Lastly, plaintiffs' claims for breach of the Minnesota Prevention of Consumer Fraud Statute are barred because plaintiffs' claims focus solely on defendants' denial of plaintiffs' claims, and there are no allegations, nor is there any evidence, of any misrepresentations by defendants in connection with the sale of the insurance policies in question.

Based on the foregoing, defendants respectfully request the Court to grant their motion for summary judgment as to all of plaintiffs' extra-contractual claims in their entirety.

## I. PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS ARE PREEMPTED BY FEDERAL LAW.

Plaintiffs' extra-contractual claims are barred by defensive preemption[3] which bars state-law claims (1) whenever such preemption is expressly contemplated by the federal law in question (i.e., express preemption); (2) whenever the federal law in question was intended to "occupy the field" (i.e., field preemption); or (3) whenever the state law in question conflicts with the federal law such that it is impossible to comply with both at once, or such that the state law stands as an obstacle to the accomplishment of the purposes behind the federal law in question (i.e., conflict preemption). English v. General Elec. Co., 496 U.S. 72, 79, 110 S. Ct.

[3] Defensive preemption involves a more discrete analysis than that of complete preemption, which is only implicated in removal jurisdiction analysis as an exception to the well-pleaded complaint rule when "an area of state law has been completely pre-empted." Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998). The question of complete preemption "is very different from the substantive inquiry of whether 'preemption defense' may be established." Blaylock v. Hynes, 104 F. Supp. 2d 1184, 1187 (D. Minn. 2000) (quoting Whitman v. Raley's Inc., 886 F.2d 1177, 1181 (9th Cir. 1989)).

2270, 2275 (1990). In these cases, plaintiffs' extra-contractual claims are barred by both express and conflict preemption.

**A. Plaintiffs' Extra-Contractual State Law Claims Are Expressly Preempted By Applicable Federal Law.**

Under the Supremacy Clause, Congress may expressly preempt state law either through statute or by authorizing an agency to adopt preemptory regulations. Louisiana Pub. Serv. Comm'n v. Fed. Communications Comm'n, 476 U.S. 355, 369, 106 S. Ct. 1890, 1898-99 (1986); Scherz v. S. Carolina Ins. Co., 112 F. Supp. 2d 1000, 1004-05 (C.D. Cal. 2000). In these cases, all of plaintiffs' extra-contractual claims are expressly barred by the applicable statutory and regulatory authority governing the federal crop insurance program. More specifically, express preemption is based on the Federal Crop Insurance Act, as amended ("FCIA"), 7 U.S.C. § 1501 et seq. (in particular, 7 U.S.C. § 1506(l)) and 7 C.F.R. Part 400 (in particular, 7 C.F.R. § 400.352)).

Congress has declared that "[s]tate and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or *to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations*." 7 U.S.C. § 1506(l) (emphasis added). In furthering this statutory mandate, the FCIC has promulgated regulations stating that "[n]o state . . . shall have the authority to . . . pass laws . . . that *directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized* by this part or by the [FCIC]." 7 C.F.R. § 400.352(a) (emphasis added). These regulations further prohibit states from levying:

> *fines, judgments, punitive damages, compensatory damages, or judgments for attorneys fees or other costs against companies*, employees of companies, employees of companies including agents or loss adjustors, or Federal employees

> *arising out of actions or inactions on the part of such individuals and entities authorized or required* under the Federal Crop Insurance Act ["FCIA"], the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by its regulations, or procedures issued by the [FCIC] . . .

7 C.F.R. § 400.452(b)(4) (emphasis added). Thus, federal statutory and regulatory law expressly preempts any state law claim that relates to, or arises in any way from, any actions by defendants that are either "authorized or required" by the FCIA, FCIC's regulations or procedures, or defendants' agreements with FCIC.

Plaintiffs' extra-contractual claims are based on defendants' decisions to deny plaintiffs' claims in the context of the federal crop insurance program. Defendants' decisions not to pay plaintiffs' claims were expressly authorized by defendants' agreement with FCIC.

Defendants' standard reinsurance agreement specifically requires defendants to comply with FCIC's bulletins (SRA § V(I)(1)). Pursuant to FCIC authority, the Risk Management Agency ("RMA")[4] issued a formal bulletin that expressly authorized defendants to make the determination as to either acceptance or denial of plaintiffs' claims. (See p. 4 of Ex. B. of plaintiffs' Complaints herein.) ("RMA notes that it is solely the reinsured company's decision with respect to payment of these claims. RMA does not in any manner direct or obligate reinsured companies to pay these claims."). Thus, because defendants' were authorized to make decisions as to the payment of plaintiffs' claims, defendants' decisions to deny those claims constitute "authorized" actions that fall squarely within the scope of preemption expressly set forth by Congress and the FCIC. Alliance Ins. Co. v. Wilson, ---- F.3d ----, 2004 WL 2118491, *4 (8th Cir. 2004) ("The district court found that, to the extent the Commissioner discovers violations of Minnesota law authorized or required by FCIA, his authority to regulate Alliance is preempted. We hold likewise.")

