Exhibit C4

228. Ms. Arrigo attended all of the meetings regarding the SMBSC growers' 2000 sugar beet crop. [K. Arrigo, TP 1521:1 to 1521: 17.] At the first meeting, SMBSC, through Mr. Ritacco, represented to Ms. Arrigo that timely notices of damage or of loss were not possible because it and the growers were unaware of any damage until SMBSC sent its communication in mid-December. [K. Arrigo, TP 1533:2 to 1534:23.] SMBSC requested that the RMA find that an insurable loss had occurred and to direct the defendants to engage in loss adjustment procedures. [K. Arrigo, TP 1534:23 to 1535:11.]

229. Following the first meeting in late January with SMBSC, Ms. Arrigo authored Manager's Bulletin MGR-01-010. On March 2, 2001, Ms. Honor issued the bulletin. [K. Arrigo, TP 1535:7 to 1538:4; PT Ex. 43.]

230. In MGR-01-010, RMA did not find any single cause of loss that caused the loss to the growers, and man-made or human-influenced losses are not covered. [K. Arrigo, TP 1540:5 to 1540:9;1542:22 to 1543:13.]

231. Ms. Arrigo addressed Section 13 under the MPCI policy in MGR-01-010. Production is converted to standardized tons using one of two formulas contained in the Crop Provisions. Paragraph 13(d) of the Crop Provisions is implicated when "harvested production or unharvested production that is appraised after the earliest delivery date that the processor accepts harvested production and that meets the minimum acceptable standards contained in the sugar beet processor contract." Paragraph 13(e) is implicated when "harvested production or unharvested production that is appraised after the earliest delivery date that the processor accept harvested production and that does not meet the minimum acceptable standards contained in the sugar beet processor contract due to an insured peril." [DT Ex. 1, See § 13(e).]

232. Ms. Arrigo addressed the applicability of Section 13(e) at the hearing. Prior to the decision of the Eighth Circuit in *AWG Farms* [PT Ex. 13], the prevailing view within RMA was that beets should be tested at the time that they were delivered to the processor, and if they met the minimum standards in the contract at that time, there would be no loss under Section 13(e) or its predecessor. Since the decision in *AWG Farms,* RMA considers that the determination as to whether a beet has met the minimum acceptable standards under the grower agreement should be made when the beets are about to be processed, not at delivery. [K. Arrigo, TP 1545:20 to 1446:18.] MGR-01-010 did not make any determination whether the SMBSC growers' beets met the minimum standards of their agreement, only that the standard must be evaluated when the beets were about to be processed. [K. Arrigo, TP 1547:13 to 1547:17.]

233. Following the issuance of MGR-01-010, SMBSC, through Congressman Kennedy's office, requested a second meeting with Ms. Honor and Ms. Arrigo. [K. Arrigo, TP 1554:24 to 1555:17.] At that meeting, SMBSC requested that the RMA direct the defendants to pay the claims. Ms. Arrigo responded on behalf of the RMA that they could not do that, because there were too many individual facts to determine of which RMA had no knowledge. [K. Arrigo, TP 1556:8 to 1556:14; 1557:3 to 1557:9.]

234. SMBSC further requested that the defendants be directed to pay the losses under Section 13(e) of the MPCI policy. Ms. Arrigo again responded that the RMA had seen no evidence that the beets did not satisfy the minimum objective standards of 80% purity and 12% sugar content under SMBSC's grower agreement. [K. Arrigo, TP 1557:10 to 1557:1558:13.]

235. RMA does not consider "suitability for processing" a standard by which adjustment under 13(e) is appropriate. In order to make a quality determination, RMA requires an objective standard by which quality is evaluated as necessary to ensure that only natural

disasters, not management decisions, are compensated as an insurable loss. An objective standard is necessary to ensure the integrity of the federal crop insurance program. [K. Arrigo, TP 1558:14 to 1559:14.]

236. RMA did not in any manner direct or obligate the insurance companies to pay any of the claims. MGR-01-010 stated that each plaintiff continued to maintain the burden of establishing that "the loss of production was directly attributed to an insurable cause of loss, the cause of loss occurred during the insurance period, and the total production or valued received for the production." [PT Ex. 43.]

237. Because of the continued confusion over the applicability of MGR-01-010 to adjustment of the loss for the purported claims, the insurance companies requested a meeting with RMA. The defendants sought clarification as to whether losses should be adjusted pursuant to Section 13(d) or 13(e) since the beets already had been processed and the defendants could not determine any individual's loss as a result. RMA ultimately advised the defendants that it had processing records for the SMBSC growers as a whole that the companies were to use unless an individual grower could establish his/her/its own purity and sugar content percentages. Nonetheless, the RMA continued to require that each loss, if established, had to be paid on an individual basis. [K. Arrigo TP, 1560:21 to 1562:11.]

