Exhibit D2

1. SMBSC's procedures for rejecting beets that it determined were not suitable for processing was the subjective opinion of its management and not based on objective criteria. (J. Widner, TP 383:3 to 383:16.)

2. SMBSC accepted all of plaintiffs' beets for processing after having tested them for sugar content and inspecting them for freeze damage, and SMBSC actually processed all but 483,000 tons of these beets into sugar. (S. Martin, TP 2329 to 2331:8, 2343:24 to 2344:8, 2260:19 to 2261:6; K. Jaggard, TP 2385:23 to 2387:3, 2393:11 to 2393:20; M. Suhr, TP 905:18 to 908:2, 979:13 to 981:12; J. Plathe, TP 1112-1117.)

3. SMBSC processed the growers' beets into sugar. By October 19, 2000, 1,235,000 CWT of sugar had been processed. By November 18, 2000, SMBSC has processed 1,961,000 CWT of sugar. By February 9, 2001, the amount of sugar processed increased to 2,381,000 CWT. By the end of the 2000 campaign, SMBSC manufactured 3,898,000 CWT of sugar from the harvested sugar beets. (PT Ex. 8).

4. Plaintiffs received $11,014,984 from SMBSC as payments for their processed sugar beets. (PT Ex. 10.)

5. Aware of the fact that the defendants had refused to pay its growers following its December 15 communication, SMBSC sought a "legislative solution" to its storage losses. SMBSC retained the former head of the RMA, Ken Ackerman, to assist in obtaining the "legislative solution." (K. Ackerman, TP 1444:14 to 1450:8.)

6. Mr. Ackerman's efforts included seeking amendments to the 2001 disaster legislation for disaster relief, to the appropriations bill for USDA's budget, and to the Federal Crop Insurance Act directing defendants to pay plaintiffs' claims. (K. Ackerman, TP 1444:17 to 1445:2; 1445:21 to 1445:25; 1445:7 to 1449:22.)

7. As required by the PIK agreements entered into by the plaintiffs, none of the yields from PIK acres were delivered to SMBSC. In order to confirm that the growers had grown sugar beets that were "harvestable" (PT Ex. 6.165) and to provide the information necessary to account for the PIK acres in the insured plaintiffs' annual production history ("APH") (DT Ex. 156), PIK appraisals were performed on most but not all of the diverted acreage. The PIK appraisals occurred in September and October, 2000. (J. Bakker, Depo. Tr. 36:16 to 36:19; C. Henning, TP 2018:5 to 2018:7; K. Kanten, TP 799:6 to 799:9.) The appraisals demonstrated that the sugar beets diverted to the PIK program were undamaged. Moreover, the insured plaintiffs who participated in the PIK program received payment for their PIK acreage. (J. Plathe, TP 1129:16 to 1129:19; H. Ruiter, TP 1197:23 to 1197:25.) No evidence has been offered by plaintiffs that they returned any or all of the PIK payments because of any damage to the beets.

8. RCIS as a gesture of goodwill attempted to calculate what loss its insureds would be entitled to under MGR-010-01.1, and it then paid those amounts. A list of the RCIS insured plaintiffs who received payments and the amount of that payment is contained in an Attachment to these findings. (*See* Attachment 20 to Defs. Findings for list.)

9. With respect to those plaintiffs who have submitted evidence regarding their checking of beets for freeze damage, their practices varied widely. Some plaintiffs cut open their beets and saw frost damage. (S. McNeil, Depo. Tr. 8:13 to 8:21; N. Prokosch, Depo. Tr. 7:10 to 7:18.) Others such as James Nyquist and Ken Olson cut open their beets and saw damage in some beets but not others. (J. Nyquist, Depo. Tr. 23:8 to 23:16; K. Olson, Depo. Tr. 25:21 to 25:25.) Don Hartung of plaintiff Hartung Farms, Inc. and Michael D. Holien cut open the beets after the healing process and continued to see some, but not as much damage to the beets. (D.

Hartung, Depo. Tr. 62:8 to 62:12; M. Holien, Depo. Tr. 28:17 to 29:12, 39:1 to 40:3.) Yet, they harvested the beets in any event. (D. Hartung, Depo. Tr. 62:13 to 62:16; M. Holien, Depo. Tr. 28:25 to 29:1.) Other plaintiffs cut open their beets and determined that the beets were "white all of the way through" and therefore, concluded that they were "good and storable beets." (R. Schwitters, Depo. Tr. 88:12 to 88:22; 119:17 to 119:23; T. Jacobs, Depo. Tr. 26:19 to 26:21, 22:14 to 22:18; K. Kanten, TP 793:8 to 793:10, 794:5 to 794:8.) Several plaintiffs, such as Mark Grussing and Troy Elfering, testified that they did not cut open their beets at all or they could not remember if they did, and the record is silent as to the practice of the majority of plaintiffs. (M. Grussing, Depo. Tr. 26:1 to 26:4; T. Elfering, Depo. Tr. 32:23 to 33:9.)

10. Each plaintiff previously has received a catastrophic risk payment, indemnity, or other payment for their 2000 sugar beet harvest. The amounts received by the individual plaintiffs in FSA disaster assistance are identified in an Attachment to these findings. (*See* Attachment to be prepared by Deloitte upon resolution of indemnity issues for identification of amounts for specific growers.) These payments totaled $10,155,687 for these plaintiffs.[4] In addition to the FSA payments, SMBSC received, on behalf of its growers, Commodity Credit Corporation ("CCC") payments in the form of sugar. SMBSC sold this sugar and distributed the proceeds to its growers. The total value of the CCC payments received by the plaintiffs equaled $4,008,733.

11. Growers were not penalized for providing notice of probable loss under any circumstances, even if they did not eventually submit a claim of loss. (G. Kleven, TP 531:3 to 531:11).

