Exhibit G1

1995-NCIS 725B

# MULTIPLE PERIL

# CROP INSURANCE POLICY

## [Name of the Company]

This policy is signed by the President and Secretary of the company.
One of our authorized representatives must also countersign the policy.

| | |
|---|---|
| (Signature) | (Signature) |
| Secretary | President |

**PLEASE READ YOUR MULTIPLE PERIL CROP INSURANCE POLICY CAREFULLY**

© 1994 National Crop Insurance Services

EXHIBIT
DT1

1999-NCIS 700B

# MULTIPLE PERIL CROP INSURANCE
# COMMON CROP INSURANCE POLICY
(This is a continuous policy. Refer to section 2.)

This insurance policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.) (Act). All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act. The provisions of the policy are published in the Federal Register and codified in chapter IV of title 7 of the Code of Federal Regulations (CFR) under the Federal Register Act (44 U.S.C. 1501 et seq.), and may not be waived or varied in any way by the crop insurance agent or any other agent or employee of FCIC or the company. In the event we cannot pay your loss, your claim will be settled in accordance with the provisions of this policy and paid by FCIC. No state guarantee fund will be liable for your loss.

Throughout this policy, "you" and "your" refer to the named insured shown on the accepted application and "we," "us," and "our" refer to the insurance company providing insurance. Unless the context indicates otherwise, use of the plural form of a word includes the singular and use of the singular form of the word includes the plural.

AGREEMENT TO INSURE: In return for the payment of the premium, and subject to all of the provisions of this policy, we agree with you to provide the insurance as stated in this policy. If a conflict exists among the policy provisions, the order of priority is as follows: (1) the Catastrophic Risk Protection Endorsement, as applicable; (2) the Special Provisions; (3) the Crop Provisions; and (4) these Basic Provisions, with (1) controlling (2), etc.

## TERMS AND CONDITIONS
## BASIC PROVISIONS

1. **Definitions.**

**Abandon** - Failure to continue to care for the crop, providing care so insignificant as to provide no benefit to the crop, or failure to harvest in a timely manner, unless an insured cause of loss prevents you from properly caring for or harvesting the crop or causes damage to it to the extent that most producers of the crop on acreage with similar characteristics in the area would not normally further care for or harvest it.

**Acreage report** - A report required by paragraph 6 of these Basic Provisions that contains, in addition to other required information, your report of your share of all acreage of an insured crop in the county, whether insurable or not insurable.

**Acreage reporting date** - The date contained in the Special Provisions or as provided in section 6 by which you are required to submit your acreage report.

**Act** - The Federal Crop Insurance Act, (7 U.S.C. 1501 et seq.).

**Actuarial documents** - The material for the crop year which is available for public inspection in your agent's office, and which shows the amounts of insurance or production guarantees, coverage levels, premium rates, practices, insurable acreage, and other related information regarding crop insurance in the county.

**Additional coverage** - Plans of crop insurance providing a level of coverage equal to or greater than 65 percent of the approved yield indemnified at 100 percent of the expected market price, or a comparable coverage as established by FCIC.

**Administrative fee** - An amount you must pay for catastrophic risk protection, limited, and additional coverage for each crop year as specified in section 7 and the Catastrophic Risk Protection Endorsement.

**Agricultural commodity** - All insurable crops and other fruit, vegetable or nut crops produced for human or animal consumption.

**Another use, notice of** - The written notice required when you wish to put acreage to another use (see section 14).

**Application** - The form required to be completed by you and accepted by us before insurance coverage will commence. This form must be completed and filed in your agent's office not later than the sales closing date of the initial insurance year for each crop for which insurance coverage is requested. If cancellation or termination of insurance coverage occurs for any reason, including but not limited to indebtedness, suspension, debarment, disqualification, cancellation by you or us or violation of the controlled substance provisions of the Food Security Act of 1985, a new application must be filed for the crop. Insurance coverage will not be provided if you are ineligible under the contract or under any Federal statute or regulation.

**Approved yield** - The yield determined in accordance with 7 CFR part 400, subpart (G).

**Assignment of indemnity** - A transfer of policy rights, made on our form, and effective when approved by us. It is the arrangement whereby you assign your right to an indemnity payment to any party of your choice for the crop year.

**Basic unit** - All insurable acreage of the insured crop in the county on the date coverage begins for the crop year:

(1) In which you have 100 percent crop share; or
(2) Which is owned by one person and operated by another person on a share basis. (Example: If, in addition to the land you own, you rent land from five landlords, three on a crop share basis and two on a cash basis, you would be entitled to four units; one for each crop share lease and one that combines the two cash leases and the land you own.) Land which would otherwise be one unit may, in certain instances, be divided according to guidelines contained in section 34 of these Basic Provisions and in the applicable Crop Provisions.

**Cancellation date** - The calendar date specified in the Crop Provisions on which coverage for the crop will automatically renew unless canceled in writing by either you or us or terminated in accordance with the policy terms.

**Catastrophic risk protection** - The minimum level of coverage offered by FCIC that is required before you may qualify for certain other USDA program benefits unless you execute a waiver of any eligibility for emergency crop loss assistance in connection with the crop.

**Catastrophic Risk Protection Endorsement** - The part of the crop insurance policy that contains provisions of insurance that are specific to catastrophic risk protection.

© 1998 National Crop Insurance Services, Inc.

**Claim for indemnity** - A claim made on our form by you for damage or loss to an insured crop and submitted to us not later than 60 days after the end of the insurance period (see section 14).

**Consent** - Approval in writing by us allowing you to take a specific action.

**Contract** - (See "policy").

**Contract change date** - The calendar date by which we make any policy changes available for inspection in the agent's office (see section 4).

**County** - Any county, parish, or other political subdivision of a state shown on your accepted application, including acreage in a field that extends into an adjoining county if the county boundary is not readily discernible.

**Coverage** - The insurance provided by this policy, against insured loss of production or value, by unit as shown on your summary of coverage.

**Coverage begins, date** - The calendar date insurance begins on the insured crop, as contained in the Crop Provisions, or the date planting begins on the unit (see section 11 of these Basic Provisions for specific provisions relating to prevented planting).

**Crop Provisions** - The part of the policy that contains the specific provisions of insurance for each insured crop.

**Crop year** - The period within which the insured crop is normally grown, regardless of whether or not it is actually grown, and designated by the calendar year in which the insured crop is normally harvested.

**Damage** - Injury, deterioration, or loss of production of the insured crop due to insured or uninsured causes.

**Damage, notice of** - A written notice required to be filed in your agent's office whenever you initially discover the insured crop has been damaged to the extent that a loss is probable (see section 14).

**Days** - Calendar days.

**Deductible** - The amount determined by subtracting the coverage level percentage you choose from 100 percent. For example, if you elected a 65 percent coverage level, your deductible would be 35 percent (100% - 65% = 35%).

**Delinquent account** - Any account you have with us in which premiums and interest on those premiums is not paid by the termination date specified in the Crop Provisions, or any other amounts due us, such as indemnities found not to have been earned, which are not paid within 30 days of our mailing or other delivery of notification to you of the amount due.

**Earliest planting date** - The earliest date established for planting the insured crop (see Special Provisions and section 13).

**Economic significance** - A value of a crop, or of a type or variety of a crop (if the applicable crop policy allows you the option to separately insure individual crop types or varieties) equal to ten percent (10%) or more of the total value of your share of all crops grown in the county the previous crop year or that you expect to grow in the current crop year. However, an amount will not be considered economically significant if the expected liability under the Catastrophic Risk Protection Endorsement is equal to or less than the administrative fee required for the crop, or if applicable, the crop type or variety.

**End of insurance period, date of** - The date upon which your crop insurance coverage ceases for the crop year (see Crop Provisions and section 11).

**Enterprise unit** - All insurable acreage of the insured crop in the county in which you have a share on the date coverage begins for the crop year. An enterprise unit must consist of:

(1) Two or more basic units of the same insured crop that are located in two or more separate sections, section equivalents, or FSA farm serial numbers; or

(2) Two or more optional units of the same insured crop established by separate sections, section equivalents, or FSA farm serial numbers.

**Field** - All acreage of tillable land within a natural or artificial boundary (e.g., roads, waterways, fences, etc.).

**Final planting date** - The date contained in the Special Provisions for the insured crop by which the crop must initially be planted in order to be insured for the full production guarantee or amount of insurance per acre.

**FSA** - The Farm Service Agency, an agency of the USDA, or a successor agency.

**FSA farm serial number** - The number assigned to the farm by the local FSA office.

**Good farming practices** - The cultural practices generally in use in the county for the crop to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance, and are those recognized by the Cooperative State Research, Education, and Extension Service as compatible with agronomic and weather conditions in the county.

**Insured** - The named person as shown on the application accepted by us. This term does not extend to any other person having a share or interest in the crop (for example, a partnership, landlord, or any other person) unless specifically indicated on the accepted application.

**Insured crop** - The crop for which coverage is available under these Basic Provisions and the applicable Crop Provisions as shown on the application accepted by us.

**Interplanted** - Acreage on which two or more crops are planted in a manner that does not permit separate agronomic maintenance or harvest of the insured crop.

**Irrigated practice** - A method of producing a crop by which water is artificially applied during the growing season by appropriate systems and at the proper times, with the intention of providing the quantity of water needed to produce at least the yield used to establish the irrigated production guarantee or amount of insurance on the irrigated acreage planted to the insured crop.

**Late planted** - Acreage initially planted to the insured crop after the final planting date.

**Late planting period** - The period that begins the day after the final planting date for the insured crop and ends 25 days after the final planting date, unless otherwise specified in the Crop Provisions or Special Provisions.

**Limited coverage** - Plans of insurance offering coverage that is equal to or greater than 50 percent of the approved yield indemnified at 100 percent of the expected market price, or a comparable coverage as established by FCIC, but less than 65 percent of the approved yield indemnified at 100 percent of the expected market price, or a comparable coverage as established by FCIC.

**Limited resource farmer** - A producer or operator of a farm:

(a) With an annual gross income of $20,000 or less derived from all sources, including income from a spouse or other members of the household, for each of the prior two years; or

(b) With less than 25 acres aggregated for all crops, where a majority of the producer's gross income is derived from such farm or farms, but the producer's gross income from farming operations does not exceed $20,000.