---

4 The RMA operates the federal crop insurance program on behalf of the FCIC.

Accordingly, plaintiffs' sole claims against defendants are for breach of contract, and all other state law claims are expressly preempted by the above-cited authority.

**B. Plaintiffs' Extra-Contractual State Law Claims Are Preempted Because They Conflict With Congress' Purposes In Creating The Federal Crop Insurance Program.**

Leaving aside express preemption, plaintiffs' extra-contractual claims are also preempted because they conflict with Congress' purpose in creating the crop insurance program.

This Court has previously acknowledged that Congress enacted the FCIA and created the FCIC "to establish a nationwide system of crop insurance for farmers." In re 2000 Sugar Beets Litig., 228 F. Supp. 2d 922, 996 (D. Minn. 2002). Consistent with this intent and objective, the Court found "it most unlikely that when Congress created federal crop insurance, specifically intending to provide a uniform and accessible system of farmer protection, it also intended to allow fifty states to administer that program according to fifty different state insurance regulatory schemes." Id. Accordingly, in order to promote this uniformity, the federal crop insurance program shall be construed in accordance with federal law, "not Minnesota law or any other state law." Id. The assertion of extra-contractual claims under state law clearly conflicts with the objectives of operating a nationwide system of crop insurance and promoting uniformity.

These same principles have been applied more recently in Alliance Ins. Co. v. Wilson, supra, where the Eighth Circuit held that, while a state agency's ability to investigate FCIC-reinsured private insurers was not preempted by the FCIA and the regulations promulgated thereunder, any further action—even requiring the insurer to pay for the investigation—"might well [constitute] the type of individual state obligation that uniform federal legislation is designed to avoid." Id. at *5. Based on the same analysis that was applied in Alliance as well as by this Court, plaintiffs' extra-contractual claims seeking monetary payments for alleged

violations of obligations arising under Minnesota law are preempted as "the type of individual state obligation that uniform federal legislation is designed to avoid." Alliance, ---- F.3d at ----, 2004 WL 2118491, *5.

The Eighth Circuit's decision in Alliance is entirely consistent with numerous conflict preemption cases that have arisen in the context of the federal flood insurance program. Federal courts across the country have held that extra-contractual state law claims are preempted by conflict with the federal flood insurance program because allowing such claims to stand would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Gibson v. Am. Bankers Ins. Co., 289 F.3d 943, 949 (6th Cir. 2002) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399 (1941)). See, e.g., Gibson, 289 F.3d at 948-49 (claims under Kentucky Unfair Claims Settlement Statute preempted); West v. Harris, 573 F.2d 873, 880-82 (5th Cir. 1978), cert. denied, 440 U.S. 946 (1979) (claim for punitive damages under state statute preempted); Pecarovich v. Allstate Ins. Co., 272 F. Supp. 2d 981, 989 (C.D. Cal. 2003) (claim for breach of implied covenant of good faith and fair dealing preempted); Peal v. N. Carolina Farm Bureau Mut. Ins. Co., 212 F. Supp. 2d 508, 516-17 (E.D.N.C. 2002) (claims under North Carolina Unfair and Deceptive Trade Practice Act preempted); Neill v. State Farm Fire & Cas. Co., 159 F. Supp. 2d 770, 776-77 (E.D. Pa. 2000) (claims under Pennsylvania Unfair Trade Practices and Consumer Protection Act and for bad faith preempted); Scherz v. S. Carolina Ins. Co., 112 F. Supp. 2d 1000, 1008-10 (C.D. Cal. 2000) (claim for breach of implied covenant of good faith and fair dealing preempted).

The underlying policies and objectives that influenced these decisions in flood insurance cases are equally applicable to cases arising from the crop insurance program.

Flood insurance, like crop insurance, involves a federal program whereby insurance is issued either directly from a coordinating federal agency, i.e. the Federal Emergency Management Agency ("FEMA"), or by private insurers, using standard insurance policies that are mandated by the federal government, and all claims under the policies are paid directly from the U.S. Treasury. Pecarovich, 272 F. Supp. 2d at 986; Peal, 212 F. Supp. 2d at 513; Neill, 159 F. Supp. 2d at 772-73. The federal crop insurance program shares all of these same characteristics. (7 U.S.C. § 1508(k); 7 C.F.R. §§ 457.2(b) & 457.7; SRA §II(A)(3)).