238. During this same time, the defendants advised the insured plaintiffs that they were waiting for additional guidance and direction from the RMA concerning the insurability and adjustment procedures for plaintiffs' claims. [DT Ex. 29; DT Ex. 30.]

239. Following those meetings, a supplement to MGR-01-010 was authored by Ms. Arrigo, and it was issued by Ms. Honor as MGR-01-010.1 on June 5, 2001. [PT Ex. 44.]

240. MGR 010-01.1 reopened the notice issue based on RMA's receipt of SMBSC's electronic communications to the growers. RMA also directed the companies to make a determination whether their insureds had complied with each of their obligations under the policy. This included a determination as to whether their insureds had knowledge of the deterioration in the piles in sufficient time in which to provide notice of damage and notice of loss within the time constraints contained in the MPCI policy, notwithstanding Mr. Ritacco's representations to the contrary. [K. Arrigo, TP 1577:12 to 1579:2; 1581:5 to 1582:10.] Again, RMA did not direct the defendants to pay an indemnity in MGR 010-01.1. [K. Arrigo, TP 1568:21 to 1569: 19; 1574:21 to 1575:8; PT 44.]

241. Additionally, the second bulletin discussed discarded beets and specifically listed data provided to RMA by SMBSC from its processing records which disclosed the sugar content and purity of the processed beets for each week that beets were processed from August 27, 2000 through March 11, 2001. The data indicated that the average sugar content and purity at processing were 15.99% and 86.51% respectively. [K. Arrigo, TP 1555:25 to 1557:9; PT 44.]

242. Each of the defendants responded again to the issuance of MGR-010-01.1. RCIS as a gesture of goodwill attempted to calculate what loss its insureds would be entitled to under MGR-010-01.1, and paid that amount. A list of the RCIS insured plaintiffs who received payments and the amount of that payment is contained in Attachment 20. Other companies continued to deny the claims based on the information contained in MGR 010-01.1 [DT Ex. 44; DT Ex. 45; DT Ex. 47; DT Ex. 724.]

243. Aware of the fact that the defendants had refused to pay its growers following its December 15 communication, SMBSC sought a "legislative solution" to its storage losses.

SMBSC retained the former head of the RMA, Ken Ackerman, to assist in obtaining the "legislative solution." [K. Ackerman, TP 1449:23 to 1450:8.]

244. Mr. Ackerman's efforts included seeking amendments to the 2001 disaster legislation for disaster relief, to the appropriations bill for USDA's budget, and to the FCIA directing defendants to pay plaintiffs' claims. [K. Ackerman, TP 1444:17 to 1445:2; 1445:21 to 1445:25; 1445:7 to 1449:22.]

245. The Panel views Mr. Ackerman's legislative efforts in a negative light. They compromised his credibility as an expert witness for plaintiffs. They also undermined their contention that they have a clear, unequivocal, existing right to recover indemnities under the MPCI policies.

***Claimed Indemnities***

246. The Sugar Beet Crop Provisions of the MPCI policy provide that any loss must be determined on a unit basis. In the event a loss or damage is incurred, and that loss or damage is an insurable loss under the policy, a timely submitted claim will be calculated by:

> "(b)(1) Multiplying the insured acreage by its respective production guarantee;
>
> (2) Subtracting the total production to count from the result in paragraph (b)(1);
>
> (3) Multiplying the result of paragraph (b)(2) by your price election; and
>
> (4) Multiplying the result of paragraph (b)(3) by your share.

For purposes of this formula, total production to count also includes all production lost due to uninsured causes of loss. Consequently, there is an inverse relationship between the losses associated with uninsured causes of loss and the probability that an indemnity will be payable, if all other policy provisions have been satisfied. [DT Ex. 1, (7 C.F.R. §§457.109(13)(b); (c)(D)(ii).] Thus, the mathematical formula underlying an indemnity calculation is:

> (Guaranteed Tons less Total Production to Count) times (Insured's Price Election) times (Insured's Share Percentage)

247. "Production to count" in the loss formula is to be stated in "standardized tons. Sections 13(d) and 13(e) of the Crop Provisions of the policy provide the formula for converting harvested production or unharvested production into standardized tons, depending upon whether that production "meets the minimum acceptable standards contained in the sugar beet processor contract" (13(d)) or "does not meet the minimum acceptable standards contained in the sugar beet processor contract (13(e))."

248. Section 13(d) converts production into standardized tons by:

> (1) Dividing the average percentage of raw sugar (sugar that has not been extracted from the sugar beet) by the raw sugar content percentage shown in the Special Provisions; and
>
> (2) Multiplying the result (rounded to three places) by the number of tons of such sugar beets.
>
> "The average percentage of raw sugar will be determined from tests preformed by the processor at the time of delivery. If individual tests of raw sugar content are not made at the time of delivery, the average percent of raw sugar may be based on the results of previous tests performed by the processor during the crop year if it is determined that such results are representative of the total production. If not representative, the average percent of raw sugar will equal the raw sugar content percent shown in the Special Provisions.
>
> [DT Ex. 1 (Crop Provisions 7 C.F.R. § 457.109(13)(d)).]