---

[4] This amount has changed from the November 10, 2003 submission due to the Panel's findings resolving in plaintiffs' favor certain exceptions regarding plaintiffs indemnities.

12. Some growers believed it was a wise business practice to submit a notice of probable loss whenever there was any possibility of a loss. (*See e.g.* K. Peterson, TP, 770-771.)

13. To the extent the defendants began receiving the communications from SMBSC and the growers concerning their 2000 sugar beet crop, they attempted to respond in accordance with their loss adjustment obligations. Each made a determination as to whether information existed by which it could determine if damage occurred to the crop, if any such damage was caused by an insurable event, if the damage occurred during the insurance period, and to what extent any such damage caused an insurable loss. Some sent adjusters to the fields while others knew that no beets remained to be inspected. (Steve Johnson TP, 1917-1918; 1991:21 to 1992:8; 1997:15 to 1998:7; 2000:17 to 2000:22; M. Vetter, Depo. Tr 32:3 to 32:11; C. Henning, TP 2002:10 to 2002:17; B. Olson, TP 2060:15 to 2061:7; 2067:7 to 2067:24.) Information was requested from SMBSC, but none was provided. (C. Henning, TP 1994:23 to 1997:14.)

14. Because of the tardiness of the notice, the commingling of the crop, and the lack of any check strips, the defendants concluded that they could not obtain the requisite information, and advised their insureds that they could not adjust the claim. (C. Henning, TP 1991:21 to 1992:8; 1997:15 to 1998:7; 2000:6 to 2000:22; S. Johnson, TP 1926; 1962-1963; B. Olson, TP 2067:7 to 2067:24.)

15. The Hartford conducted a comparably more extensive investigation than did some companies. (S. Johnson, TP 1917-1918; M. Vetter Depo. Tr. 32:3 to 32:11.) It opened claims files and then sought guidance from the RMA's St. Paul Regional Service Office on how to proceed properly with these notices. (S. Johnson, TP 1917-1918; 1947; 1912-1913.) The Hartford researched relevant weather data. (S. Johnson, TP 1917-1918; M. Vetter Depo. Tr. 32:3 to 32:11.) The Hartford requested production and delivery records together with other

information and documentation from the plaintiffs, but were refused the requested information. (S. Johnson, TP 1931-1932, 1945.) Like the remaining defendants, The Hartford also concluded that, with the information available to it, it could not accurately adjust a loss. The RMA, through Mr. Trier, confirmed that The Hartford had appropriately responded. (S. Johnson, TP 1914-1916, 1929; DT Ex. 702.)

16. The MPCI policy required the insured plaintiffs to "[l]eave representative samples [check strips] intact for each field of the damaged unit…." The "[r]epresentative samples of the unharvested crop must be at least 10 feet wide and extend the entire length of each field in the unit." Similar to the SMBSC requirements for testing sugar beets, a sample this size was necessary in order to obtain enough beets to determine accurately the existence and extent of damage to the sugar beets. This duty extended to the insured plaintiffs whether they believed they had a probable insured loss or merely damage, whether insured or not, to their crop. No insured plaintiffs left representative strips or samples as required by the policy. (Steve Johnson, TP 1962:22 to 1962:25; R. Haney, TP 1892:18 to 1892:23.)

17. Consistent with the federal crop insurance program, loss adjusters do not instruct the growers how to farm (*e.g.* when and whether to harvest, etc.). (M. Splettstaszer, Depo. Tr. 43:6 to 43:21; G. Kleven, TP 565:19 to 567:25).

18. The role of the PIK adjusters is limited to determining acreage for APH purposes only; they are neither required nor expected to analyze crops for frost or freeze damage. (R. Spanier, Depo. Tr. 26:11 to 26:22).

19. Not all plaintiffs who planted sugar beets harvested their sugar beets and delivered those beets to SMBSC for processing. Those plaintiffs who did not harvest or deliver

their sugar beets on one or all of their insured units are reflected on an Attachment to these findings (Defs. Findings, Attachment 10.)

20. The production delivered by each insured plaintiff exceeded the production guaranty of that plaintiff, except those limited plaintiffs reflected on the Attachment to these findings. (Defs. Findings, Attachment 15.)

## SECTION XI
### MISCELLANEOUS FINDINGS AND RELATED MATTERS

1. Provisional Findings 19 and 89 are clearly erroneous. There is no evidentiary foundation for the statement: "Fields in the SMBSC growing region can and do freeze in late October and/or early November." (PF 89.) National Weather Service data, which the Panel proposes to find "is the most reliable data with respect to the relevant time frames and locations" (PF 36), actually establishes that there are no recorded instances of ground freezing in the SMBSC growing region in October, that the earliest recorded date for the first ground freeze is November 7, and that the average date for the first ground freeze is November 24. (S. Martin, TP. 2337:20 to 2338:22; DT Ex. 785.) Provisional Findings 19 and 89 should be deleted or modified to state accurately the evidence.

2. Provisional Finding 21 should be modified to provide a complete recitation of SMBSC's scheduling of the 2000 harvest. The expanded version is based on the uncontroverted text of PT Ex. 122 and testimony of Mr. Widner (J. Widner, TP 130:10 to 131:18). Defendants propose the following:

> In 2000, full harvest originally had been scheduled to begin on or about October 4, but then was rescheduled to begin on October 9, 2000. This delay had nothing to do with weather conditions at the time, but resulted from an effort to increase the value of the crop by allowing sugar content to increase and from an assessment of the available risk management tools, including crop insurance. However, in the early morning hours of Friday, October 6, 2000, the first of four overnight freezes hit the SMBSC growing region.