**Loss, notice of** - The notice required to be given by you not later than 72 hours after certain occurrences or 15 days

after the end of the insurance period, whichever is earlier (see section 14).

**Negligence** - The failure to use such care as a reasonably prudent and careful person would use under similar circumstances.

**Non-contiguous** - Any two or more tracts of land whose boundaries do not touch at any point, except that land separated only by a public or private right-of-way, waterway, or an irrigation canal will be considered as contiguous.

**Person** - An individual, partnership, association, corporation, estate, trust, or other legal entity, and wherever applicable, a State or a political subdivision or agency of a State. "Person" does not include the United States Government or any agency thereof.

**Planted acreage** - Land in which seed, plants, or trees have been placed, appropriate for the insured crop and planting method, at the correct depth, into a seedbed that has been properly prepared for the planting method and production practice.

**Policy** - The agreement between you and us consisting of the accepted application, these Basic Provisions, the Crop Provisions, the Special Provisions, other applicable endorsements or options, the actuarial documents for the insured crop, the Catastrophic Risk Protection Endorsement, if applicable, and the applicable regulations published in 7 CFR chapter IV.

**Practical to replant** - Our determination, after loss or damage to the insured crop, based on all factors, including, but not limited to moisture availability, marketing window, condition of the field, and time to crop maturity, that replanting the insured crop will allow the crop to attain maturity prior to the calendar date for the end of the insurance period. It will not be considered practical to replant after the end of the late planting period, or the final planting date if no late planting period is applicable, unless replanting is generally occurring in the area. Unavailability of seed or plants will not be considered a valid reason for failure to replant.

**Premium billing date** - The earliest date upon which you will be billed for insurance coverage based on your acreage report. The premium billing date is contained in the Special Provisions.

**Prevented planting** - Failure to plant the insured crop with proper equipment by the final planting date designated in the Special Provisions for the insured crop in the county. You may also be eligible for a prevented planting payment if you failed to plant the insured crop with the proper equipment within the late planting period. You must have been prevented from planting the insured crop due to an insured cause of loss that is general in the surrounding area and that prevents other producers from planting acreage with similar characteristics.

**Price election** - The amounts contained in the Special Provisions or an addendum thereto, to be used for computing the value per pound, bushel, ton, carton, or other applicable unit of measure for the purposes of determining premium and indemnity under the policy.

**Production guarantee (per acre)** - The number of pounds, bushels, tons, cartons, or other applicable units of measure determined by multiplying the approved yield per acre by the coverage level percentage you elect.

**Production report** - A written record showing your annual production and used by us to determine your yield for insurance purposes (see section 3). The report contains yield information for previous years, including planted acreage and harvested production. This report must be supported by written verifiable records from a warehouseman or buyer of the insured crop or by measurement of farm-stored production, or by other records of production approved by us on an individual case basis.

**Replanting** - Performing the cultural practices necessary to prepare the land to replace the seed or plants of the damaged or destroyed insured crop and then replacing the seed or plants of the same crop in the insured acreage with the expectation of producing at least the yield used to determine the production guarantee.

**Representative sample** - Portions of the insured crop that must remain in the field for examination and review by our loss adjuster when making a crop appraisal, as specified in the Crop Provisions. In certain instances we may allow you to harvest the crop and require only that samples of the crop residue be left in the field.

**Sales closing date** - A date contained in the Special Provisions by which an application must be filed. The last date by which you may change your crop insurance coverage for a crop year.

**Section** - (for the purposes of unit structure) A unit of measure under a rectangular survey system describing a tract of land usually one mile square and usually containing approximately 640 acres.

**Share** - Your percentage of interest in the insured crop as an owner, operator, or tenant at the time insurance attaches. However, only for the purpose of determining the amount of indemnity, your share will not exceed your share at the earlier of the time of loss or the beginning of harvest.

**Special Provisions** - The part of the policy that contains specific provisions of insurance for each insured crop that may vary by geographic area.

**State** - The state shown on your accepted application.

**Substantial beneficial interest** - An interest held by any person of at least 10 percent in the applicant or insured.

**Summary of coverage** - Our statement to you, based upon your acreage report, specifying the insured crop and the guarantee or amount of insurance coverage provided by unit.

**Tenant** - A person who rents land from another person for a share of the crop or a share of the proceeds of the crop (see the definition of "share" above).

**Termination date** - The calendar date contained in the Crop Provisions upon which your insurance ceases to be in effect because of nonpayment of any amount due us under the policy, including premium.

**Timely planted** - Planted on or before the final planting date designated in the Special Provisions for the insured crop in the county.

**USDA** - United States Department of Agriculture.

**Void** - When the policy is considered not to have existed for a crop year as a result of concealment, fraud or misrepresentation (see section 27).

**Whole farm unit** - All insurable acreage of the insured crops in the county in which you have a share on the date coverage begins for each crop for the crop year.

**Written agreement** - A document that alters designated terms of a policy as authorized under these Basic Provisions, the Crop Provisions, or the Special Provisions for the insured crop (see section 18).

2. **Life of Policy, Cancellation, and Termination.**

(a) This is a continuous policy and will remain in effect for each crop year following the acceptance of the original application until canceled by you in accordance with the terms of the policy or terminated by operation of the terms of the policy or by us.

(b) Your application for insurance must contain all the information required by us to insure the crop.

Applications that do not contain all social security numbers and employer identification numbers, as applicable (except as stated herein), coverage level, price election, crop, type, variety, or class, plan of insurance, and any other material information required to insure the crop, are not acceptable. If a person with a substantial beneficial interest in the insured crop refuses to provide a social security number or employer identification number and that person is:

(1) Not on the non-standard classification system list, the amount of coverage available under the policy will be reduced proportionately by that person's share of the crop; or

(2) On the non-standard classification system list, the insurance will not be available to that person and any entity in which the person has a substantial beneficial interest.

(c) After acceptance of the application, you may not cancel this policy for the initial crop year. Thereafter, the policy will continue in force for each succeeding crop year unless canceled or terminated as provided below.

(d) Either you or we may cancel this policy after the initial crop year by providing written notice to the other on or before the cancellation date shown in the Crop Provisions.

(e) If any amount due, including administrative fees or premium, is not paid or an acceptable arrangement for payment is not made on or before the termination date for the crop on which the amount is due, you will be determined to be ineligible to participate in any crop insurance program authorized under the Act in accordance with 7 CFR part 400, subpart U.

(1) For a policy with unpaid administrative fees or premium, the policy will terminate effective on the termination date immediately subsequent to the billing date for the crop year;

(2) For a policy with other amounts due, the policy will terminate effective on the termination date immediately after the account becomes delinquent;

(3) Ineligibility will be effective as of the date that the policy was terminated for the crop for which you failed to pay an amount owed and for all other insured crops with coincidental termination dates;

(4) All other policies that are issued by us under the authority of the Act will also terminate as of the next termination date contained in the applicable policy;

(5) If you are ineligible, you may not obtain any crop insurance under the Act until payment is made, you execute an agreement to repay the debt and make the payments in accordance with the agreement, or you file a petition to have your debts discharged in bankruptcy;

(6) If you execute an agreement to repay the debt and fail to timely make any scheduled payment, you will be ineligible for crop insurance effective on the date the payment was due until the debt is paid in full or you file a petition to discharge the debt in bankruptcy and subsequently obtain discharge of the amounts due. Dismissal of the bankruptcy petition before discharge will void all policies in effect retroactive to the date you were originally determined ineligible to participate;

(7) Once the policy is terminated, the policy cannot be reinstated for the current crop year unless the termination was in error;

(8) After you again become eligible for crop insurance, if you want to obtain coverage for your crops, you must reapply on or before the sales closing date for the crop (Since applications for crop insurance cannot be accepted after the sales closing date, if you make any payment after the sales closing date, you cannot apply for insurance until the next crop year); and

(9) If we deduct the amount due us from an indemnity, the date of payment for the purpose of this section will be the date you sign the properly executed claim for indemnity.

(10) For example, if crop A, with a termination date of October 31, 1997, and crop B, with a termination date of March 15, 1998, are insured and you do not pay the premium for crop A by the termination date, you are ineligible for crop insurance as of October 31, 1997, and crop A's policy is terminated on that date. Crop B's policy is terminated as of March 15, 1998. If you enter an agreement to repay the debt on April 25, 1998, you can apply for insurance for crop A by the October 31, 1998, sales closing date and crop B by the March 15, 1999, sales closing date. If you fail to make a scheduled payment on November 1, 1998, you will be ineligible for crop insurance effective on November 1, 1998, and you will not be eligible unless the debt is paid in full or you file a petition to have the debt discharged in bankruptcy and subsequently receive discharge.

(f) If you die, disappear, or are judicially declared incompetent, or if you are an entity other than an individual and such entity is dissolved, the policy will terminate as of the date of death, judicial declaration, or dissolution. If such event occurs after coverage begins for any crop year, the policy will continue in force through the crop year and terminate at the end of the insurance period and any indemnity will be paid to the person or persons determined to be beneficially entitled to the indemnity. The premium will be deducted from the indemnity or collected from the estate. Death of a partner in a partnership will dissolve the partnership unless the partnership agreement provides otherwise. If two or more persons having a joint interest are insured jointly, death of one of the persons will dissolve the joint entity.

(g) We may terminate your policy if no premium is earned for 3 consecutive years.

(h) The cancellation and termination dates are contained in the Crop Provisions.

(i) When obtaining catastrophic, limited, or additional coverage, you must provide information regarding crop insurance coverage on any crop previously obtained at any other local FSA office or from an approved insurance provider, including the date such insurance was obtained and the amount of the administrative fee.

3. **Insurance Guarantees, Coverage Levels, and Prices for Determining Indemnities.**

(a) For each crop year, the production guarantee or amount of insurance, coverage level, and price at which an indemnity will be determined for each unit will be those used to calculate your summary of coverage. The information necessary to determine those factors will be contained in the Special Provisions or in the actuarial documents.