Furthermore, as was the case with the creation of the federal crop insurance program, "Congress determined that uniformity and consistency were integral components of a national flood insurance program." Peal, 212 F. Supp. 2d at 512; see also Gibson, 289 F.3d at 947; West, 573 F.2d at 880; Pecarovich, 272 F. Supp. 2d at 986; Neill, 159 F. Supp. 2d at 773. Congress intended the federal crop insurance program to have these same integral components of uniformity and consistency. See, e.g., 7 U.S.C. § 1502 (purpose of statutes is to create a "sound system of crop insurance"); In re 2000 Sugar Beet Crop Ins. Litig., 228 F. Supp. 2d at 997 (Congress created the crop insurance program "specifically intending to provide a uniform and accessible system of farmer protection"); 55 Fed. Reg. 23066, 23067-68 (1990) (FCIC has recognized its "Congressional mandate to establish crop insurance uniformly throughout the United States").

If insureds were allowed to pursue extra-contractual state law claims against flood insurers, this would frustrate Congress' intent to create a uniform system of flood insurance. Gibson, 289 F.3d at 949-50; Pecarovich, 272 F. Supp. 2d at 989; Peal, 212 F. Supp. 2d at 516-17; Neill, 159 F. Supp. 2d at 777; Scherz, 112 F. Supp. 2d at 1008-09. Each insurer would be subject to differing duties, obligations, and exposures that would vary among the laws of the fifty

states. Id. This same principle is directly applicable to the crop insurance program because, just as it is with flood insurance, "subjecting [private insurers] to fifty different bad faith statutes would undermine Congressional intent to have a uniform system." Peal, 212 F. Supp. 2d at 516.

Furthermore, as would be the case with crop insurers, subjecting private flood insurers to fifty states' internal laws would make private insurers less likely to participate in the flood insurance program. Peal, 212 F. Supp. 2d at 516; Neill, 159 F. Supp. 2d at 777; Scherz, 112 F. Supp. 2d at 1008-09. If insurers were subjected to paying money judgments on state law claims, this increased exposure likely would cause insurers to withdraw from the program. Id. Such a result would frustrate Congress' intent to provide affordable and accessible insurance to as much of the public as possible. Id. This same rationale is equally applicable to crop insurance, where private insurers do not have the ability to pass along state-law money judgments, and private insurers would likely drop out of the program, thus contravening Congress' intent to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance," 7 U.S.C. § 1502, as well as its "purpose of encouraging the broadest possible participation of producers." 7 U.S.C. § 1508(e)(1).

Finally, allowing extra-contractual claims against flood insurers would increase the financial burden on the U.S. Treasury. Pecarovich, 272 F. Supp. 2d at 989; Peal, 212 F. Supp. 2d at 517; Neill, 159 F. Supp. 2d 777-78. Because insurers' payments on state law claims would not be paid through the program, private insurers would "err on the side of overpaying claims, in an effort to insulate themselves from potential bad faith liability." Neill, 159 F. Supp. 2d at 778; see also Peal, 212 F. Supp. 2d at 517; Scherz, 112 F. Supp. 2d at 1008. The increased cost would be borne directly by the federal government, as FEMA is responsible for reimbursing insurance

claims from the U.S. Treasury. The federal government would be deprived of the ability to control the costs of the program—one of the goals of the flood insurance program. Id.

This same rationale is applicable to the crop insurance program. If extra-contractual state law claims are not preempted, then private insurers would likely err on the side of paying claims in order to avoid such suits, thereby causing increased draws on the Treasury that frustrate Congress' aims of improving the economic stability of agriculture and creating a sound system of crop insurance. 7 U.S.C. § 1502.

Indeed, the application of conflict preemption is even stronger in the case of federal crop insurance, as contrasted to flood insurance, because Congress and the FCIC have expressly stated that state law shall not apply to frustrate the program or its objectives. See 7 U.S.C. § 1506(l); 7 C.F.R. § 400.352. Given that plaintiffs' extra-contractual claims would clearly impede the aims of the crop insurance program, such claims are barred under the doctrine of conflict preemption.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON EACH OF PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS FOR INDEPENDENT REASONS AS WELL.

Wholly apart from the fact that the doctrines of both express preemption and conflict preemption bar plaintiffs' extra-contractual claims altogether, these extra-contractual claims should also be dismissed because they do not constitute viable causes of action under state law.