The mathematical formula for conversion into standardized tons under Section 13(d) is:

> (Actual % of raw sugar/raw sugar % listed in Special Provision) times (Tons of beets meeting minimum standards)

249. Without admitting any matter or waiving any defense, the parties entered into a mutual commitment to prepare a database containing certain information within the possession of the parties that is needed to calculate any indemnities, such as insured acres, share interest,

APH, price election, guaranteed tons, etc. Thus, for purposes of converting production to standardized tons under Section 13(d) the parties do not dispute any of the component parts of the mathematical formula under 13(d), such as the number of tons of beets delivered by the growers or the actual percentage of raw sugar contained in the beets delivered, or the percentage of raw sugar listed in the Special Provision.

250. Assuming, after considering the factual determinations made by the Panel that the referring Courts determine that an indemnity is found payable, for purposes of the mathematical calculation under 13(d), the only dispute involves whether the beets delivered met SMBSC's minimum acceptable standards under its grower agreement.

251. If it is determined that an indemnity is payable, and that the indemnity should be calculated under the provisions of 7 C.F.R. §457.109(13)(d), then the amount of such indemnity payment for each plaintiff (exclusive of consideration of FSA, CCC payments or other indemnities) is set forth in Attachment 21.

252. Section 13(e) converts production into standardized tons by:

> (1) Dividing the gross dollar value of all of the damages sugar beets on the unit (including the value of cooperative stock, patronage refunds, etc.) by the local market price per pound on the earlier of the date such production is sold or the date of final inspection for the unit:
>
> (2) Dividing that result by 2,000; and
>
> (3) Dividing that result by the county average raw sugar factor contained in the Special Provisions.
>
> [DT Ex. 1 (Crop Provisions 7 C.F.R. § 457.109(13)(e)).]

The mathematical formula for conversion into standardized tons under Section 13(e) is:

> (Tons of beets not meeting minimum acceptable standards) times (gross dollar value factor) divided by (local market price of sugar per pound) divided by (2000/county average raw sugar factor in Special Provisions)

253. Assuming, after considering the factual determinations made by the Panel, that the referring Courts determine that an indemnity is payable, for purposes of the mathematical calculation under 13(e), three disputes remain between the parties: (i) the tons of beets that did not meet SMBSC's minimum acceptable standards under its grower agreement, (ii) the "gross dollar value" of the beets, and (iii) the local market price of sugar.

254. Plaintiffs claim that each and every beet delivered after the freeze was damaged and, therefore, not suitable for processing. As a result, plaintiffs contend that all beets delivered after the freeze must be considered not meeting the minimum acceptable standards under the grower agreement. This is neither plausible nor probable. As set forth in these findings the freezing conditions were not of uniform severity or duration, SMBSC accepted all of plaintiffs' beets for processing after having tested them for sugar content and inspecting them for freeze damage, and SMBSC actually processed these beets into sugar. Plaintiffs have not offered the Panel any evidence allocating any less than the total tons of beets delivered as being unacceptable, and thus have taken an "all or nothing" approach. Their approach is inconsistent with the evidence, including contemporaneous actions of and statements by SMBSC, among other matters, that plaintiffs produced a good, storable crop; that beets were processed into sugar in the weeks following the freeze; that beet payment advances made November 15 and 30 should be increased based on crop quality; and that beets suitable for processing continued to be available for processing in January and February 2001 and then were processed. [*See generally* findings 160-176 ("Overall Quality of Plaintiffs' 2000 Beet Crops").]. Consequently, plaintiffs have not proven, and therefore this Panel cannot find, the number of tons of beets damaged due to an insurable cause of loss. Plaintiffs have failed to establish the extent to which their

respective beets were damaged solely by any freezing. Moreover, because all plaintiffs' beets were commingled with other growers' beets, the Panel cannot determine which beets or whose beets suffered an insurable cause of loss. Since plaintiffs cannot establish that anything less than the whole did not meet the minimum acceptable standards under the grower agreement, plaintiffs have not established the number of tons that did not meet the minimum acceptable standards.

255. Plaintiffs have failed to meet their burden of proof on two additional and necessary components for such calculations, *i.e.,* the gross dollar value of the beets, and the local market price for the sugar.

256. Plaintiffs contend that the gross dollar value of the beets must be zero since many of the plaintiffs were required to reimburse SMBSC for a portion of the advances made to them in November and January. However, the reimbursement was caused by SMBSC's over-advancing payments made on the anticipated, but far from earned, profits from processing sugar beets. The fact that the plaintiffs had to reimburse SMBSC for the overpayments is not dispositive of the gross dollar value of the beets.