3. Provisional Finding 31 is clearly erroneous. By December 10, 2000, discarded tonnage was estimated to reach 150,000 tons (PT Ex. 212) and by December 19, 2000, 78,000 tons of beets actually had been discarded (DT Ex. 467/PT Ex. 208.)

4. Provisional Finding 33 is clearly erroneous. First, SMBSC's plant could and did process more than 11,000 tons of beets per twenty-four hour day. In fact, SMBSC processed 13,855 tons on November 3, 2000, and averaged more than 13,000 tons per day for the seven days ending November 13, 2000. (Section III, ¶ 3, *Supra.*) Second, normal processing of the 2000 harvest would not "have yielded 6,000,000 CTW bags of sugar (*i.e.,* 6 million 100 pound bags)." For example, the 1998 crop produced approximately 2.3 million tons (as did the 2000 crop per PF 29), but only yielded 5,367,000 CWT. (DT Ex. 432/PT Ex. 173 at p. 30.) In fact, over the nine crop years prior to 2000, only once did SMBSC produce close to 6,000,000 CWT -- in crop year 1994, when 2,417,759 tons yielded 6,013,000 CWT. (*Id.*)

5. Provisional Findings 34 and 47 are clearly erroneous, as there were locations where the temperature of unharvested beets did not reach 26.6° F. (DT Ex. 779; K. Jaggard, TP 2416:19 to 2417:11.) Summary Findings 1 and 2 also are clearly erroneous.

6. Provisional Finding 245, regarding commingling, is clearly erroneous. Contrary to the Panel's unsupported position (PF 245), commingling does prevent accurate loss adjustment. As the sugar beet crop provisions state with clarity in Section 13(a) (DT Ex. 1), losses are determined on a unit basis, and Section 13(e) applies this concept to beets not meeting processor contract standards. Further, special rules are applied to commingled production, as set forth in Section 13(a)(2). That commingling of multiple growers' production is material to loss adjustment is evidenced by the policy's requirements to leave check strips and to permit taking of

samples. Commingling of multiple producers' production is not contemplated, and it renders loss adjustment problematic at best and impossible in reality.

7. The Panel proposes to find that ITT/Hartford Insurance Company of the Midwest ("Hartford") (PF 2.i.) is the defendant who sold MPCI policies to the plaintiffs. The actual name of the defendant is Hartford Insurance Company of the Midwest.

8. With respect to the Marvin Kiecker release issues (¶ 7., Panel Order Regarding Disputed Database and Related Issues, and the April 6, 2004, Order Regarding Disputed Database and Related Issues) defendant, RCIS believes that all pertinent information has been identified in its previous submissions to the Panel, including its November 10, 2003, submission and its corresponding submissions at the November 19, 2003, hearing. If Mr. Kiecker or his counsel assert otherwise, RCIS will respond on May 7, 2004.

9. On October 17, 2003, the Court in cause no. 49C01-0310-PL-002942, pending in the Circuit Court for Marion County, Indiana, entered an Order of Rehabilitation regarding IGF Insurance Company ("IGF"). On October 31, 2003, the Court entered an Order which, *inter alia*, enjoined the prosecution of various claims against IGF. Pursuant to various Orders, this injunction remained in effect until May 28, 2004. On April 22, 2004, IGF's Rehabilitator filed its Verified First Accounting and Petition for an Order of Liquidation and Related Relief. On April 28, 2004, the Court Ordered that a hearing be set to consider IGF's Liquidation Petition on July 16, 2004. Moreover, the Court extended its Order for Injunction and Other Relief until such time as the hearing is held, and the Court has ruled on the Liquidation Petition. (*See* attachments hereto). Consequently, as to IGF, no findings may be entered against it in contravention of these Orders.

Respectfully submitted,

WINTHROP & WEINSTINE, P.A.

By: /s/ Thomas H. Boyd
Thomas H. Boyd, #200517
225 South Sixth Street
Suite 3500
Minneapolis, MN 55402
Telephone: (612) 604-6400
Fax: (651) 292-9347

P. JOHN OWEN

By: /s/ P. John Owen
P. John Owen (KS Bar #11835; MO Bar #22523)
National Crop Insurance Services, Inc.
7201 West 129th Street, Suite 200
Overland Park, KS 66213
(913) 685-2767
Fax: (913) 685-3080

STINSON MORRISON HECKER LLP

By: /s/ Kristin L. Farnen
Kristin L. Farnen (MO Bar # 30620, KS Bar # 17517, AZ Bar # 016177)
Matthew J. Salzman (KS Bar #19460)
Jennifer J. Coleman (MO Bar #0052426; KS Bar #20111)
2600 Grand Boulevard
Kansas City, MO 64108-4606
(816) 691-2600
Fax: 474-4208

Counsel for All Defendants Other Than Rural Community Insurance Services

MICHAEL J. DAVENPORT

By: /s/ Michael J. Davenport
Michael J. Davenport
Rain and Hail LLC
9200 Northpark Drive, Suite 300
Johnston, IA 50131
(515) 559-1510
Fax: (515) 559-1001

Additional Counsel for Defendants in
No. 01-CV-1629

HENKE BUFKIN

By: /s/ W. Kurt Henke
W. Kurt Henke
P.O. Box 39
Clarksdale, Mississippi 38614
(662) 624-8500
Fax: (662) 624-8040

Additional Counsel for Defendants in
Nos. 01-CV-1632

LAPP, LIBRA, THOMSON, STOEBNER
& PUSCH, CHARTERED

By: /s/ Richard T. Thomson
Richard T. Thomson, #109538
One Financial Plaza, Suite 2500
Minneapolis, MN 55402
(612) 338-5815
Fax: (612) 338-6651

Counsel for Rural Community Insurance Services

## SERVICE LIST

This is to certify that on April 29, 2004, a true and correct copy of the foregoing was submitted to the Arbitration Panel and served by electronic mail on:

George G. Eck
Daniel J. Brown
Theresa Bevilacqua
Dorsey & Whitney LLP
50 South 6th Street
Minneapolis, MN 55402

Attorneys for Plaintiffs

/s/ Kristin L. Farnen
Attorney for Defendants

PHXDOCS 307611v10

STATE OF INDIANA )
) SS:
COUNTY OF MARION )

IN THE MARION CIRCUIT COURT

CAUSE NO. 49C01-0310-PL-002942

SALLY MCCARTY, as Insurance Commissioner of the State of Indiana,

Plaintiff

vs.