(b) You may select only one coverage level from among those offered by us for each insured crop. You may

change the coverage level, price election, or amount of insurance for the following crop year by giving written notice to us not later than the sales closing date for the insured crop. Since the price election or amount of insurance may change each year, if you do not select a new price election or amount of insurance on or before the sales closing date, we will assign a price election or amount of insurance which bears the same relationship to the price election schedule as the price election or amount of insurance that was in effect for the preceding year. (For example: If you selected 100 percent of the market price for the previous crop year and you do not select a new price election for the current crop year, we will assign 100 percent of the market price for the current crop year.)

(c) You must report production to us for the previous crop year by the earlier of the acreage reporting date or 45 days after the cancellation date unless otherwise stated in the Special Provisions:

(1) If you do not provide the required production report, we will assign a yield for the previous crop year. The yield assigned by us will not be more than 75 percent of the yield used by us to determine your coverage for the previous crop year. The production report or assigned yield will be used to compute your approved yield for the purpose of determining your coverage for the current crop year.

(2) If you have filed a claim for any crop year, the documents signed by you which state the amount of production used to complete the claim for indemnity will be the production report for that year unless otherwise specified by FCIC.

(3) Production and acreage for the prior crop year must be reported for each proposed optional unit by the production reporting date. If you do not provide the information stated above, the optional units will be combined into the basic unit.

(d) We may revise your production guarantee for any unit, and revise any indemnity paid based on that production guarantee, if we find that your production report under paragraph (c) of this section:

(1) Is not supported by written verifiable records in accordance with the definition of production report; or

(2) Fails to accurately report actual production, acreage, or other material information.

(e) In addition to the price election or amount of insurance available on the contract change date, we may provide an additional price election or amount of insurance no later than 15 days prior to the sales closing date. You must select the additional price election or amount of insurance on or before the sales closing date for the insured crop. These additional price elections or amounts of insurance will not be less than those available on the contract change date. If you elect the additional price election or amount of insurance any claim settlement and amount of premium will be based on this amount.

(f) You must obtain the same level of coverage (catastrophic risk protection, limited or additional) for all acreage of the crop in the county unless one of the following applies:

(1) The applicable Crop Provisions allow you the option to separately insure individual crop types or varieties. In this case, each individual type or variety insured by you will be subject to separate administrative fees. For example, if two grape varieties in California are insured under the Catastrophic Risk Protection Endorsement and two varieties are insured under a limited coverage policy, a separate administrative fee will be charged for each of the four varieties. Although insurance may be elected by type or variety in these instances, failure to insure a type or variety that is of economic significance may result in the denial of other farm program benefits unless you execute a waiver of any eligibility for emergency crop loss assistance in connection with the crop.

(2) If you have limited or additional coverage for the crop in the county and the acreage has been designated as "high-risk" by FCIC, you will be able to obtain a High-Risk Land Exclusion Option for the high-risk land under the limited or additional coverage policies and insure the high-risk acreage under a separate Catastrophic Risk Protection Endorsement, provided that the Catastrophic Risk Protection Endorsement is obtained from the same insurance provider from which the limited or additional coverage was obtained.

(g) Hail and fire coverage may be excluded from the covered causes of loss for a crop policy only if additional coverage is selected.

(h) Any person may sign any document relative to crop insurance coverage on behalf of any other person covered by such a policy, provided that the person has a properly executed power of attorney or such other legally sufficient document authorizing such person to sign.

4. **Contract Changes.**

(a) We may change the terms of your coverage under this policy from year to year.

(b) Any changes in policy provisions, price elections, amounts of insurance, premium rates, and program dates will be provided by us to your crop insurance agent not later than the contract change date contained in the Crop Provisions, except that price elections may be offered after the contract change date in accordance with section 3. You may view the documents or request copies from your crop insurance agent.

(c) You will be notified, in writing, of changes to the Basic Provisions, Crop Provisions, and Special Provisions not later than 30 days prior to the cancellation date for the insured crop. Acceptance of changes will be conclusively presumed in the absence of notice from you to change or cancel your insurance coverage.

5. **Liberalization.**

If we adopt any revision that broadens the coverage under this policy subsequent to the contract change date without additional premium, the broadened coverage will apply.

6. **Report of Acreage.**

(a) An annual acreage report must be submitted to us on our form for each insured crop in the county on or before the acreage reporting date contained in the Special Provisions, except as follows:

(1) If you insure multiple crops with us that have final planting dates on or after August 15 but before December 31, you must submit an acreage report for all such crops on or before the latest applicable acreage reporting date for such crops; and

(2) If you insure multiple crops with us that have final planting dates on or after December 31 but before August 15, you must submit an acreage report for

FCI-35 COVERAGE AND RATES
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27) CROP: SUGAR BEETS (0039)
CO: Big Stone (011) PLAN: APH (90)

SUPPLEMENT RATE DIFFERENTIAL TABLE BY COVERAGE LEVEL

| | CAT | .50 | .55 | .60 | .65 | .70 | .75 | .80 | .85 |
|---|---|---|---|---|---|---|---|---|---|
| RATE DIFF | 0.470 | 0.470 | 0.510 | 0.570 | 0.650 | 0.790 | 1.000 | 1.270 | 1.600 |

TRANSITIONAL YIELD TABLE

| TYPE | PRACTICE | FCI-33 MAP AREA | T-YIELD |
|---|---|---|---|
| 997 NTS | 997 NPS | | 16.2 |

GENERAL STATEMENTS

See the County Special Provisions document and the County FCI-33, CROP INSURANCE ACTUARIAL MAP, for determination of high risk or unrated areas.

The Producer Premium Percentage Table for this county crop program is T2.13.

APPROVED: ACTUARIAL BRANCH 10/01/1999

10/04/1999 COUNTY ACTUARIAL TABLE PAGE 1

SPECIAL PROVISIONS OF INSURANCE
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27) CROP: SUGAR BEETS (0039)
CO: Brown (015) PLAN: APH (90)

THE FOLLOWING INFORMATION IS SPECIFIC TO YOUR INSURANCE POLICY.

---

INSURABLE TYPES AND PRACTICES:

TYPE: (997)No Type Specified PRAC: (997)No Practice Specified

---

PROGRAM DATES:

| SALES CLOSING | INITIAL PLANTING | FINAL PLANTING | ACREAGE REPORTING | BILLING DATE |
|---|---|---|---|---|
| TYPE: (997)No Type Specified | | PRAC: (997)No Practice Specified | | |
| 03/15/2000 | 04/11/2000 | 05/31/2000 | 06/30/2000 | 10/01/2000 |

---

GENERAL STATEMENT:

The Producer Premium Percentage Table for this county crop program is T2.13.

Any acreage in this county with a high rate area designation on the FCI-33 CROP INSURANCE ACTUARIAL MAP/FCI-33 CROP INSURANCE ACTUARIAL SUPPLEMENT will have a rate derived from the actuarial table based on the applicable APH yield and adjusted by the factor in the "HIGH RISK MAP AREA ADJUSTMENT FACTOR" table.

Contact your crop insurance agent by the sales closing date to determine eligibility requirements.

We will consider the practice of planting of a "cover crop" improperly performed when destruction of the cover crop is later than May 20 for Fall cover crops and May 30 for Spring cover crops. Production lost as a result of this practice being improperly performed will be recorded as an "appraisal for uninsured cause" on the claim form.

PREMIUM DISCOUNT:
A 10 percent discount in premium will be made when a basic unit is not divided into optional units earning premium.

INSURANCE AVAILABILITY:
The Federal Crop Insurance Corporation (FCIC) makes crop insurance available for all producers, regardless of race, color, national origin, religion, sex, age or handicap.

(Continued on Next Page)

10/04/1999 COUNTY ACTUARIAL TABLE PAGE 2

SPECIAL PROVISIONS OF INSURANCE
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27) CROP: SUGAR BEETS (0039)
CO: Brown (015) PLAN: APH (90)

---

You may be eligible for a premium discount based on your insurance experience. Contact your insurance provider for specific information concerning this discount.

The price election available for this county crop program will be released as an Actuarial Table Addendum (Special Provisions) prior to the policy contract change date.

Percentage of sugar for use in adjusting harvested production as provided in the Sugar Beet Policy: 14.30 percent.

APPROVED: ACTUARIAL DIVISION 10/04/1999

10/01/1999 COUNTY ACTUARIAL TABLE PAGE 1

FCI-35 COVERAGE AND RATES
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27) CROP: SUGAR BEETS (0039)
CO: Brown (015) PLAN: APH (90)

TYPE: (997) No Type Specified PRAC: (997) No Practice Specified

| APH YIELD (TON) | RATE CLASS | BASE PREMIUM RATE BY COVERAGE LEVEL | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | .50 | .55 | .60 | .65 | .70 | .75 | .80 | .85 |
| 9.1 & Below | R01 | 0.085 | 0.091 | 0.103 | 0.118 | 0.144 | 0.180 | 0.229 | 0.288 |
| 9.2 - 11.7 | R02 | 0.070 | 0.077 | 0.086 | 0.097 | 0.118 | 0.150 | 0.191 | 0.240 |
| 11.8 - 14.3 | R03 | 0.052 | 0.055 | 0.062 | 0.071 | 0.087 | 0.110 | 0.140 | 0.176 |
| 14.4 - 16.9 | R04 | 0.040 | 0.045 | 0.049 | 0.056 | 0.068 | 0.085 | 0.108 | 0.136 |
| 17.0 - 19.6 | R05 | 0.034 | 0.036 | 0.041 | 0.046 | 0.056 | 0.070 | 0.089 | 0.112 |
| 19.7 - 22.2 | R06 | 0.030 | 0.033 | 0.036 | 0.041 | 0.049 | 0.063 | 0.080 | 0.101 |
| 22.3 - 24.8 | R07 | 0.027 | 0.030 | 0.033 | 0.037 | 0.045 | 0.057 | 0.072 | 0.091 |
| 24.9 - 27.5 | R08 | 0.026 | 0.027 | 0.031 | 0.035 | 0.043 | 0.054 | 0.069 | 0.086 |
| 27.6 & Above | R09 | 0.025 | 0.026 | 0.030 | 0.034 | 0.041 | 0.052 | 0.066 | 0.083 |