### A. Plaintiffs' Claim For Breach Of Implied Duty Of Good Faith And Fair Dealing Should Be Dismissed As A Matter Of Law.

As a general matter, Minnesota law does not allow tort claims against insurers for "bad faith" refusal to pay a first-party claim. Weimer, et al., Insurance Law & Practice, 22 Minnesota Practice Series 67 (2001). Bad faith refusals to pay first-party claims are not actionable absent an individual tort, and "Minnesota common law follows the traditional rule that a bad faith

breach of contract does not convert the breach of contract into a tort." Id. (citing Morris v. Am. Family Mut. Ins. Co., 386 N.W.2d 233, 237 (Minn. 1986); Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652 (Minn. 1979)). Notably, plaintiffs have not pleaded any independent tort claims, and the deadline for amending the pleadings had long since passed even before these cases had been stayed pending arbitration. See Docket No. 53 (Pretrial Scheduling Order, entered June 7, 2002).

In any event, while an insurer's refusal to pay or unreasonable delay in making payment on an undisputed amount may breach the contract and give rise to liability for losses naturally and approximately flowing from that breach, extra-contractual damages are not recoverable for such a breach of contract unless the breach was accompanied by an independent tort. See, e.g., Olson v. Rugloski, 277 N.W.2d 385, 387-88 (Minn. 1979) (barring extra-contractual claim for punitive damages). "The failure to pay an insurance claim itself, no matter how malicious, does not constitute a tort; it constitutes a breach of an insurance contract." Saltou v. Dependable Ins. Co., 394 N.W.2d 629, 633 (Minn. Ct. App. 1986) (citing Haagenson, 277 N.W.2d at 652).

Plaintiffs' breach of implied duty of good faith and fair dealing claims do not articulate a cause of action for a separate tort. On the contrary, this claim focuses entirely on an alleged breach of the subject insurance policy. Specifically, plaintiffs allege defendants' "actions and omissions violate the policy, as well as Minnesota and/or federal law with respect to the timeliness and lack of resolution of an insurance claim" and that "failure to pay the claim is without any reasonable basis given the facts alleged [in plaintiffs' complaint]." (Complaint at ¶ 73.)

Based on the foregoing, plaintiffs' claim for breach of implied duty of good faith and fair dealing is nothing more than a variation of their breach of contract claim, and does not articulate

a claim for a separate tort. Even if it did, the Panel's findings completely undermine plaintiffs' claims. Specifically, the Panel found that defendants denied the claims "[w]ithin approximately one month" and that "[t]he denials recounted lack of notice and failure to leave representative samples" which, of course, are specific terms and conditions of coverage that are set forth in the insurance policy. (Findings of Fact at ¶ 26.)[5] Thus, defendants had reasonable and legitimate bases to deny the claims and, accordingly, cannot be subject to claims for bad faith. See, e.g., Nobles v. Rural Cmty. Ins. Servs., 303 F. Supp. 2d 1292, 1305-07 (M.D. Ala.), aff'd, --- F.3d ---, Table No. 04-11313 (11th Cir. 2004).

**B. Plaintiffs' Claim For Estoppel Should Be Dismissed As A Matter Of Law.**

Plaintiffs' claims for estoppel are no more than an extension of their breach of contract claim and seeks nothing more than coverage under the subject multiperil crop insurance policy. Specifically, plaintiffs' complaint alleges as follows as the factual basis for their estoppel claims:

- "Defendants and Defendants' agents have represented to Plaintiffs that its multi-peril crop insurance covered losses including freeze damage to sugar beets."
- "Defendants knew or reasonably should have known at the time of the above-pleaded representations that sugar beet damage occurs in the latent manner prescribed in this Complaint and that Plaintiffs had been lead to believe that such damage was covered as an insurable loss."
- "Plaintiffs reasonably relied upon Defendants' representations in purchasing and maintaining multi-peril crop insurance."
- "At no time did Defendants inform Plaintiffs that latent sugar beet damage was not covered under the relevant policies."
- "In fact, the RMA has opined that 'RMA believes that the type of losses experienced by the Minnesota producers in the above listed counties were contemplated under the Sugar Beet Crop Insurance Provisions when RMA elected to cover fees as a cause of loss.'"

---

[5] Arbitration Panel's Findings of Fact, issued August 19, 2004, have been filed with the court and are available at Docket No. 81.