257. The definition of the term "gross" dollar value is indicative of a positive number. Kohler's Dictionary for Accountants defines "gross" as being undiminished by related deductions, as applied to revenues. Consequently, the gross dollar value of the beets would be representative of the revenue (without deduction) for the value of a ton of sugar beets on the open market. [DT Ex. 849, see generally S. Woody-Coussens, TP 2142:8 – 2164:11.] Plaintiffs, however, persist in substituting SMBSC's net profits after all beets were processed as the proxy for the gross dollar value of the beets before processing.

258. Although the Panel disagrees with plaintiffs' argument that SMBSC's "net profit" is an appropriate proxy for determining the gross dollar value of beets, it does note that plaintiffs' approach also appears to be inconsistent with SMBSC's historical practice.

259. On November 6, 2001, SMBSC advised the growers that the annual audit of its books had been completed, and that the final grower payment was $8.14/ ton. Notably, the "per-ton acre" was not covered by the KPMG auditor's report. [PT Ex. 173 at p. 31.] For beets delivered after October 6, 2000, SMBSC deviated from its normal method of "valuing" the beets. Historically, the value attributed to the beets by SMBSC was driven by the quality factors – sugar and loss-to-molasses. However, SMBSC chose to ascribe an "equitable" factoring all operations from October 16 through the end of the fiscal year. [PT Ex. 47.] These facts make it appear to the Panel that, for crop year 2000, SMBSC's calculations were driven by the litigation needs of its members.

260. Each plaintiff received a positive net payment for his/her/its beets. See Attachment 22 listing actually payments received on 2000 sugar beet crop. Others who experienced the same freezing conditions but delivered to other processors, realized a positive return; for instance, the Sidney area growers received $37.71 per ton for their frost-freeze beets.

261. Other than stating their claim that SMBSC's net profit was the equivalent to the gross dollar value for the beets at time of delivery or processing, plaintiffs offered no testimony, lay or expert, to meet their proof burden on the valuation issue. Defendants called Ms. Woody-Coussens, who provided credible testimony that gross dollar value was greater than zero. She did not opine, however, as to an estimated value.

262. The gross dollar value of the sugar beets is a number greater than zero. Plaintiffs have failed to establish any number other than zero. Consequently, this Panel cannot calculate any indemnities under 13(e).

263. Since the gross dollar value of the sugar beets is some number greater than zero, the value of the local market price of raw sugar must be proven by plaintiffs. Plaintiffs have offered no evidence of any kind to establish the local market price of raw sugar. Consequently, calculations cannot be made under 13(e).

264. Assuming, after considering the factual determinations made by the Panel, that the referring Courts determine that an indemnity is found payable, for purposes of the mathematical calculation under MGR-01-010 and MGR-01-010.1, the bulletins determine what percentages of the 2000 crop met the minimum acceptable standards under the grower agreements. Since all processed beets had sugar content and purity percentages above the objective standard of 80% purity/ 12% sugar content, Section 13(d) would be used to convert those beets to standardized tons. Only the actually discarded sugar beets apportioned to individual growers under Item 1 of MGR-01-010.1 would be converted to standardized tons using Section 13(e).

265. If it is determined that an indemnity is payable, and that the indemnity should be calculated under the provisions of the bulletins, then the amount of such indemnity payment for each plaintiff cannot be determined, since plaintiffs have not established the gross dollar value for the discarded beets, nor have they established the local market price of sugar. These facts are both necessary to calculate any amounts payable under the bulletins relating to discarded beets.

266. Each plaintiff previously has received a catastrophic risk payment, indemnity, or other payment for their 2000 sugar beet harvest. The amounts received by the individual

plaintiffs in FSA disaster assistance is identified in Attachment 23. These payments totaled $10,013,069 for these plaintiffs. In addition to the FSA payments, SMBSC received, on behalf of its growers, Commodity Credit Corporation ("CCC") payments in the form of sugar. SMBSC sold this sugar and distributed the proceeds to its growers. The total value of the CCC payments received by the growers equaled $4,664,000.

267. The MPCI policy states that if an indemnity is payable and the insured is also eligible to receive benefits for the same loss under any other USDA program, then "the total amount received from all sources may not exceed the amount of [the insured's] actual loss. [DT Ex. 1 ¶35 (7 C.F.R. §457.8(35).] The FSA disaster payments and the CCC payments were made under USDA programs. Therefore, they affect the amount of indemnity that may be payable. Plaintiffs, however, have not established their right on an individual basis to receive any indemnity payment, in addition to the amounts they already have received under the other USDA programs.