IGF INSURANCE COMPANY,

Indianapolis, IN

Defendant

FILED
147
APR 28 2004
CLERK OF THE
MARION CIRCUIT COURT

**ORDER**

On April 22, 2004, Sally B. McCarty, Commissioner of the Indiana Department of Insurance, as Rehabilitator of IGF Insurance Company ("IGF"), filed the Rehabilitator's Verified First Accounting and Petition for an Order of Liquidation and Related Relief ("Liquidation Petition"). Having considered the Liquidation Petition and being fully advised, the Court hereby ORDERS that:

1. On the 16 day of July, 2004, commencing at 9:00 A.m. in Room W-506, City-County Building, 200 E. Washington St., Indianapolis, Indiana 46204, there will be a hearing before the Court to consider the Liquidation Petition and the relief requested therein. Any person intending to object to the Liquidation Petition or otherwise wishing to appear at the hearing shall file with the Court, by no later than five (5) business days before the hearing, a notice of such intention to object or to appear, together with a detailed statement of the objections and any matters to be presented at the hearing, and shall concurrently furnish a copy of the notice and the statement to the Rehabilitator's counsel, Robert F. Wagner and Theodore L. Nicholas, Lewis & Wagner, 501

Indiana Avenue, Suite 200, Indianapolis, Indiana 46202.

2. The Order for Injunctive and Other Relief, as entered October 31, 2004, is hereby extended and shall remain in effect until the hearing has been held, and the Court has ruled on the Liquidation Petition.

3. The Rehabilitator is directed to mail, by regular first class United States mail, postage prepaid, within thirty (30) days of this Order, a copy of the Liquidation Petition (without exhibits), and a copy of the Notice of Hearing in substantially the form attached as Exhibit B to the Liquidation Petition, as modified to be consistent with this Order, to the last known address as indicated in IGF's records for the following groups of persons:

A. The Insurance Commissioners of each state in which IGF is doing business and the National Association of Insurance Commissioners;

B. Former officers and directors of IGF;

C. Current officers and directors of Symons International Group, Inc., the parent corporation of IGF;

D. The National Association of Insurance Guaranty Funds (NCIGF); the Indiana Insurance Guaranty Association, and any other guaranty fund or association that is or may become obligated as a result of the liquidation of IGF;

E. The Federal Crop Insurance Corporation;

F. All insurance producers of IGF;

G. All persons known or reasonably expected to have claims against IGF, including all policyholders on any policies which were in effect within two (2) years of the date the Order of Rehabilitator was entered;

H. Parties or their counsel of record in pending litigation and claims involving IGF or its insureds;

I. Reinsurers of IGF; and

J. The Recorder's Offices of Polk County, Iowa and Otter Tail County, Minnesota.

4. The Rehabilitator is further directed to cause the form Notice of Hearing in substantially the form attached as Exhibit B to the Liquidation Petition, as modified to be consistent with this Order and to delete the reference to the attachment of the Liquidation Petition, should be published once in a newspaper of general circulation in Indianapolis, Indiana within thirty (30) days of this Order.

5. Upon completion of the mailings and publications required by paragraph 3 above, the Rehabilitator shall file with the Court a Certificate of Compliance, which identifies the persons to whom mailings were made and the newspapers in which publication was made, and the respective dates thereof.

6. The Court finds that the mailings and publications of the Notice of Hearing, as set forth above, constitutes the best notice practicable under all circumstances as to the Rehabilitator's request that an Order of Liquidation be entered against IGF and in the consideration of the rights and duties of the interested persons with respect thereto.

Date: 4/28/04

Theodore M Sosin
JUDGE, MARION CIRCUIT COURT

COPIES TO:

Robert F. Wagner
Theodore L. Nicholas
LEWIS & WAGNER
501 Indiana Avenue
Suite 200
Indianapolis, IN 46204

All other persons entitled to notice pursuant
to this Order and Ind. Code § 27-9-3-10.

Q:\GEN\15007\IGF Insolvency Action\Liquidation Pleadings\Order for Hearing on Liq Final 4-22.doc

STATE OF INDIANA ) IN THE MARION CIRCUIT COURT
) SS:
COUNTY OF MARION ) CAUSE NO. 49C01-0310-PL-002942

SALLY B. McCARTY, as Insurance Commissioner of the State of Indiana,

Plaintiff,

vs.

IGF INSURANCE COMPANY

Defendant

FILED
95
APR 22 2004
CLERK OF THE MARION CIRCUIT COURT

**REHABILITATOR'S VERIFIED FIRST ACCOUNTING AND PETITION FOR AN ORDER OF LIQUIDATION AND RELATED RELIEF**

Indiana Insurance Commissioner, Sally B. McCarty, as Rehabilitator (hereinafter, the "Rehabilitator") of IGF Insurance Company ("IGF"), in person and by counsel, files her Verified First Accounting and Petition for an Order of Liquidation and Related Relief ("Liquidation Petition") and petitions the Court, pursuant to Ind. Code § 27-9-3-5 and § 27-9-3-6, for an Order of Liquidation. With respect thereto, and in support of this Petition, the Rehabilitator states as follows:

## I. Background

1. On October 17, 2003, the Commissioner filed her Verified Petition For Rehabilitation against Defendant, IGF, a domestic insurance company with headquarters located at 4720 Kingsway Dr., Indianapolis, Indiana 46205. As confirmed in written exhibits to the Verified Petition for Rehabilitation, IGF did not object to the filing of the Petition, or the Court's immediate consideration and ruling thereon, without the necessity of a hearing.