HIGH RISK MAP AREA ADJUSTMENT FACTORS

| RATE CLASS | AAA |
|---|---|
| R01 | 2.050 |
| R02 | 2.270 |
| R03 | 2.740 |
| R04 | 3.200 |
| R05 | 3.680 |
| R06 | 4.010 |
| R07 | 4.340 |
| R08 | 4.530 |
| R09 | 4.630 |

COMMON OPTION FACTOR TABLE

| OPTION/OPTION NAME | |
|---|---|
| (BU) BASIC UNIT DISCOUNT | 0.900 |
| (BUHF) BUD/HFE | 0.800 |
| (BUHFPF) BUD/HFE/PF | 0.824 |
| (BUHFPT) BUD/HFE/PT | 0.848 |
| (BUPF) BUD/PF | 0.927 |
| (BUPT) BUD/PT | 0.954 |
| (HF) HAIL & FIRE EXCLUSION | 0.890 |
| (HFPF) HFE/PF | 0.917 |
| (HFPT) HFE/PT | 0.943 |
| (PF) PREVENTED PLANTING +5% | 1.030 |
| (PT) PREVENTED PLANTING +10% | 1.060 |

(Continued on Next Page)

10/01/1999 COUNTY ACTUARIAL TABLE PAGE 2

FCI-35 COVERAGE AND RATES
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27) CROP: SUGAR BEETS (0039)
CO: Brown (015) PLAN: APH (90)

SUPPLEMENT RATE DIFFERENTIAL TABLE BY COVERAGE LEVEL

| | CAT | .50 | .55 | .60 | .65 | .70 | .75 | .80 | .85 |
|---|---|---|---|---|---|---|---|---|---|
| RATE DIFF | 0.470 | 0.470 | 0.510 | 0.570 | 0.650 | 0.790 | 1.000 | 1.270 | 1.600 |

TRANSITIONAL YIELD TABLE

| TYPE | PRACTICE | FCI-33 MAP AREA | T-YIELD |
|---|---|---|---|
| 997 NTS | 997 NPS | | 18.3 |

GENERAL STATEMENTS

See the County Special Provisions document and the County FCI-33, CROP INSURANCE ACTUARIAL MAP, for determination of high risk or unrated areas.

The Producer Premium Percentage Table for this county crop program is T1.13.

APPROVED: ACTUARIAL BRANCH 10/01/1999

10/04/1999 COUNTY ACTUARIAL TABLE PAGE 1

SPECIAL PROVISIONS OF INSURANCE
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27)
CO: Chippewa (023)

CROP: SUGAR BEETS (0039)
PLAN: APH (90)

THE FOLLOWING INFORMATION IS SPECIFIC TO YOUR INSURANCE POLICY.

---

INSURABLE TYPES AND PRACTICES:

TYPE: (997)No Type Specified PRAC: (997)No Practice Specified

---

PROGRAM DATES:

| SALES CLOSING | INITIAL PLANTING | FINAL PLANTING | ACREAGE REPORTING | BILLING DATE |
|---|---|---|---|---|
| TYPE: (997)No Type Specified | | | PRAC: (997)No Practice Specified | |
| 03/15/2000 | 04/11/2000 | 05/31/2000 | 06/30/2000 | 10/01/2000 |

---

GENERAL STATEMENT:

The Producer Premium Percentage Table for this county crop program is T2.13.

Any acreage in this county with a high rate area designation on the FCI-33 CROP INSURANCE ACTUARIAL MAP/FCI-33 CROP INSURANCE ACTUARIAL SUPPLEMENT will have a rate derived from the actuarial table based on the applicable APH yield and adjusted by the factor in the "HIGH RISK MAP AREA ADJUSTMENT FACTOR" table.

Contact your crop insurance agent by the sales closing date to determine eligibility requirements.

We will consider the practice of planting of a "cover crop" improperly performed when destruction of the cover crop is later than May 20 for Fall cover crops and May 30 for Spring cover crops. Production lost as a result of this practice being improperly performed will be recorded as an "appraisal for uninsured cause" on the claim form.

PREMIUM DISCOUNT:
A 10 percent discount in premium will be made when a basic unit is not divided into optional units earning premium.

INSURANCE AVAILABILITY:
The Federal Crop Insurance Corporation (FCIC) makes crop insurance available for all producers, regardless of race, color, national origin, religion, sex, age or handicap.

(Continued on Next Page)

10/04/1999 COUNTY ACTUARIAL TABLE PAGE 2

SPECIAL PROVISIONS OF INSURANCE
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27)
CO: Chippewa (023)

CROP: SUGAR BEETS (0039)
PLAN: APH (90)

---

You may be eligible for a premium discount based on your insurance experience. Contact your insurance provider for specific information concerning this discount.

The price election available for this county crop program will be released as an Actuarial Table Addendum (Special Provisions) prior to the policy contract change date.

Percentage of sugar for use in adjusting harvested production as provided in the Sugar Beet Policy: 15.00 percent.

APPROVED: ACTUARIAL DIVISION 10/04/1999

10/01/1999

COUNTY ACTUARIAL TABLE



FCI-35 COVERAGE AND RATES
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27)
CO: Chippewa (023)

CROP: SUGAR BEETS (0039)
PLAN: APH (90)

TYPE: (997) No Type Specified

PRAC: (997) No Practice Specified

| APH YIELD (TON) | RATE CLASS | BASE PREMIUM RATE BY COVERAGE LEVEL .50 | .55 | .60 | .65 | .70 | .75 | .80 | .85 |
|---|---|---|---|---|---|---|---|---|---|
| 9.8 & Below | R01 | 0.105 | 0.113 | 0.126 | 0.144 | 0.177 | 0.222 | 0.282 | 0.355 |
| 9.9 - 12.6 | R02 | 0.088 | 0.094 | 0.105 | 0.119 | 0.146 | 0.183 | 0.232 | 0.293 |
| 12.7 - 15.4 | R03 | 0.064 | 0.067 | 0.075 | 0.085 | 0.105 | 0.132 | 0.168 | 0.211 |
| 15.5 - 18.2 | R04 | 0.049 | 0.053 | 0.060 | 0.067 | 0.083 | 0.103 | 0.131 | 0.165 |
| 18.3 - 21.1 | R05 | 0.039 | 0.044 | 0.047 | 0.055 | 0.067 | 0.084 | 0.107 | 0.134 |
| 21.2 - 23.9 | R06 | 0.036 | 0.038 | 0.044 | 0.048 | 0.060 | 0.074 | 0.094 | 0.118 |
| 24.0 - 26.7 | R07 | 0.033 | 0.035 | 0.038 | 0.045 | 0.054 | 0.068 | 0.086 | 0.109 |
| 26.8 - 29.6 | R08 | 0.030 | 0.033 | 0.036 | 0.040 | 0.050 | 0.063 | 0.080 | 0.101 |
| 29.7 & Above | R09 | 0.028 | 0.031 | 0.035 | 0.039 | 0.047 | 0.061 | 0.077 | 0.098 |

HIGH RISK MAP AREA ADJUSTMENT FACTORS

| RATE CLASS | AAA |
|---|---|
| R01 | 1.810 |
| R02 | 1.970 |
| R03 | 2.360 |
| R04 | 2.730 |
| R05 | 3.110 |
| R06 | 3.420 |
| R07 | 3.580 |
| R08 | 3.900 |
| R09 | 3.970 |

| OPTION/OPTION NAME | COMMON OPTION FACTOR TABLE |
|---|---|
| (BU) BASIC UNIT DISCOUNT | 0.900 |
| (BUHF) BUD/HFE | 0.800 |
| (BUHFPF) BUD/HFE/PF | 0.824 |
| (BUHFPT) BUD/HFE/PT | 0.856 |
| (BUPF) BUD/PF | 0.927 |
| (BUPT) BUD/PT | 0.963 |
| (HF) HAIL & FIRE EXCLUSION | 0.890 |
| (HFPF) HFE/PF | 0.917 |
| (HFPT) HFE/PT | 0.952 |
| (PF) PREVENTED PLANTING +5% | 1.030 |
| (PT) PREVENTED PLANTING +10% | 1.070 |

(Continued on Next Page)

10/01/1999

COUNTY ACTUARIAL TABLE

FCI-35 COVERAGE AND RATES
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27)
CO: Chippewa (023)

CROP: SUGAR BEETS (
PLAN: APH

SUPPLEMENT RATE DIFFERENTIAL TABLE BY COVERAGE LEVEL

| | CAT | .50 | .55 | .60 | .65 | .70 | .75 | .80 | .85 |
|---|---|---|---|---|---|---|---|---|---|
| RATE DIFF | 0.470 | 0.470 | 0.510 | 0.570 | 0.650 | 0.790 | 1.000 | 1.270 | 1.600 |

TRANSITIONAL YIELD TABLE

| TYPE | PRACTICE | FCI-33 MAP AREA | T-YIELD |
|---|---|---|---|
| 997 NTS | 997 NPS | | 19.7 |

GENERAL STATEMENTS

See the County Special Provisions document and the County FCI-33, CROP INSURANCE ACTUARIAL MAP, for determination of high risk or unrated areas.

The Producer Premium Percentage Table for this county crop program is T2.13.

APPROVED: ACTUARIAL BRANCH 10/01/1999

10/04/1999 COUNTY ACTUARIAL TABLE PAGE 1

SPECIAL PROVISIONS OF INSURANCE
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27)
CO: Kandiyohi (067)

CROP: SUGAR BEETS (0039)
PLAN: APH (90)

THE FOLLOWING INFORMATION IS SPECIFIC TO YOUR INSURANCE POLICY.

---

INSURABLE TYPES AND PRACTICES:

TYPE: (997)No Type Specified PRAC: (997)No Practice Specified

---

PROGRAM DATES:

| SALES CLOSING | INITIAL PLANTING | FINAL PLANTING | ACREAGE REPORTING | BILLING DATE |
|---|---|---|---|---|
| TYPE: (997)No Type Specified | | | PRAC: (997)No Practice Specified | |
| 03/15/2000 | 04/11/2000 | 05/31/2000 | 06/30/2000 | 10/01/2000 |

---

GENERAL STATEMENT:

The Producer Premium Percentage Table for this county crop program is T2.13.