(Plaintiffs' Complaint at ¶ 77.) Plaintiffs further assert that "Defendants are now estopped to claim that the policy does not cover previously latent freeze damage as described above; such a claim would produce a patently unjust result and that it would render Plaintiffs' sugar beet crop insurance virtually meaningless and elusory as it relates to freeze damage to sugar beets." (Id. at ¶ 78.) Accordingly, resolution of plaintiffs' breach of contract claims effectively resolves their estoppel claims.

Even if that were not the case, plaintiffs' estoppel claims would be barred as a matter of law. Minnesota law does not permit the doctrine of estoppel to be used to enlarge the coverage of an insurance policy. See Shannon v. Great Am. Ins. Co., 276 N.W.2d 77, 77 (Minn. 1979); Malakowsky v. Johannsen, 374 N.W.2d 816, 819 (Minn. Ct. App. 1985); Minn. Mut. Fire & Cas. Co. v. Rudzinski, 347 N.W.2d 848, 851 (Minn. Ct. App. 1984). See also Northwest Airlines, Inc. v. Fed. Ins. Co., 32 F.3d 349, 356-57 (8th Cir. 1994). Likewise, while declining to adopt "an across-the-board no-estoppel rule," the United States Supreme Court's decisions have "evince[d] a most strict approach to estoppel claims involving public funds." Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 426 (1990).

**C. Plaintiffs' Claim For Violation Of Minnesota's Consumer Fraud Statute Should Be Dismissed As A Matter Of Law.**

Plaintiffs have asserted claims for the alleged violation of Minnesota' consumer fraud statute which prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise . . ." Minn. Stat. § 325F.69, subd. 1. Thus, in order to state a claim under this statute, plaintiffs "would have to prove that [defendant insurers] fraudulent sold them the insurance policy, because the statute can only apply in connection with the purchase of the policy." Sather v. State Farm Fire & Cas. Ins. Co., 2002

WL 378111, at *6 (Minn. Ct. App. 2002) (citing Banbury v. Omnitrition Int'l, Inc., 533 N.W.2d 876, 888 (Minn. Ct. App. 1995)).

Plaintiffs have asserted the following in support of their claim for violation of the "Minnesota Prevention of Consumer Fraud Act":

- "Plaintiffs are consumers within the meaning of the Minnesota Prevention of Consumer Fraud Act. The policy is merchandise within the meaning of the Minnesota Prevention of Consumer Fraud Act."
- "As the Risk Management Agency of the United States Department of Agriculture recognized, the 'types of losses experienced by the Minnesota producers . . . were contemplated under the Sugar Beet Crop Insurance Provisions (RMA elected to cover freeze as a cause of loss).'"
- "Defendants' failure to pay for the 'types of losses experienced by the Minnesota producers' renders the insurance policy's representations to insure against 'adverse weather conditions' a misleading and deceptive practice within the meaning of the Minnesota Prevention of Consumer Fraud Act."

(Plaintiffs' Complaint at ¶ 81.) As plaintiffs' own pleading demonstrates, this statutory claim is based on a theory that defendants' failure to pay plaintiffs' claims renders the insurance policy mandated by the federal government "misleading and deceptive." However, there is no claim that the subject policy was ever misrepresented to plaintiffs, nor are there any allegations alleging defendants engaged in misrepresentations or deception in connection with the sale of the insurance. Accordingly, plaintiffs' claims for violation of this statute fails as a matter of law.

## CONCLUSION

For the above-stated reasons, defendants respectfully request the Court to grant their Motion for Summary Judgment as to all of plaintiffs' extra-contractual claims asserted as Counts II, III, and IV in plaintiffs' complaints in the above-captioned consolidated cases.

Dated: October 7, 2004

By: s/Thomas H. Boyd

Thomas H. Boyd, #0200517
Matthew D. Spohn, #0313567
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
Tel: (612) 604-6400
Fax: (612) 604-6800
tboyd@winthrop.com
mspohn@winthrop.com

P. John Owen (KS Bar #11835; MO Bar #22523)
National Crop Insurance Services, Inc.
7201 West 129th Street, Suite 200
Overland Park, KS 66213
(913) 685-2767
johno@ag-risk.org

STINSON MORRISON HECKER L.L.P.
Kristin L. Farnen (AZ Bar # 16177; MO Bar # 30620; KS Bar #17517)
2600 Grand Avenue
Kansas City, MO 64108-4606
(816) 691-2600
kfarnen@stinsonmoheck.com

Attorneys for Defendants

Michael J. Davenport
RAIN AND HAIL LLC
9200 Northpark Drive
Suite 300
Johnston, IA 50131-3006
(515) 559-1000
Michael.davenport@rainhail.com

Co-counsel for Defendant Rain and Hail, LLC

2147779v1