***RMA's Investigation***

268. RMA's Risk Compliance Division was called in to investigate the "claims" submitted on behalf of SMBSC's growers. [D. Voy, TP 1748: 4 to 1750:4.] RMA personnel interviewed SMBSC representatives from the agricultural and operations departments, as well as company representatives. RMA personnel obtained harvesting guidelines, storage management guidelines, information on storability of beets, acceptance and rejection guidelines, and other information from various sources, including other processors, such as American Crystal and Minn-Dak. [R. Trier, TP 1707:17 to 1708:1; D. Voy, TP 1749:2 to 1749:18; 1752:16 to 1753:15; D. Berg, Depo. Tr. 101:19 to 103:23, DT Ex. 493, 494.] It obtained and used information from USDA extension services. [D. Voy, TP 1752:12 to 1752:15; DT Ex. 757; DT Ex. 757.]

269. RMA compiled the factual information related to the SMBSC 2000 sugar beet processing campaign. The RMA's St. Paul compliance office was directed to establish time lines, to attempt to identify causes of loss, to determine if RMA's policies and procedures had been followed, specifically notice of loss provisions, and to prepare a report and to send it into Washington D.C. [R. Trier, TP 1699:3 to 1699:15.]

270. On February 14, 2001, following the investigation conducted by the Risk Compliance Division, the requested report was issued by Mr. Mark Huber, Director of the St. Paul Compliance office. [D. Voy, TP 1702:10 to 1702:18, DT Ex. 757.] This investigation represented the first (and remains the only) independent investigation conducted the nearest in time to any investigation conducted.

271. At that time, RMA's Risk Compliance Division concluded that it could not identify any single cause of loss, nor could it attribute any portion of the loss to a single event. [R. Trier, TP 1704:21 to 1705:20.] In fact, RMA concluded that there may have been causes of the claimed losses other than those imposed by nature, for example storage practices. [R. Trier, TP 1728:19 to 1728:24, DT Ex. 757, p. 3.] Moreover, it concluded that notice of loss requirements contained in the MPCI policy had not been followed by the plaintiffs in most cases, and, therefore, the loss could not be adjusted because any opportunity for adjustment had long passed. The beets had all been accepted SMBSC and they had been commingled, so that loss adjustment could not be conducted. [R. Trier, TP 1711:20 to 1712:18; DT Ex. 757 p. 3.]

272. Specifically, RMA found that any freezing conditions were not uniform or widespread. [DT Ex. 757, p. 4.] The RMA investigation revealed that SMBSC "admitted concern about allowing damaged beets into the piles after the freeze." [DT Ex. 757, p. 5.]

273. Moreover, RMA noted the "unseasonably warm" and "daily high temperatures" and concluded that "these warm temperatures increase the risks of harvesting and storing beets because of spoilage issues. [DT Ex. 757, p. 2.] The investigation noted that by November 2 the Buffalo Lake piling station had already begun juicing. SMBSC advised the investigators that "the last beets to be delivered caused the most problems." The investigators noted that, "normally, these beets should have been the safest. The last delivered beets had only been in the pile 10-13 days before the signs of deterioration became evident." [DT Ex. 757, p. 5.] Consequently, the beets that caused the most problems were harvested sometime between October 21-24, well after the freeze event complained of by the plaintiffs.

Respectfully submitted,

WINTHROP & WEINSTINE, P.A.

By: Thomas Boyd by KLF

Thomas H. Boyd, #200517
3200 Minnesota World Trade Center
30 East Seventh Street
St. Paul, MN 55101(651) 290-8400
Fax: (651) 292-9347

P. JOHN OWEN

By: P. John Owen by KLF

P. John Owen (KS Bar #11835; MO Bar #22523)
National Crop Insurance Services, Inc.
7201 West 129th Street, Suite 200
Overland Park, KS 66213
(913) 685-2767
Fax: (913) 685-3080

STINSON MORRISON HECKER LLP

By: Kristin L. Farnen

Kristin L. Farnen (MO Bar # 30620, KS Bar # 17517, AZ Bar # 016177)
Matthew J. Salzman (KS Bar #19460)
Jennifer J. Coleman (MO Bar #0052426; KS Bar #20111)
2600 Grand Boulevard
Kansas City, MO 64108-4606
(816) 691-2600
Fax: 474-4208

Counsel for All Defendants Other Than Rural Community Insurance Services

MICHAEL J. DAVENPORT

By: *Michael J. Davenport by KLF*
Michael J. Davenport
Rain and Hail LLC
9200 Northpark Drive, Suite 300
Johnston, IA 50131
(515) 559-1510
Fax: (515) 559-1001

Additional Counsel for Defendants in
No. 01-CV-1629

HENKE BUFKIN

By: *W. Kurt Henke by KLF*
W. Kurt Henke
P.O. Box 39
Clarksdale, Mississippi 38614
(662) 624-8500
Fax: (662) 624-8040