2. On October 17, 2003, the Court entered its Order of Rehabilitation. By the terms of the Order of Rehabilitation, the Commissioner of the Indiana Department of Insurance has

been appointed and now serves as Rehabilitator of IGF. The Commissioner as Rehabilitator has appointed Elizabeth A. Lovette, Executive Director of Indiana Insolvency, Inc., as Special Deputy Rehabilitator. Lewis & Wagner has been retained as outside legal counsel by the Rehabilitator.

3. On October 27, 2003, the Rehabilitator filed a Verified Petition for Injunctive and Other Relief, which was granted by the Court's Order for Injunctive and Other Relief dated October 31, 2003. On January 13, 2004, the Court granted the Rehabilitator's Verified Petition to Extend the Order for Injunctive and Other Relief, extending such relief an additional ninety (90) days. On April 13, 2004 the Court extended such relief for an additional forty-five (45) days.

4. Pursuant to the Order of Rehabilitation and the applicable statutes contained in Ind. Code § 27-9, et al., the Rehabilitator has taken control of IGF's place of business, and its assets, books, accounts, documents, and other records and property identified and located to date, and is administering them under the general supervision of this Court. Since the Order of Rehabilitation was issued, the Rehabilitator, through her deputies, consultants, and other personnel to whom certain responsibilities have been delegated, has managed the affairs of IGF, including the conduct of its business.

## II. <u>IGF's Financial Condition</u>

5. Pursuant to the Order of Rehabilitation, the Rehabilitator has evaluated IGF's financial condition to determine whether IGF can be rehabilitated, including the nature and extent of any outstanding liabilities and the potential for protecting the interests of policyholders and creditors of IGF.

6. Attached hereto as Exhibit A are summary financial sheets showing the assets and liabilities of IGF, as of December 31, 2003, and the analysis thereof conducted by the Rehabilitator's consultants. The total known value of IGF's assets determined by the Rehabilitator as of December 31, 2003 was $2,845,784, and the total of IGF's liabilities with known values was determined to be $6,140,086.

7. Based upon the Rehabilitator's review and analysis of the financial information contained in Exhibit A, the Rehabilitator hereby confirms that IGF is "insolvent" as that term is defined in Ind. Code § 27-9-1-2.

8. Pursuant to Indiana Code § 27-9-3-5(a) and § 27-9-3-6(3), the Rehabilitator believes that any further attempt to rehabilitate IGF would substantially increase the risk of loss and would be hazardous, financially or otherwise, to policyholders, insureds, and other creditors of IGF, and the public. The Rehabilitator further believes that any such attempt would be futile. The Rehabilitator thus requests that the Court, after a hearing, enter a declaration of IGF's insolvency and an Order of Liquidation in accord with Ind. Code § 29-9-3-7.

## III. <u>Order for Injunctive and Other Relief</u>

9. The Rehabilitator has undertaken efforts to provide copies of the Order for Injunctive and Other Relief, and the Court's Orders extending such relief, as previously issued in this proceeding, to counsel who have appeared in actions involving IGF and/or its insureds, in order that temporary stays of all pending actions against IGF and/or its insureds could be requested.

10. The Rehabilitator respectfully requests that the relief granted by the Order for Injunctive and Other Relief be extended through and including both the hearing and the Court's ruling on this Petition now filed against IGF. Should the Court enter an Order of Liquidation, the

Rehabilitator recommends that, as of the date of the entry of such Order of Liquidation, that the Order for Injunctive and Other Relief be lifted with respect to IGF's insureds. The Rehabilitator further recommends that the Order for Injunctive and Other Relief should remain in place permanently after the Order of Liquidation with respect to IGF and the Liquidator, except for claims or other actions commenced in this Court as part of the Liquidation proceedings in accordance with Ind. Code § 27-9.

## IV. <u>Hearing and Notice Requirements</u>

11. The Rehabilitator respectfully requests that the Court set a hearing on this Petition For An Order Of Liquidation now filed against IGF, to be held at the Court's earliest convenience, but not less than sixty (60) days from the date of the Order setting such hearing

12. The Rehabilitator recommends that the Court direct her to mail, by regular first class United States mail, postage prepaid, within thirty (30) days of the Court's Order setting the hearing on this Petition, a copy of this Verified First Accounting And Petition For An Order Of Liquidation (without exhibits), and a copy of the Notice of Hearing in substantially the form attached hereto as Exhibit B, to the last known address as indicated in IGF's records for the following groups of persons:

A. The Insurance Commissioners of each state in which IGF is doing business and the National Association of Insurance Commissioners;

B. Former officers and directors of IGF;

C. Current officers and directors of Symons International Group, Inc., the parent corporation of IGF;

D. The National Conference of Insurance Guaranty Funds (NCIGF); the

Indiana Insurance Guaranty Association, and any other guaranty fund or association that is or may become obligated as a result of a liquidation of IGF;

E. The Federal Crop Insurance Corporation;

F. All insurance producers of IGF;

G. All persons known or reasonably expected to have claims against IGF, including all policyholders on any policies which were in effect within two (2) years of the date the Order of Rehabilitator was entered;

H. Parties or their counsel of record in pending litigation and claims involving IGF or its insureds;

I. Reinsurers of IGF; and

J. The Recorder's Offices of Polk County, Iowa and Otter Tail County, Minnesota.

14. The Rehabilitator also recommends that the Notice of Hearing in substantially the form attached hereto as Exhibit B, but modified to delete the reference to the attachment of this Verified First Accounting And Petition For An Order Of Liquidation, should be published once in a newspaper of general circulation in Indianapolis, Indiana within thirty (30) days of the Court's Order setting the hearing on this Petition.