We will consider the practice of planting of a "cover crop" improperly performed when destruction of the cover crop is later than May 20 for Fall cover crops and May 30 for Spring cover crops. Production lost as a result of this practice being improperly performed will be recorded as an "appraisal for uninsured cause" on the claim form.

PREMIUM DISCOUNT:
A 10 percent discount in premium will be made when a basic unit is not divided into optional units earning premium.

INSURANCE AVAILABILITY:
The Federal Crop Insurance Corporation (FCIC) makes crop insurance available for all producers, regardless of race, color, national origin, religion, sex, age or handicap.

You may be eligible for a premium discount based on your insurance experience. Contact your insurance provider for specific information concerning this discount.

The price election available for this county crop program will be released as an Actuarial Table Addendum (Special Provisions) prior to the policy contract change date.

Percentage of sugar for use in adjusting harvested production as provided in the Sugar Beet Policy: 15.00 percent.

APPROVED: ACTUARIAL DIVISION 10/04/1999

FCI-35 COVERAGE AND RATES
2000 AND SUCCEEDING CROP YEARS

ST: MINNESOTA (27)
CO: Kandiyohi (067)

CROP: SUGAR BEETS (0039)
PLAN: APH (90)

TYPE: (997) No Type Specified PRAC: (997) No Practice Specified

| APH YIELD (TON) | RATE CLASS | BASE PREMIUM RATE BY COVERAGE LEVEL .50 | .55 | .60 | .65 | .70 | .75 | .80 | .85 |
|---|---|---|---|---|---|---|---|---|---|
| 9.9 & Below | R01 | 0.085 | 0.091 | 0.103 | 0.118 | 0.144 | 0.180 | 0.229 | 0.288 |
| 10.0 - 12.7 | R02 | 0.085 | 0.091 | 0.102 | 0.117 | 0.142 | 0.179 | 0.227 | 0.286 |
| 12.8 - 15.5 | R03 | 0.052 | 0.055 | 0.062 | 0.071 | 0.087 | 0.110 | 0.140 | 0.176 |
| 15.6 - 18.4 | R04 | 0.040 | 0.045 | 0.049 | 0.056 | 0.068 | 0.085 | 0.108 | 0.136 |
| 18.5 - 21.3 | R05 | 0.034 | 0.036 | 0.041 | 0.046 | 0.056 | 0.070 | 0.089 | 0.112 |
| 21.4 - 24.2 | R06 | 0.030 | 0.033 | 0.036 | 0.041 | 0.049 | 0.063 | 0.080 | 0.101 |
| 24.3 - 27.0 | R07 | 0.027 | 0.030 | 0.033 | 0.037 | 0.045 | 0.057 | 0.072 | 0.091 |
| 27.1 - 29.9 | R08 | 0.026 | 0.027 | 0.031 | 0.035 | 0.043 | 0.054 | 0.069 | 0.086 |
| 30.0 & Above | R09 | 0.025 | 0.026 | 0.030 | 0.034 | 0.041 | 0.052 | 0.066 | 0.083 |

| OPTION/OPTION NAME | COMMON OPTION FACTOR TABLE |
|---|---|
| (BU) BASIC UNIT DISCOUNT | 0.900 |
| (BUHF) BUD/HFE | 0.820 |
| (BUHFPF) BUD/HFE/PF | 0.845 |
| (BUHFPT) BUD/HFE/PT | 0.869 |
| (BUPF) BUD/PF | 0.927 |
| (BUPT) BUD/PT | 0.954 |
| (HF) HAIL & FIRE EXCLUSION | 0.910 |
| (HFPF) HFE/PF | 0.937 |
| (HFPT) HFE/PT | 0.965 |
| (PF) PREVENTED PLANTING +5% | 1.030 |
| (PT) PREVENTED PLANTING +10% | 1.060 |

| | SUPPLEMENT RATE DIFFERENTIAL TABLE BY COVERAGE LEVEL CAT | .50 | .55 | .60 | .65 | .70 | .75 | .80 | .85 |
|---|---|---|---|---|---|---|---|---|---|
| RATE DIFF | 0.470 | 0.470 | 0.510 | 0.570 | 0.650 | 0.790 | 1.000 | 1.270 | 1.600 |

TRANSITIONAL YIELD TABLE

| TYPE | PRACTICE | FCI-33 MAP AREA | T-YIELD |
|---|---|---|---|
| 997 NTS | 997 NPS | | 19.9 |

(Continued on Next Page)

NCIS 002414

all such crops on or before the latest applicable acreage reporting date for such crops.

(3) Notwithstanding the provisions in sections 6(a)(1) and (2):

(i) If the Special Provisions designate separate planting periods for a crop, you must submit an acreage report for each planting period on or before the acreage reporting date contained in the Special Provisions for the planting period; and

(ii) If planting of the insured crop continues after the final planting date or you are prevented from planting during the late planting period, the acreage reporting date will be the later of:

(A) The acreage reporting date contained in the Special Provisions;

(B) The date determined in accordance with sections (a)(1) or (2); or

(C) Five (5) days after the end of the late planting period for the insured crop, if applicable.

(b) If you do not have a share in an insured crop in the county for the crop year, you must submit an acreage report, on or before the acreage reporting date, so indicating.

(c) Your acreage report must include the following information, if applicable:

(1) All acreage of the crop in the county (insurable and not insurable) in which you have a share;

(2) Your share at the time coverage begins;

(3) The practice;

(4) The type; and

(5) The date the insured crop was planted.

(d) Because incorrect reporting on the acreage report may have the effect of changing your premium and any indemnity that may be due, you may not revise this report after the acreage reporting date without our consent.

(e) We may elect to determine all premiums and indemnities based on the information you submit on the acreage report or upon the factual circumstances we determine to have existed, subject to the provisions contained in section 6(g).

(f) If you do not submit an acreage report by the acreage reporting date, or if you fail to report all units, we may elect to determine by unit the insurable crop acreage, share, type and practice, or to deny liability on such units. If we deny liability for the unreported units, your share of any production from the unreported units will be allocated, for loss purposes only, as production to count to the reported units in proportion to the liability on each reported unit. However, such production will not be allocated to prevented planting acreage or otherwise affect any prevented planting payment.

(g) If the information reported by you on the acreage report for share, acreage, practice, type or other material information is inconsistent with the information that is determined to actually exist for a unit and results in:

(1) A lower liability than the actual liability determined, the production guarantee or amount of insurance on the unit will be reduced to an amount that is consistent with the reported information. In the event that insurable acreage is under-reported for any unit, all production or value from insurable acreage in that unit will be considered production or value to count in determining the indemnity; and

(2) A higher liability than the actual liability determined, the information contained in the acreage report will be revised to be consistent with the correct information. If we discover that you have incorrectly reported any information on the acreage report for any crop year, you may be required to provide documentation in subsequent crop years that substantiates your report of acreage for those crop years, including, but not limited to, an acreage measurement service at your own expense.

(h) Errors in reporting units may be corrected by us at the time of adjusting a loss to reduce our liability and to conform to applicable unit division guidelines.

**7. Annual Premium and Administrative Fees.**

(a) The annual premium is earned and payable at the time coverage begins. You will be billed for premium due not earlier than the premium billing date specified in the Special Provisions. The premium due, plus any accrued interest, will be considered delinquent if it is not paid on or before the termination date specified in the Crop Provisions.

(b) Any amount you owe us related to any crop insured with us under the authority of the Act will be deducted from any prevented planting payment or indemnity due you for any crop insured with us under the authority of the Act.

(c) The annual premium amount is determined, as applicable, by either:

(1) Multiplying the production guarantee per acre times the price election, times the premium rate, times the insured acreage, times your share at the time coverage begins, and times any premium adjustment percentages that may apply; or

(2) Multiplying the amount of insurance per acre times the premium rate, times the insured acreage, times your share at the time coverage begins, and times any premium adjustment percentages that may apply.

(d) The premium will be computed using the price election or amount of insurance you elect or that we assign in accordance with section 3(b).

(e) In addition to the premium charged:

(1) If you elect limited coverage, you must pay an administrative fee each crop year of $50 per crop per county, not to exceed $200 per county, or $600 for all counties in which you elected to obtain limited coverage.

(2) If you elect additional coverage, you must pay an administrative fee of $20 per crop for each crop year in which crop insurance coverage remains in effect.

(3) The administrative fee must be paid no later than the time premium is due.

(4) Payment of an administrative fee will not be required if you file a bona fide zero acreage report on or before the acreage reporting date for the crop. If you falsely file a zero acreage report you may be subject to criminal and administrative sanctions.

(5) The administrative fee for limited coverage will be waived if you request it and you qualify as a limited resource farmer.

(6) The administrative fee for additional coverage is not subject to any limits and may not be waived.

(7) Failure to pay the administrative fees when due may make you ineligible for certain other USDA benefits.

**Insured Crop.**

(a) The insured crop will be that shown on your accepted application and as specified in the Crop Provisions or Special Provisions and must be grown on insurable acreage.

(b) A crop which will NOT be insured will include, but will not be limited to, any crop:

(1) If the farming practices carried out are not in accordance with the farming practices for which the premium rates, production guarantees or amounts of insurance have been established, unless insurance is allowed by a written agreement;

(2) Of a type, class or variety established as not adapted to the area or excluded by the policy provisions;

(3) That is a volunteer crop;

(4) That is a second crop following the same crop (insured or not insured) harvested in the same crop year unless specifically permitted by the Crop Provisions or the Special Provisions;

(5) That is planted for the development or production of hybrid seed or for experimental purposes, unless permitted by the Crop Provisions or by written agreement to insure such crop; or

(6) That is used solely for wildlife protection or management. If the lease states that specific acreage must remain unharvested, only that acreage is uninsurable. If the lease specifies that a percentage of the crop must be left unharvested, your share will be reduced by such percentage.