Additional Counsel for Defendants in
Nos. 01-CV-1632

LAPP, LIBRA, THOMSON, STOEBNER
& PUSCH, CHARTERED

By: *Richard T. Thomson by KLF*
Richard T. Thomson
One Financial Plaza, Suite 2500
Minneapolis, MN 55402
(612) 338-5815
Fax: (612) 338-6651

Counsel for Rural Community Insurance Services

**SERVICE LIST**

This is to certify that on November 10, 2003, a true and correct copy of the foregoing was submitted to the Arbitration Panel and served by electronic mail on:

George G. Eck
Daniel J. Brown
Dorsey & Whitney LLP
50 South 6th Street
Minneapolis, MN 55402

Attorneys for Plaintiffs

Dale M. Wagner
Mark P. Hodkinson
Bassford, Lockhart, Truesdell & Briggs, P.A.
3550 Multifoods Tower
33 South Sixth Street
Minneapolis, MN 55402

Attorneys for Plaintiffs

Attorney for Defendants

PHXDOCS 258192v10

# ATTACHMENT 1

**ATTACHMENT 1.**

**Plaintiffs Who Have Executed Assignments**

| Plaintiff name | Insurance company |
|---|---|
| 1. A Plus Farms | Hartford Insurance Company of the Midwest |
| 2. Black Bros. Farms | North Central Crop Insurance, Inc. |
| 3. Troy Elfering | Hartford Insurance Company of the Midwest |
| 4. Gerry Gigstad | Hartford Insurance Company of the Midwest |
| 5. Ross Harms | Hartford Insurance Company of the Midwest |
| 6. Herickhoff Farms | IGF Insurance Company |
| 7. Michael Holien | Great American Insurance Company |
| 8. Marvin Kiecker | Rural Community Insurance Services |
| 9. Sheldon Kittelson | Hartford Insurance Company of the Midwest |
| 10. Ronald Koenen | North Central Crop Insurance, Inc. |
| 11. Kleven Farms Inc. | Blakely Crop Hail, Inc. |
| 12. Charles Melberg | Hartford Insurance Company of the Midwest |
| 13. William Pansch | Rain & Hail LLC |
| 14. Dennis Pansch | Rain & Hail LLC |
| 15. Ryberg Farms Inc. | Rural Community Insurance Services |
| 16. Richard Schmoll | Rain & Hail LLC |
| 17. Blake Schroeder | Rain & Hail LLC |
| 18. Gregory Steffel | Hartford Insurance Company of the Midwest |
| 19. Tim Swanson | Rain & Hail LLC |
| 20. Alan Tersteeg | Great American Insurance Company |
| 21. Michael J. Tisdell | Hartford Insurance Company of the Midwest |
| 22. M. Shawn Tisdell | Hartford Insurance Company of the Midwest |
| 23. Tisdell Farms | Hartford Insurance Company of the Midwest |
| 24. William Tisdell | Hartford Insurance Company of the Midwest |
| 25. David Tomes | Hartford Insurance Company of the Midwest |
| 26. Triple G Farms, Inc. | Hartford Insurance Company of the Midwest |
| 27. Dean Wacek | Hartford Insurance Company of the Midwest |

# ATTACHMENT 2

Attachment 2

Plaintiffs Obtaining Beet Coverage from Farm Credit Services

| Name Insured | Insurance Company | [illegible] |
|---|---|---|
| AMMERMANN ROLAN W. | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| ANDRESEN STEVEN R. | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| ARNOLD DANIEL | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| ARNOLD MARK | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| ARNOLD THOMAS | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| BOHLSEN DARWIN | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| BRIAN JOHNSON | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| BRODERIUS JEFF | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| C AND P FARMS INC | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| DAHLAGER SAMUEL | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| DOVENMUEHLE ALLAN | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| DOVENMUEHLE GLEN | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| DOVENMUEHLE NEIL | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| GUNTER LAVERNE | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| HARMS CALVIN | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| HERICKHOFF BERNIE | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| JOHNSON DERON M. | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| JOHNSON FARMS | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| JSF INC | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| KAPPING KIM A. | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| KIECKER GREGRY | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| KRF INC | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| KUBESH BRAD | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| KUBESH FARMS INC | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| LIPPERT PAUL | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| LUND JASON J. | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| LUND JOHN T. | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| LUND PAUL | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| MACIK TIM E. | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| MERSBERGEN RICK | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| RICK BRODERIUS INC | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| SCHWINDT RICK | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| SUTER RONALD | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| YOUNGKRANTZ ALLEN | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| YOUNGKRANTZ DEAN | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| YOUNGKRANTZ GARY | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| YOUNGKRANTZ GLENN | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |
| ZASKE WAYLAND | AMERICAN AGRISURANCE, INC. | FCS of MN Valley |