WHEREFORE, the Rehabilitator of IGF, in person and by counsel, respectfully requests that this Court, through an entry of an Order in the form attached hereto as Exhibit C, grant the following relief:

(A) Set a hearing on the Liquidation Petition to be held at the Court's earliest

available date but not less than sixty (60) days after the entry of the Court's Order setting the date for hearing on this Petition;

(B) Extend the terms and conditions of the Injunctive Order applicable to IGF until the hearing and the Court rules on this Petition;

(C) Order the Rehabilitator to give Notice of the hearing on this Liquidation Petition in accordance with the recommendations contained herein;

(D) After such hearing, enter an Order of Liquidation (in the form of a final judgment in accordance with Rule 54 (B) of the Indiana Rules of Trial Procedure), which:

(1) Finds and declares that IGF is insolvent and should be liquidated in accordance with Ind. Code § 27-9-3;

(2) Finds and declares that further attempts to rehabilitate IGF would substantially increase the risk of loss and would be hazardous financially or otherwise, to policyholders, creditors, and the public, and would be futile;

(3) Appoints the Commissioner, and her successors in office, as the Liquidator for IGF;

(4) Lifts the Order for Injunctive and Other Relief with respect to the insureds of IGF;

(5) Permanently extends remaining relief granted in the Court's Order for Injunctive and Other Relief entered on October 31, 2004, barring the commencement, prosecution, or further prosecution of any suit, action or other proceeding against IGF or the Liquidator, by way of original

claim, third party claim, joinder or otherwise, except for claims or other actions commenced in this Court as part of the Liquidation proceedings;

(6) Enter all further appropriate proper relief.

LEWIS & WAGNER

By: ______________________
Robert F. Wagner, Atty # 1086-49

By: ______________________
Theodore L. Nicholas, Atty #11388-49
Outside Counsel to:
The Indiana Department of Insurance
Lewis & Wagner
501 Indiana Avenue - Suite 200
Indianapolis, Indiana 46202-3199
Telephone: (317) 237-0500

**VERIFICATION**

I, Elizabeth A. Lovette , as Special Deputy Rehabilitator of IGF, affirm, under the penalties for perjury, that the foregoing representations are true to the best of my knowledge, information, and belief.

______________________
Elizabeth A. Lovette,
Special Deputy Rehabilitator,
Indiana Department of Insurance

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been served upon the following counsel of record by first class United States Mail, first class, certified or registered mail, postage prepaid, this 22nd day of April, 2004:

IGF Insurance Company
4720 Kingsway Dr.
Indianapolis, IN 46205

Sally B. McCarty, Commissioner
Indiana Department of Insurance
311 W. Washington Street, Suite 300
Indianapolis, IN 46204-2787
Counsel for the Department

Theodore L. Nicholas /JCK
THEODORE L. NICHOLAS

Q:\GEN\15007\IGF Insolvency Action\Liquidation Pleadings\PetToConvertToLiq Final 4-22.doc

# EXHIBIT A
# IGF SUMMARY FINANCIAL SHEETS

**IGF Insurance Company, in Rehabilitation**
**Report of Known and Estimated Assets and Liabilities**
**December 31, 2003**

| | Note | As Compiled by Company | Proposed Adjustments | Adjusted Balances |
|---|---|---|---|---|
| **Assets** | | | | |
| Assets with Known Values | | | | |
| Bonds | 1 | 601,769 | 21,543 | 623,312 |
| Cash and Short Term Investments | 2 | 758,147 | - | 758,147 |
| Accrued Investment Income | | 11,866 | - | 11,866 |
| Total Assets with Known Values | | 1,371,782 | 21,543 | 1,393,325 |
| Assets with Estimated Values | | | | |
| Common Stocks | 3 | 19,059 | - | 19,059 |
| Preferred Stocks | 4 | 701,093 | (701,093) | - |
| Uncollected Premium | 5 | 3,268,183 | (2,124,319) | 1,143,864 |
| Receivable from Acceptance | 6 | 2,335,481 | (2,335,481) | - |
| Receivable from Superior Insurance Group | | 1,748,941 | (1,748,941) | - |
| Reinsurance Other Than Intercompany (Pafco) | | 1,441,007 | - | 1,441,007 |
| Uncollectable Reinsurance | 7 | (1,151,471) | - | (1,151,471) |
| Misc. Other | | 3,992 | (3,992) | - |
| Total Assets with Estimated Values | | 8,366,285 | (6,913,826) | 1,452,459 |
| **Total Assets** | | 9,738,067 | (6,892,283) | 2,845,784 |