**9. Insurable Acreage.**

(a) Acreage planted to the insured crop in which you have a share is insurable except acreage:

(1) That has not been planted and harvested within one of the 3 previous crop years, unless:

(i) Such acreage was not planted:

(A) To comply with any other USDA program;

(B) Because of crop rotation (e.g., corn, soybean, alfalfa; and the alfalfa remained for 4 years before the acreage was planted to corn again);

(C) Due to an insurable cause of loss that prevented planting; or

(D) Because a perennial tree, vine, or bush crop was grown on the acreage;

(ii) Such acreage was planted but was not harvested due to an insurable cause of loss; or

(iii) The Crop Provisions or a written agreement specifically allow insurance for such acreage;

(2) That has been strip-mined, unless otherwise approved by written agreement, or unless an agricultural commodity other than a cover, hay, or forage crop (except corn silage), has been harvested from the acreage for at least five crop years after the strip-mined land was reclaimed;

(3) On which the insured crop is damaged and it is practical to replant the insured crop, but the insured crop is not replanted;

(4) That is interplanted, unless allowed by the Crop Provisions;

(5) That is otherwise restricted by the Crop Provisions or Special Provisions; or

(6) That is planted in any manner other than as specified in the policy provisions for the crop unless a written agreement to such planting exists.

(b) If insurance is provided for an irrigated practice, you must report as irrigated only that acreage for which you have adequate facilities and adequate water, or the reasonable expectation of receiving adequate water at the time coverage begins, to carry out a good irrigation practice. If you knew or had reason to know that your water may be reduced before coverage begins, no reasonable expectation exists.

(c) Notwithstanding the provisions in section 8(b)(1), if acreage is irrigated and we do not provide a premium rate for an irrigated practice, you may either report and insure the irrigated acreage as "non-irrigated," or report the irrigated acreage as not insured.

(d) We may restrict the amount of acreage that we will insure to the amount allowed under any acreage limitation program established by the United States Department of Agriculture if we notify you of that restriction prior to the sales closing date.

**10. Share Insured.**

(a) Insurance will attach only to the share of the person completing the application and will not extend to any other person having a share in the crop unless the application clearly states that:

(1) The insurance is requested for an entity such as a partnership or a joint venture; or

(2) You as landlord will insure your tenant's share, or you as tenant will insure your landlord's share. In this event, you must provide evidence of the other party's approval (lease, power of attorney, etc.). Such evidence will be retained by us. You also must clearly set forth the percentage shares of each person on the acreage report.

(b) We may consider any acreage or interest reported by or for your spouse, child or any member of your household to be included in your share.

(c) Acreage rented for a percentage of the crop, or a lease containing provisions for **BOTH** a minimum payment (such as a specified amount of cash, bushels, pounds, etc.) **AND** a crop share will be considered a crop share lease.

(d) Acreage rented for cash, or a lease containing provisions for **EITHER** a minimum payment **OR** a crop share (such as a 50/50 share or $100.00 per acre, whichever is greater) will be considered a cash lease.

**11. Insurance Period.**

(a) Except for prevented planting coverage (see section 17), coverage begins on each unit or part of a unit at the later of:

(1) The date we accept your application (For the purposes of this paragraph, the date of acceptance is the date that you submit a properly executed application in accordance with section 2);

(2) The date the insured crop is planted; or

(3) The calendar date contained in the Crop Provisions for the beginning of the insurance period.

(b) Coverage ends at the earliest of:
   (1) Total destruction of the insured crop on the unit;
   (2) Harvest of the unit;
   (3) Final adjustment of a loss on a unit;
   (4) The calendar date contained in the Crop Provisions for the end of the insurance period;
   (5) Abandonment of the crop on the unit; or
   (6) As otherwise specified in the Crop Provisions.

**12. Causes of Loss.**

The insurance provided is against only unavoidable loss of production directly caused by specific causes of loss contained in the Crop Provisions. All other causes of loss, including but not limited to the following, are NOT covered:

(a) Negligence, mismanagement, or wrongdoing by you, any member of your family or household, your tenants, or employees;
(b) Failure to follow recognized good farming practices for the insured crop;
(c) Water contained by any governmental, public, or private dam or reservoir project;
(d) Failure or breakdown of irrigation equipment or facilities; or
(e) Failure to carry out a good irrigation practice for the insured crop, if applicable.

**13. Replanting Payment.**

(a) If allowed by the Crop Provisions, a replanting payment may be made on an insured crop replanted after we have given consent and the acreage replanted is at least the lesser of 20 acres or 20 percent of the insured planted acreage for the unit (as determined on the final planting date or within the late planting period if a late planting period is applicable).
(b) No replanting payment will be made on acreage:
   (1) On which our appraisal establishes that production will exceed the level set by the Crop Provisions;
   (2) Initially planted prior to the earliest planting date established by the Special Provisions; or
   (3) On which one replanting payment has already been allowed for the crop year.
(c) The replanting payment per acre will be your actual cost for replanting, but will not exceed the amount determined in accordance with the Crop Provisions.
(d) No replanting payment will be paid if we determine it is not practical to replant.

**14. Duties in the Event of Damage or Loss.**

Your Duties -

(a) In case of damage to any insured crop you must:
   (1) Protect the crop from further damage by providing sufficient care;
   (2) Give us notice within 72 hours of your initial discovery of damage (but not later than 15 days after the end of the insurance period), by unit, for each insured crop (we may accept a notice of loss provided later than 72 hours after your initial discovery if we still have the ability to accurately adjust the loss);
   (3) Leave representative samples intact for each field of the damaged unit as may be required by the Crop Provisions; and
   (4) Cooperate with us in the investigation or settlement of the claim, and, as often as we reasonably require:
      (i) Show us the damaged crop;
      (ii) Allow us to remove samples of the insured crop; and
      (iii) Provide us with records and documents we request and permit us to make copies.
(b) You must obtain consent from us before, and notify us after you:
   (1) Destroy any of the insured crop that is not harvested;
   (2) Put the insured crop to an alternative use;
   (3) Put the acreage to another use; or
   (4) Abandon any portion of the insured crop. We will not give consent for any of the actions in sections 14(b)(1) through (4) if it is practical to replant the crop or until we have made an appraisal of the potential production of the crop.
(c) In addition to complying with all other notice requirements, you must submit a claim for indemnity declaring the amount of your loss not later than 60 days after the end of the insurance period. This claim must include all the information we require to settle the claim.
(d) Upon our request, you must:
   (1) Provide a complete harvesting and marketing record of each insured crop by unit including separate records showing the same information for production from any acreage not insured; and
   (2) Submit to examination under oath.
(e) You must establish the total production or value received for the insured crop on the unit, that any loss of production or value occurred during the insurance period, and that the loss of production or value was directly caused by one or more of the insured causes specified in the Crop Provisions.
(f) All notices required in this section that must be received by us within 72 hours may be made by telephone or in person to your crop insurance agent but must be confirmed in writing within 15 days.

Our Duties -

(a) If you have complied with all the policy provisions, we will pay your loss within 30 days after:
   (1) We reach agreement with you;
   (2) Completion of arbitration or appeal proceedings; or
   (3) The entry of a final judgment by a court of competent jurisdiction.
(b) In the event we are unable to pay your loss within 30 days, we will give you notice of our intentions within the 30-day period.
(c) We may defer the adjustment of a loss until the amount of loss can be accurately determined. We will not pay for additional damage resulting from your failure to provide sufficient care for the crop during the deferral period.
(d) We recognize and apply the loss adjustment procedures established or approved by the Federal Crop Insurance Corporation.

**15. Production Included in Determining Indemnities.**

(a) The total production to be counted for a unit will include all production determined in accordance with the policy.
(b) The amount of production of any unharvested insured crop may be determined on the basis of our field appraisals conducted after the end of the insurance period.
(c) If you elect to exclude hail and fire as insured causes of loss and the insured crop is damaged by hail or fire, appraisals will be made as described in the applicable Form FCI-78 "Request To Exclude Hail and Fire" or a form containing the same terms approved by the Federal Crop Insurance Corporation.

(d) The amount of an indemnity that may be determined under the applicable provisions of your crop policy may be reduced by an amount, determined in accordance with the Crop Provisions or Special Provisions, to reflect out-of-pocket expenses that were not incurred by you as a result of not planting, caring for, or harvesting the crop. Indemnities paid for acreage prevented from being planted will be based on a reduced guarantee as provided for in the crop policy and will not be further reduced to reflect expenses not incurred.

(e) Appraised production will be used to calculate your claim if you will not be harvesting the acreage. To determine your indemnity based on appraised production, you must agree to notify us if you harvest the crop and advise us of the production. If the acreage will be harvested, harvested production will be used to determine any indemnity due, unless otherwise specified in the policy.

16. **Late Planting.**

Unless limited by the Crop Provisions, insurance will be provided for acreage planted to the insured crop after the final planting date in accordance with the following:

(a) The production guarantee or amount of insurance for each acre planted to the insured crop during the late planting period will be reduced by 1 percent per day for each day planted after the final planting date.

(b) Acreage planted after the late planting period (or after the final planting date for crops that do not have a late planting period) may be insured as follows:

(1) The production guarantee or amount of insurance for each acre planted as specified in this subsection will be determined by multiplying the production guarantee or amount of insurance that is provided for acreage of the insured crop that is timely planted by the prevented planting coverage level percentage you elected, or that is contained in the Crop Provisions if you did not elect a prevented planting coverage level percentage;

(2) Planting on such acreage must have been prevented by the final planting date (or during the late planting period, if applicable) by an insurable cause occurring within the insurance period for prevented planting coverage; and

(3) All production from acreage as specified in this section will be included as production to count for the unit.

(c) The premium amount for insurable acreage specified in this section will be the same as that for timely planted acreage. If the amount of premium you are required to pay (gross premium less our subsidy) for such acreage exceeds the liability, coverage for those acres will not be provided (no premium will be due and no indemnity will be paid).

(d) Any acreage on which an insured cause of loss is a material factor in preventing completion of planting, as specified in the definition of "planted acreage" (e.g., seed is broadcast on the soil surface but cannot be incorporated) will be considered as acreage planted after the final planting date and the production guarantee will be calculated in accordance with section 16(b)(1).

17. **Prevented Planting.**

(a) Unless limited by the policy provisions, a prevented planting payment may be made to you for eligible acreage if:

(1) You were prevented from planting the insured crop by an insured cause that occurs:

(i) On or after the sales closing date contained in the Special Provisions for the insured crop in the county for the crop year the application for insurance is accepted; or

(ii) For any subsequent crop year, on or after the sales closing date for the previous crop year for the insured crop in the county, provided insurance has been in force continuously since that date. Cancellation for the purpose of transferring the policy to a different insurance provider for the subsequent crop year will not be considered a break in continuity for the purpose of the preceding sentence;

(2) You include any acreage of the insured crop that was prevented from being planted on your acreage report; and

(3) You did not plant the insured crop during or after the late planting period. If such acreage was planted to the insured crop during or after the late planting period, it is covered under the late planting provisions.