# ATTACHMENT 3

# Attachment 3
## Claimed Holders of Substantial Beneficial Interest

| Name |
|---|
| 1. Ahrenholz, Susan |
| 2. Fischer, Elizabeth |
| 3. Frank, Bruce |
| 4. Hanson, Richard |
| 5. Hanson, Robert |
| 6. Hultgren, Nancy |
| 7. Jacobs, James |
| 8. Jansen, Naomi |
| 9. Karl, David M. |
| 10. Koehl, Karl |
| 11. Montgomery, Diane |
| 12. Olson, Kenneth |
| 13. Olson, Mark |
| 14. Schemel, Robert |
| 15. Schjenken, Robert W. |
| 16. Schleusner, Kenneth |
| 17. Sjogren, DeAnna |
| 18. Tersteeg, Randy |
| 19. Tersteeg, Scott |

# ATTACHMENT 4

# ATTACHMENT 4

## Plaintiffs Failing to Prove the Existence of Valid Growers Agreement

**Plaintiff Name**

1. Blarco
2. Frank, Bruce
3. Hanson, Richard
4. Hanson, Robert
5. Hinrichs, David
6. Hinrichs, James
7. Holien, Michael D.
8. Jansen, Naomi
9. Johnson, Jay
10. Kleven Hog Farm, Inc.
11. Koehl, Karl
12. Montgomery, Diane
13. Olson Kenneth
14. Olson, Mark
15. Pape, Aaron
16. Peters, Bryan
17. S.J. Jacobs & Sons
18. Schmoll, Richard
19. Sjogren, Dennis
20. Sjogren, Deanna
21. Telford, David
22. Tersteeg Bros.
23. White Horse Farms