## IGF Insurance Company, in Rehabilitation
## Report of Known and Estimated Assets and Liabilities
## December 31, 2003

| | | As Compiled by Company | Proposed Adjustments | Adjusted Balances |
|---|---|---|---|---|
| **Liabilities** | | | | |
| Direct Loss Reserves | | | | |
| Direct Case | | 2,956,369 | - | 2,956,369 |
| Direct IBNR | | 313,639 | - | 313,639 |
| Direct LAE | | 499,241 | - | 499,241 |
| Other Direct LAE | | 190,499 | - | 190,499 |
| Salvage & Subro | | (96,285) | - | (96,285) |
| Total Direct Loss Reserves | | 3,863,463 | - | 3,863,463 |
| Pafco Reinsurance and Other Items | | | | |
| Intercompany and Note | | 1,011,846 | - | 1,011,846 |
| Reinsurance Payable | | 662,095 | - | 662,095 |
| Ceded Loss Reserves | | (1,070,019) | - | (1,070,019) |
| Ceded IBNR | | (313,640) | - | (313,640) |
| Salvage & Subro Ceded | | 96,285 | - | 96,285 |
| Ceded LAE | | (688,740) | - | (688,740) |
| Total Ceded Pafco Reinsurance Items | | (302,173) | - | (302,173) |
| Other Ceded Reinsurance | | | | |
| Ceded Loss | | (1,886,350) | - | (1,886,350) |
| Ceded LAE | | (1,000) | - | (1,000) |
| Total Other Ceded Reinsurance | | (1,887,350) | - | (1,887,350) |
| Crop Items | | | | |
| Direct & Assumed -Crop | | 1,514,991 | (1,514,991) | - |
| Ceded Crop | | (161,991) | 161,991 | - |
| Direct & Assumed ALAE-Crop | | 41,969 | (41,969) | - |
| Ceded ALAE-Crop | | (155) | 155 | - |
| ULAE -Crop | | - | - | - |
| ULAE Ceded -Crop | | - | - | - |
| Total Crop Items | 8 | 1,394,814 | (1,394,814) | - |
| Intercompany | | | | |
| SIG | | 43,762 | - | 43,762 |
| Superior Atlanta | | 396,896 | - | 396,896 |
| Goran | | 610,502 | - | 610,502 |
| IGF Holding | | 5,146 | - | 5,146 |
| Total Intercompany | | 1,056,306 | - | 1,056,306 |
| Various | | | | |
| Payable to C.N.A. Chicago | | 1,494,380 | - | 1,494,380 |
| Borrowed Money-NACU Purchase 1911 Corp | | 1,000,000 | - | 1,000,000 |
| Other Payables | | 648,149 | - | 648,149 |
| Other Statutory Items | 9 | 2,320,000 | (2,320,000) | - |
| Escheat Fund | | 267,311 | - | 267,311 |
| Total Various | | 5,729,840 | (2,320,000) | 3,409,840 |
| **Total Liabilities** | | **9,854,900** | **(3,714,814)** | **6,140,086** |

**IGF Insurance Company, in Rehabilitation**
**Report of Known and Estimated Assets and Liabilities**
**December 31, 2003**

**Summary of Known and Estimated Assets and Liabilities**

| | As Compiled by Company | Proposed Adjustments | Adjusted Balances |
|---|---|---|---|
| Total Assets | **9,738,067** | **(6,892,283)** | **2,845,784** |
| Liabilities | 9,854,900 | (3,714,814) | 6,140,086 |
| Surplus | (116,833) | (3,177,469) | (3,294,302) |
| **Total Liabilities and Surplus (Deficit)** | **9,738,067** | **(6,892,283)** | **2,845,784** |

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION CIRCUIT COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49C01-0310-PL-002942 |

SALLY B. McCARTY, as Insurance Commissioner of the State of Indiana, )

Plaintiff, )

vs. )

IGF INSURANCE COMPANY )

Defendant )

**NOTICE OF HEARING**

TO: ALL PERSONS INTERESTED IN IGF INSURANCE COMPANY ("IGF"), INCLUDING: THE INSURANCE COMMISSIONERS OR DEPARTMENTS IN EACH STATE OR JURISDICTION AND THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS; FORMER OFFICERS AND DIRECTORS OF IGF; CURRENT OFFICERS AND DIRECTORS OF SYMONS INTERNATIONAL GROUP, INC.; THE NATIONAL CONFERENCE OF INSURANCE GUARANTY FUNDS ("NCIGF"), THE INDIANA INSURANCE GUARANTY ASSOCIATION, AND ANY GUARANTY ASSOCIATION THAT IS OR MAY BECOME OBLIGATED AS A RESULT OF A LIQUIDATION OF IGF; THE FEDERAL CROP INSURANCE CORPORATION; ALL INSURANCE PRODUCERS OF IGF; ALL PERSONS KNOWN OR REASONABLY EXPECTED TO HAVE CLAIMS AGAINST IGF INCLUDING ALL POLICYHOLDERS ON ANY POLICIES WHICH WERE IN EFFECT WITHIN TWO (2) YEARS OF THE DATE THE ORDER OF REHABILITATION OF IGF WAS ENTERED; ALL PARTIES OR THEIR COUNSEL OF RECORD IN PENDING LITIGATION AND CLAIMS INVOLVING IGF OR ITS INSUREDS; ALL REINSURERS OF IGF; THE RECORDER'S OFFICES OF POLK COUNTY, IOWA AND OTTER TAIL COUNTY, MINNESOTA.

On April 22, 2004, Sally B. McCarty, Indiana Insurance Commissioner, as Rehabilitator of IGF Insurance Company ("IGF"), filed the Rehabilitator's Verified First Accounting and Petition for an Order of Liquidation and Related Relief ("Liquidation Petition").. A copy of the Liquidation Petition (without Exhibits) as filed with the Marion Circuit Court in Indianapolis, Indiana ("Court") are attached hereto. Generally, the Rehabilitator requests that the Court enter an Order of Liquidation as against IGF, under Indiana Code § 27-9. The principal basis for the request for an Order of Liquidation is the inability of IGF to pay current or anticipated liabilities, including claims, and the risk of loss to the policyholders, insureds, other creditors of IGF, and the public, should IGF not be liquidated.