(b) The actuarial documents may contain additional levels of prevented planting coverage that you may purchase for the insured crop:

(1) Such purchase must be made on or before the sales closing date.

(2) If you do not purchase one of those additional levels by the sales closing date, you will receive the prevented planting coverage specified in the Crop Provisions.

(3) If you have a Catastrophic Risk Protection Endorsement for any crop, the additional levels of prevented planting coverage will not be available for that crop.

(4) You may not increase your elected or assigned prevented planting coverage level for any crop year if a cause of loss that will or could prevent planting is evident prior to the time you wish to change your prevented planting coverage level.

(c) The premium amount for acreage that is prevented from being planted will be the same as that for timely planted acreage. If the amount of premium you are required to pay (gross premium less our subsidy) for acreage that is prevented from being planted exceeds the liability on such acreage, coverage for those acres will not be provided (no premium will be due and no indemnity will be paid for such acreage).

(d) Drought or failure of the irrigation water supply will be considered to be an insurable cause of loss for the purposes of prevented planting only if, on the final planting date (or within the late planting period if you elect to try to plant the crop):

(1) For non-irrigated acreage, the area that is prevented from being planted has insufficient soil moisture for germination of seed and progress toward crop maturity due to a prolonged period of dry weather. Prolonged precipitation deficiencies must be verifiable using information collected by sources whose business it is to record and study the weather, including, but not limited to, local weather reporting stations of the National Weather Service; or

(2) For irrigated acreage, there is not a reasonable probability of having adequate water to carry out an irrigated practice.

(e) The maximum number of acres that may be eligible for a prevented planting payment for any crop will be determined as follows:

(1) The total number of acres eligible for prevented planting coverage for all crops cannot exceed the number of acres of cropland in your farming operation for the crop year, unless you are eligible for prevented planting coverage on double cropped acreage in accordance with section 17(f)(4) or (5). The eligible acres for each insured crop will be determined in accordance with the following table.

| Type of Crop | Eligible acres if, in any of the 4 most recent crop years, you have planted any crop in the county for which prevented planting insurance was available or have received a prevented planting insurance guarantee | Eligible acres if, in any of the 4 most recent crop years, you have not planted any crop in the county for which prevented planting insurance was available or have not received a prevented planting insurance guarantee |
|---|---|---|
| (i) The crop is not required to be contracted with a processor to be insured | (A) The maximum number of acres certified for APH purposes or reported for insurance for the crop in any one of the 4 most recent crop years (not including reported prevented planting acreage that was planted to a substitute crop other than an approved cover crop). The number of acres determined above for a crop may be increased by multiplying it by the ratio of the total cropland acres that you are farming this year (if greater) to the total cropland acres that you farmed in the previous year, provided that you submit proof to us that for the current crop year you have purchased or leased additional land or that acreage will be released from any USDA program which prohibits harvest of a crop. Such acreage must have been purchased, leased, or released from the USDA program, in time to plant it for the current crop year using good farming practices. No cause of loss that will or could prevent planting may be evident at the time the acreage is purchased, leased, or released from the USDA program. | (B) The number of acres specified on your intended acreage report which is submitted to us by the sales closing date for all crops you insure for the crop year and that is accepted by us. The total number of acres listed may not exceed the number of acres of cropland in your farming operation at the time you submit the intended acreage report. The number of acres determined above for a crop may only be increased by multiplying it by the ratio of the total cropland acres that you are farming this year (if greater) to the number of acres listed on your intended acreage report, if you meet the conditions stated in section 17(e)(1)(i)(A). |
| (ii) The crop must be contracted with a processor to be insured | (A) The number of acres of the crop specified in the processor contract, if the contract specifies a number of acres contracted for the crop year; or the result of dividing the quantity of production stated in the processor contract by your approved yield, if the processor contract specifies a quantity of production that will be accepted. (For the purposes of establishing the number of prevented planting acres, any reductions applied to the transitional yield for failure to certify acreage and production for four prior years will not be used.) | (B) The number of acres of the crop as determined in section 17(e)(1)(ii)(A). |

(2) Any eligible acreage determined in accordance with the table contained in section 17(e)(1) will be reduced by subtracting the number of acres of the crop (insured and uninsured) that are timely and late planted, including acreage specified in section 16(b).

(f) Regardless of the number of eligible acres determined in section 17(e), prevented planting coverage will not be provided for any acreage:

(1) That does not constitute at least 20 acres or 20 percent of the insurable crop acreage in the unit, whichever is less. Any prevented planting acreage within a field that contains planted acreage will be considered to be acreage of the same crop, type, and practice that is planted in the field unless the acreage that was prevented from being planted constitutes at least 20 acres or 20 percent of the total insurable acreage in the field and you produced both crops, crop types, or followed both practices in the same field in the same crop year within any of the 4 most recent crop years;

(2) For which the actuarial documents do not designate a premium rate unless a written agreement designates such premium rate;

(3) Used for conservation purposes or intended to be left unplanted under any program administered by the USDA;

(4) On which the insured crop is prevented from being planted, if you or any other person receives a prevented planting payment for any crop for the same acreage in the same crop year (excluding share arrangements), unless you have coverage greater than the Catastrophic Risk Protection Plan of Insurance and have records of acreage and production that are used to determine your approved yield that show the acreage was double-cropped in each of the last 4 years in which the insured crop was grown on the acreage;

(5) On which the insured crop is prevented from being planted, if any crop from which any benefit is derived under any program administered by the USDA is planted and fails, or if any crop is harvested, hayed or grazed on the same acreage in the same crop year (other than a cover crop which may be hayed or grazed after the final planting date for the insured crop), unless you have coverage greater than that applicable to the Catastrophic Risk Protection Plan of Insurance and have records of acreage and production that are used to determine your approved yield that show the acreage was double-cropped in each of the last 4 years in which the insured crop was grown on the acreage (If one of the crops being double cropped is not insurable, other verifiable records of it being planted may be used);

(6) Of a crop that is prevented from being planted if a cash lease payment is also received for use of the same acreage in the same crop year (not applicable if acreage is leased for haying or grazing only) (If you state that you will not be cash renting the acreage and claim a prevented planting payment on the acreage, you could be subject to civil and criminal sanctions if you cash rent the acreage and do not return the prevented planting payment for it);

(7) For which planting history or conservation plans indicate that the acreage would have remained fallow for crop rotation purposes;

(8) That exceeds the number of acres eligible for a prevented planting payment;

(9) That exceeds the number of eligible acres physically available for planting;

(10) For which you cannot provide proof that you had the inputs available to plant and produce a crop with the expectation of at least producing the yield used to determine the production guarantee or amount of insurance (Evidence that you have previously planted the crop on the unit will be considered adequate proof unless your planting practices or rotational requirements show that the acreage would have remained fallow or been planted to another crop);

(11) Based on an irrigated practice production guarantee or amount of insurance unless adequate irrigation facilities were in place to carry out an irrigated practice on the acreage prior to the insured cause of loss that prevented you from planting. Acreage with an irrigated practice production guarantee will be limited to the number of acres allowed for that practice under sections 17(e) and (f); or

(12) Based on a crop type that you did not plant, or did not receive a prevented planting insurance guarantee for, in at least one of the four most recent crop years. Types for which separate price elections, amounts of insurance, or production guarantees are available must be included in your APH database in at least one of the four most recent crop years, or crops that do not require yield certification (crops for which the insurance guarantee is not based on APH) must be reported on your acreage report in at least one of the four most recent crop years except as allowed in section 17(e)(1)(i)(B). We will limit prevented planting payments based on a specific crop type to the number of acres allowed for that crop type as specified in sections 17(e) and (f).

(g) If you purchased a limited or additional coverage policy for a crop, and you executed a High-Risk Land Exclusion Option that separately insures acreage which has been designated as "high-risk" land by FCIC under a Catastrophic Risk Protection Endorsement for that crop, the maximum number of acres eligible for a prevented planting payment will be limited for each policy as specified in sections 17(e) and (f).

(h) If you are prevented from planting a crop for which you do not have an adequate base of eligible prevented planting acreage, as determined in accordance with section 17(e)(1), your prevented planting production guarantee or amount of insurance, premium, and prevented planting payment will be based on the crops insured for the current crop year, for which you have remaining eligible prevented planting acreage. The crops used for this purpose will be those that result in a prevented planting payment most similar to the prevented planting payment that would have been made for the crop that was prevented from being planted.

(1) For example, assume you were prevented from planting 200 acres of corn and have 100 acres eligible for a corn prevented planting guarantee that would result in a payment of $40 per acre. You also had 50 acres of potato eligibility that would result in a $100 per acre payment, 90 acres of grain sorghum eligibility that would result in a $30 per acre payment, and 100 acres of soybean eligibility that would result in a $25 per acre payment. Your prevented planting coverage for the 200 acres would be based on 100 acres of corn ($40 per acre), 90 acres of grain sorghum ($30 per acre), and 10 acres of soybeans ($25 per acre).

(2) Prevented planting coverage will be allowed as specified in this section (17(h)) only if the crop that was prevented from being planted meets all policy provisions, except for having an adequate base of eligible prevented planting acreage. Payment may be made based on crops other than those that were prevented from being planted even though other policy provisions, including but not limited to, processor contract and rotation requirements, have not been met for the crop on which payment is being based.

(i) The prevented planting payment for any eligible acreage within a unit will be determined by:

(1) Multiplying the liability per acre for timely planted acreage of the insured crop (the amount of insurance per acre or the production guarantee per acre multiplied by the price election for the crop, or type if applicable) by the prevented planting coverage level percentage you elected, or that is contained in the Crop Provisions if you did not elect a prevented planting coverage level percentage;

(2) Multiplying the result of section 17(i)(1) by the number of eligible prevented planting acres in the unit; and

(3) Multiplying the result of section 17(i)(2) by your share.