# ATTACHMENT 5

**Attachment 5**
**Plaintiff Name and Insurance Policy Numbers**

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 2 | ABBAS SCOTT | AMERICAN AGRISURANCE, INC. | 0552179 | | |
| 3 | AMMERMANN ROLAN W. | AMERICAN AGRISURANCE, INC. | 0413350 | 0444205 | |
| 4 | ANDRESEN STEVEN R. | AMERICAN AGRISURANCE, INC. | 0413353 | 0413355 | |
| 5 | ARNOLD DANIEL | AMERICAN AGRISURANCE, INC. | 0322849 | 0357924 | |
| 6 | ARNOLD MARK | AMERICAN AGRISURANCE, INC. | 0322232 | 0357925 | |
| 7 | ARNOLD THOMAS | AMERICAN AGRISURANCE, INC. | 0308323 | 0446829 | |
| 8 | BAKKER FARMS | AMERICAN AGRISURANCE, INC. | 0549469 | 0549649 | |
| 9 | BAKKER JOEL | AMERICAN AGRISURANCE, INC. | 0547246 | 0547247 | |
| 10 | BOHLSEN DARWIN | AMERICAN AGRISURANCE, INC. | 0444216 | 0444217 | |
| 11 | BRATSCH JEFFREY | AMERICAN AGRISURANCE, INC. | 0547228 | | |
| 12 | BRATSCH RUSSELL | AMERICAN AGRISURANCE, INC. | 0547227 | | |
| 13 | BRIAN JOHNSON | AMERICAN AGRISURANCE, INC. | 0042359 | 00423593 | |
| 14 | BRODERIUS JEFF | AMERICAN AGRISURANCE, INC. | 0211013 | 0211014 | 0213427 |
| 15 | C AND P FARMS INC | AMERICAN AGRISURANCE, INC. | 0076477 | | |
| 16 | C J W FARMS | AMERICAN AGRISURANCE, INC. | 0551533 | 0551537 | |
| 17 | CHAN MARK | AMERICAN AGRISURANCE, INC. | 0547383 | | |
| 18 | DAHLAGER SAMUEL | AMERICAN AGRISURANCE, INC. | 0449034 | | |
| 19 | DOVENMUEHLE ALLAN | AMERICAN AGRISURANCE, INC. | 0444209 | 0446822 | |
| 20 | DOVENMUEHLE GLEN | AMERICAN AGRISURANCE, INC. | 0019651 | 0444210 | |
| 21 | DOVENMUEHLE NEIL | AMERICAN AGRISURANCE, INC. | 0213263 | 0444211 | |
| 22 | DYKEMA TODD | AMERICAN AGRISURANCE, INC. | 0552145 | 0552147 | |
| 23 | FREIBORG RANDY | AMERICAN AGRISURANCE, INC. | 0551050 | 0551055 | |
| 24 | GUNTER LAVERNE | AMERICAN AGRISURANCE, INC. | 0473626 | | |
| 25 | HAGEN FARMS, INC. | AMERICAN AGRISURANCE, INC. | 0054759 | 0547291 | |
| 26 | HARMS CALVIN | AMERICAN AGRISURANCE, INC. | 0113956 | | |
| 27 | HERICKHOFF BERNIE | AMERICAN AGRISURANCE, INC. | 0458545 | | |
| 28 | JOHNSON DERON M. | AMERICAN AGRISURANCE, INC. | 0423591 | 0423592 | |
| 29 | JOHNSON FARMS | AMERICAN AGRISURANCE, INC. | 0423589 | 0423590 | |
| 30 | JSF INC | AMERICAN AGRISURANCE, INC. | 0423571 | | |
| 31 | KAPPING KIM A. | AMERICAN AGRISURANCE, INC. | 0173263 | | |
| 32 | KIECKER GREGRY | AMERICAN AGRISURANCE, INC. | 0214282 | | |
| 33 | KRF INC | AMERICAN AGRISURANCE, INC. | 0423568 | | |
| 34 | KUBESH BRAD | AMERICAN AGRISURANCE, INC. | 0423573 | | |
| 35 | KUBESH FARMS INC | AMERICAN AGRISURANCE, INC. | 0357911 | | |
| 36 | LINDQUIST JON E | AMERICAN AGRISURANCE, INC. | 0038549 | | |
| 37 | LIPPERT PAUL | AMERICAN AGRISURANCE, INC. | 0556463 | | |
| 38 | LUND JASON J. | AMERICAN AGRISURANCE, INC. | 0111996 | | |
| 39 | LUND JOHN T. | AMERICAN AGRISURANCE, INC. | 0053288 | | |
| 40 | LUND PAUL | AMERICAN AGRISURANCE, INC. | 0325492 | | |
| 41 | MACIK TIM E. | AMERICAN AGRISURANCE, INC. | 0018681 | 0211012 | |
| 42 | MERSBERGEN RICK | AMERICAN AGRISURANCE, INC. | 0413356 | 0413358 | |
| 43 | RICK BRODERIUS INC | AMERICAN AGRISURANCE, INC. | 0022545 | 0144904 | 0146067 |
| 44 | SCHWINDT RICK | AMERICAN AGRISURANCE, INC. | 0449039 | | |
| 45 | SJORGEN DENNIS | AMERICAN AGRISURANCE, INC. | 0073096 | | |
| 46 | SUTER RONALD | AMERICAN AGRISURANCE, INC. | 0316233 | | |
| 47 | W B FARMS INC | AMERICAN AGRISURANCE, INC. | 0255458 | | |
| 48 | WHITEHORSE FARMS | AMERICAN AGRISURANCE, INC. | 0547827 | | |
| 49 | WUBBEN WILLIS | AMERICAN AGRISURANCE, INC. | 0547313 | | |
| 50 | YOUNGKRANTZ ALLEN | AMERICAN AGRISURANCE, INC. | 0210965 | | |
| 51 | YOUNGKRANTZ DEAN | AMERICAN AGRISURANCE, INC. | 0210955 | | |
| 52 | YOUNGKRANTZ GARY | AMERICAN AGRISURANCE, INC. | 0210960 | | |
| 53 | YOUNGKRANTZ GLENN | AMERICAN AGRISURANCE, INC. | 0210963 | | |
| 54 | ZASKE DAVE | AMERICAN AGRISURANCE, INC. | 0552142 | | |
| 55 | ZASKE WAYLAND | AMERICAN AGRISURANCE, INC. | 0473625 | | |
| 56 | KLEVEN FARMS INC | BLAKELY CROP HAIL, INC. | 0078109 | 0078110 | |
| 57 | KLEVEN HOG FARM INC | BLAKELY CROP HAIL, INC. | 0078128 | | |
| 58 | KNUDSON BROS PARTNERSHIP | BLAKELY CROP HAIL, INC. | 0075933 | 0077941 | |
| 59 | KNUDSON GUNVAL | BLAKELY CROP HAIL, INC. | 0075938 | | |
| 60 | SACHARIASON EDWARD | BLAKELY CROP HAIL, INC. | 0077473 | | |
| 61 | SACHARIASON FARMS | BLAKELY CROP HAIL, INC. | 0075826 | | |
| 62 | SACHARIASON JASON | BLAKELY CROP HAIL, INC. | 0077475 | | |
| 63 | SACHARIASON SCOTT | BLAKELY CROP HAIL, INC. | 0077474 | | |
| 64 | SEDERSTROM STEVE | BLAKELY CROP HAIL, INC. | 0076120 | | |
| 65 | SPRINGER DAVID | BLAKELY CROP HAIL, INC. | 0075925 | | |
| 66 | TELFORD DAVID | BLAKELY CROP HAIL, INC. | 0078077 | | |
| 67 | AHRENHOLZ JAMES | FARM BUREAU MUTUAL INSURANCE CO. OF IOWA | 0373949 | | |
| 68 | AHRENHOLZ TODD | FARM BUREAU MUTUAL INSURANCE CO. OF IOWA | 0397846 | | |