EXHIBIT B

The Court has scheduled a hearing to consider the Liquidation Petition for the ___day of ______, 2004, at ______a.m./p.m. in room W-506, City County Building, Indianapolis, Indiana 46204. The hearing may be continued from day to day until completed, without further notice except as may be announced at the hearing. If you intend to object to the Liquidation Petition or you wish to appear at the hearing, then you must file with the Court a notice of such intention to object or to appear by no later than five (5) business days prior to the hearing date, together with a detailed statement of the objections and any matters to be presented at the hearing. You must concurrently furnish a copy of the notice and statement to the Rehabilitator's counsel, Robert F. Wagner and Theodore L. Nicholas, Lewis & Wagner, 501 Indiana Avenue, Suite 200, Indianapolis, Indiana 46202-3199.

You may obtain a copy of the Exhibits to the Liquidation Petition by mailing a written request to IGF, in Rehabilitation, 311 West Washington Street, Suite 103, Indianapolis, Indiana 46204. Also include with your request a check in the amount of Five Dollars and no/100 ($5.00), payable to IGF, to cover copying, mailing and handling costs. If you have other questions regarding IGF, please send them to the same address.

Pursuant to Indiana Code § 27-9-3-8, if an Order of Liquidation is entered by the Rehabilitation Court, any IGF insurance policies which remain in effect as of the Order of Liquidation, will continue in force until the earlier of: (1) thirty (30) days from the date an Order of Liquidation is entered; (2) expiration of the policy coverage; (3) the date when the insured has replaced the policy coverage with equivalent coverage in another insurer or otherwise terminated the policy; or (4) the date when the Liquidator has affected a transfer of the policy obligations.

BY ORDER OF THE REHABILITATION COURT dated ________________________.

Q:\GEN\15007\IGF Insolvency Action\Liquidation Pleadings\Notice of Hearing on Liq Final 4-22.doc

STATE OF INDIANA ) IN THE MARION CIRCUIT COURT
) SS:
COUNTY OF MARION ) CAUSE NO. 49C01-0310-PL-002942

SALLY MCCARTY, as Insurance Commissioner of the State of Indiana, )
)
Plaintiff )
)
vs. )
)
IGF INSURANCE COMPANY, )
)
Indianapolis, IN )
)
Defendant )

**ORDER**

On April 22, 2004, Sally B. McCarty, Commissioner of the Indiana Department of Insurance, as Rehabilitator of IGF Insurance Company ("IGF"), filed the Rehabilitator's Verified First Accounting and Petition for an Order of Liquidation and Related Relief ("Liquidation Petition"). Having considered the Liquidation Petition and being fully advised, the Court hereby ORDERS that:

1. On the ____ day of __________, 2004, commencing at ________ _.m. in Room W-506, City-County Building, 200 E. Washington St., Indianapolis, Indiana 46204, there will be a hearing before the Court to consider the Liquidation Petition and the relief requested therein. Any person intending to object to the Liquidation Petition or otherwise wishing to appear at the hearing shall file with the Court, by no later than five (5) business days before the hearing, a notice of such intention to object or to appear, together with a detailed statement of the objections and any matters to be presented at the hearing, and shall concurrently furnish a copy of the notice and the statement to the Rehabilitator's counsel, Robert F. Wagner and Theodore L. Nicholas, Lewis & Wagner, 501

EXHIBIT C

Indiana Avenue, Suite 200, Indianapolis, Indiana 46202.

2. The Order for Injunctive and Other Relief, as entered October 31, 2004, is hereby extended and shall remain in effect until the hearing has been held, and the Court has ruled on the Liquidation Petition.

3. The Rehabilitator is directed to mail, by regular first class United States mail, postage prepaid, within thirty (30) days of this Order, a copy of the Liquidation Petition (without exhibits), and a copy of the Notice of Hearing in substantially the form attached as Exhibit B to the Liquidation Petition, as modified to be consistent with this Order, to the last known address as indicated in IGF's records for the following groups of persons:

A. The Insurance Commissioners of each state in which IGF is doing business and the National Association of Insurance Commissioners;

B. Former officers and directors of IGF;

C. Current officers and directors of Symons International Group, Inc., the parent corporation of IGF;

D. The National Association of Insurance Guaranty Funds (NCIGF); the Indiana Insurance Guaranty Association, and any other guaranty fund or association that is or may become obligated as a result of the liquidation of IGF;

E. The Federal Crop Insurance Corporation;

F. All insurance producers of IGF;

G. All persons known or reasonably expected to have claims against IGF, including all policyholders on any policies which were in effect within two (2) years of the date the Order of Rehabilitator was entered;

H. Parties or their counsel of record in pending litigation and claims involving IGF or its insureds;

I. Reinsurers of IGF; and

J. The Recorder's Offices of Polk County, Iowa and Otter Tail County, Minnesota.

4. The Rehabilitator is further directed to cause the form Notice of Hearing in substantially the form attached as Exhibit B to the Liquidation Petition, as modified to be consistent with this Order and to delete the reference to the attachment of the Liquidation Petition, should be published once in a newspaper of general circulation in Indianapolis, Indiana within thirty (30) days of this Order.

5. Upon completion of the mailings and publications required by paragraph 3 above, the Rehabilitator shall file with the Court a Certificate of Compliance, which identifies the persons to whom mailings were made and the newspapers in which publication was made, and the respective dates thereof.

6. The Court finds that the mailings and publications of the Notice of Hearing, as set forth above, constitutes the best notice practicable under all circumstances as to the Rehabilitator's request that an Order of Liquidation be entered against IGF and in the consideration of the rights and duties of the interested persons with respect thereto.

Date: ______________________ ______________________________

JUDGE, MARION CIRCUIT COURT

COPIES TO:

Robert F. Wagner
Theodore L. Nicholas
LEWIS & WAGNER
501 Indiana Avenue
Suite 200
Indianapolis, IN 46204

All other persons entitled to notice pursuant
to this Order and Ind. Code § 27-9-3-10.

Q:\GEN\15007\IGF Insolvency Action\Liquidation Pleadings\Order for Hearing on Liq Final 4-22.doc