**18. Written Agreements.**

Terms of this policy which are specifically designated for the use of written agreements may be altered by written agreement in accordance with the following:

(a) You must apply in writing for each written agreement no later than the sales closing date, except as provided in section 18(e);

(b) The application for a written agreement must contain all variable terms of the contract between you and us that will be in effect if the written agreement is not approved;

(c) If approved, the written agreement will include all variable terms of the contract, including, but not limited to, crop type or variety, the guarantee, premium rate, and price election;

(d) Each written agreement will only be valid for one crop year (If a written agreement is not specifically renewed the following year, insurance coverage for subsequent crop years will be in accordance with the printed policy); and

(e) An application for a written agreement submitted after the sales closing date may be approved if you demonstrate your physical inability to apply prior to the sales closing date, or it is submitted in accordance with any regulation which may be promulgated under 7 CFR part 400, and after inspection of the acreage by us, if required, it is determined that no loss has occurred and the crop is insurable in accordance with the policy and written agreement provisions.

**19. Crops as Payment.**

You must not abandon any crop to us. We will not accept any crop as compensation for payments due us.

**20. Arbitration.**

(a) If you and we fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions published at 7 CFR part 11.

(b) No award determined by arbitration or appeal can exceed the amount of liability established or which should have been established under the policy.

**21. Access to Insured Crop and Records, and Record Retention.**

(a) We reserve the right to examine the insured crop as often as we reasonably require.

(b) For three years after the end of the crop year, you must retain, and provide upon our request, complete records of the harvesting, storage, shipment, sale, or other disposition of all the insured crop produced on each unit. This requirement also applies to the records used to establish the basis for the production report for each unit. You must also provide upon our request, separate records showing the same information for production from any acreage not insured. We may extend the record retention period beyond three years by notifying you of such extension in writing. Your failure to keep and maintain such records will, at our option, result in:

(1) Cancellation of the policy;
(2) Assignment of production to the units by us;
(3) Combination of the optional units; or
(4) A determination that no indemnity is due.

(c) Any person designated by us will, at any time during the record retention period, have access:

(1) To any records relating to this insurance at any location where such records may be found or maintained; and
(2) To the farm.

(d) By applying for insurance under the authority of the Act or by continuing insurance for which you previously applied, you authorize us, or any person acting for us, to obtain records relating to the insured crop from any person who may have custody of those records including, but not limited to, FSA offices, banks, warehouses, gins, cooperatives, marketing associations, and accountants. You must assist us in obtaining all records which we request from third parties.

**22. Other Insurance.**

(a) **Other Like Insurance** - You must not obtain any other crop insurance issued under the authority of the Act on your share of the insured crop. If we determine that more than one policy on your share is intentional, you may be subject to the sanctions authorized under this policy, the Act, or any other applicable statute. If we determine that the violation was not intentional, the policy with the earliest date of application will be in force and all other policies will be void. Nothing in this paragraph prevents you from obtaining other insurance not issued under the Act.

(b) **Other Insurance Against Fire** - If you have other insurance, whether valid or not, against damage to the insured crop by fire during the insurance period, and you have not excluded coverage for fire from this policy, we will be liable for loss due to fire only for the smaller of:

(1) The amount of indemnity determined pursuant to this policy without regard to such other insurance; or
(2) The amount by which the loss from fire is determined to exceed the indemnity paid or payable under such other insurance.

(c) For the purpose of subsection (b) of this section the amount of loss from fire will be the difference between the fair market value of the production of the insured crop on the unit involved before the fire and after the fire, as determined from appraisals made by us.

**23. Conformity to Food Security Act.**

Although your violation of a number of federal statutes, including the Act, may cause cancellation, termination, or voidance of your insurance contract, you should be specifically aware that your policy will be canceled if you are determined to be ineligible to receive benefits under the Act due to violation of the controlled substance provisions (title XVII) of the Food Security Act of 1985 (Pub. L. 99-198) and the regulations promulgated under the Act by USDA. Your insurance policy will be canceled if you are determined, by the appropriate Agency, to be in violation of these provisions. We will recover any and all monies paid to you or received by you during your period of ineligibility, and your premium will be refunded, less a reasonable amount for expenses and handling not to exceed 20 percent of the premium paid or to be paid by you.

**24. Amounts Due Us.**

(a) Interest will accrue at the rate of 1.25 percent simple interest per calendar month, or any portion thereof, on any unpaid amount due us. For the purpose of premium amounts due us, the interest will start to accrue on the first day of the month following the premium billing date specified in the Special Provisions.

(b) For the purpose of any other amounts due us, such as repayment of indemnities found not to have been earned, interest will start to accrue on the date that notice is issued to you for the collection of the unearned amount. Amounts found due under this paragraph will not be charged interest if payment is made within 30 days of issuance of the notice by us. The amount will be considered delinquent if not paid within 30 days of the date the notice is issued by us.

(c) All amounts paid will be applied first to expenses of collection (see subsection (d) of this section) if any, second to the reduction of accrued interest, and then to the reduction of the principal balance.

(d) If we determine that it is necessary to contract with a collection agency or to employ an attorney to assist in collection, you agree to pay all of the expenses of collection.

(e) Amounts owed to us by you may be collected in part through administrative offset from payments you receive from United States government agencies in accordance with 31 U.S.C. chapter 37.

**25. Legal Action Against Us.**

(a) You may not bring legal action against us unless you have complied with all of the policy provisions.

(b) If you do take legal action against us, you must do so within 12 months of the date of denial of the claim. Suit must be brought in accordance with the provisions of 7 U.S.C. 1508(j).

(c) Your right to recover damages (compensatory, punitive, or other), attorney's fees, or other charges is limited or excluded by this contract or by Federal Regulations.

26. **Payment and Interest Limitations.**
   (a) Under no circumstances will we be liable for the payment of damages (compensatory, punitive, or other), attorney's fees, or other charges in connection with any claim for indemnity, whether we approve or disapprove such claim.
   (b) We will pay simple interest computed on the net indemnity ultimately found to be due by us or by a final judgment of a court of competent jurisdiction, from and including the 61st day after the date you sign, date, and submit to us the properly completed claim on our form. Interest will be paid only if the reason for our failure to timely pay is NOT due to your failure to provide information or other material necessary for the computation or payment of the indemnity. The interest rate will be that established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) and published in the Federal Register semiannually on or about January 1 and July 1 of each year, and may vary with each publication.

27. **Concealment, Misrepresentation or Fraud.**
   (a) If you have falsely or fraudulently concealed the fact that you are ineligible to receive benefits under the Act or if you or anyone assisting you has intentionally concealed or misrepresented any material fact relating to this policy:
      (1) This policy will be voided; and
      (2) You may be subject to remedial sanctions in accordance with 7 CFR part 400, subpart R.
   (b) Even though the policy is void, you may still be required to pay 20 percent of the premium due under the policy to offset costs incurred by us in the service of this policy. If previously paid, the balance of the premium will be returned.
   (c) Voidance of this policy will result in you having to reimburse all indemnities paid for the crop year in which the voidance was effective.
   (d) Voidance will be effective on the first day of the insurance period for the crop year in which the act occurred and will not affect the policy for subsequent crop years unless a violation of this section also occurred in such crop years.

28. **Transfer of Coverage and Right to Indemnity.**
   If you transfer any part of your share during the crop year, you may transfer your coverage rights, if the transferee is eligible for crop insurance. We will not be liable for any more than the liability determined in accordance with your policy that existed before the transfer occurred. The transfer of coverage rights must be on our form and will not be effective until approved by us in writing. Both you and the transferee are jointly and severally liable for the payment of the premium and administrative fees. The transferee has all rights and responsibilities under this policy consistent with the transferee's interest.

29. **Assignment of Indemnity.**
   You may assign to another party your right to an indemnity for the crop year. The assignment must be on our form and will not be effective until approved in writing by us. The assignee will have the right to submit all loss notices and forms as required by the policy. If you have suffered a loss from an insurable cause and fail to file a claim for indemnity within 60 days after the end of the insurance period, the assignee may submit the claim for indemnity not later than 15 days after the 60-day period has expired. We will honor the terms of the assignment only if we can accurately determine the amount of the claim. However, no action will lie against us for failure to do so.

30. **Subrogation (Recovery of Loss From A Third Party).**
   Since you may be able to recover all or a part of your loss from someone other than us, you must do all you can to preserve this right. If we pay you for your loss, your right to recovery will, at our option, belong to us. If we recover more than we paid you plus our expenses, the excess will be paid to you.

31. **Applicability of State and Local Statutes.**
   If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.

32. **Descriptive Headings.**
   The descriptive headings of the various policy provisions are formulated for convenience only and are not intended to affect the construction or meaning of any of the policy provisions.

33. **Notices.**
   (a) All notices required to be given by you must be in writing and received by your crop insurance agent within the designated time unless otherwise provided by the notice requirement. Notices required to be given immediately may be by telephone or in person and confirmed in writing. Time of the notice will be determined by the time of our receipt of the written notice. If the date by which you are required to submit a report or notice falls on Saturday, Sunday, or a Federal holiday, or if your agent's office is, for any reason, not open for business on the date you are required to submit such notice or report, such notice or report must be submitted on the next business day.
   (b) All notices and communications required to be sent by us to you will be mailed to the address contained in your records located with your crop insurance agent. Notice sent to such address will be conclusively presumed to have been received by you. You should advise us immediately of any change of address.

34. **Unit Division.**
   (a) You may elect an enterprise unit or a whole farm unit if the Special Provisions allow such unit structure, subject to the following:
      (1) You must make such election on or before the earliest sales closing date for the insured crops and report such unit structure to us in writing. Your unit selection will remain in effect from year to year unless you notify us in writing by the earliest sales closing date for the crop year for which you wish to change this election. These units may not be further divided except as specified herein;
      (2) For enterprise units:
         (i) You must report the acreage for each optional or basic unit on your acreage report that comprises the enterprise unit;
         (ii) These basic units or optional units that comprise the enterprise unit must each have insurable acreage of the same crop in the crop year insured;
         (iii) You must comply with all reporting requirements for the enterprise unit (You must maintain any required production records on a basic or optional unit basis if you wish to change your unit structure for any subsequent crop year);